**FILED**

**NOVEMBER 26, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABELLA WINNETKA, INC.,

    Plaintiff,

vs.

THE VILLAGE OF WINNETKA and
DOUGLAS WILLIAMS,

    Defendants.

**07 C 6633**

Case No.:

PLAINTIFF DEMANDS TRIAL BY JURY

**JUDGE KENDALL**
**MAGISTRATE JUDGE COLE**

## COMPLAINT

Plaintiff LaBella Winnetka, Inc., by and through its attorneys, for its complaint against The Village of Winnetka, Illinois, and Douglas Williams, the Village Manager, states as follows:

### Nature Of This Constitutional Action

1. LaBella Winnetka, Inc. ("Plaintiff" or "LaBella") has brought this case under 42 U.S.C. § 1983 and the due process and equal protection guarantees secured to LaBella by the 14th Amendment to the United States Constitution against the Village of Winnetka ("Village") and Douglas Williams ("Williams"), the Village manager. Acting under color and authority of law, the Village and Williams, through their arbitrary, capricious and unlawful conduct, have deprived LaBella of the use of its leased restaurant property and its right to operate its successful Italian restaurant in Winnetka, Illinois. LaBella has also brought claims against the Defendants in this Complaint under the laws of the State of Illinois.

### PARTIES

### The LaBella Restaurant

2. LaBella is an Illinois corporation with its principal place of business in Winnetka, Cook County, Illinois. LaBella operates a restaurant with authentic Italian cuisine and an Italian

born, well known, and highly visible maitre d'.  It has been one of Chicagoland's finest Italian restaurants for the past fourteen years.

## The Village Defendants

3.       The Village of Winnetka ("Village") is a municipal corporation located in Cook County, Illinois.  It is organized, operated and funded pursuant to the laws of the State of Illinois. The Village is governed by a Village Council which consists of a president and six Village board trustees.  The Village president is Edmund C. Woodbury, and the Trustees are E. King Poor, Tom Eilers, Jessica B. Tucker, Kenneth L. Behles, Herb Ritchell, and Sandra A. Berger.  The Village is a "person" within the meaning of 42 U.S.C § 1983.

4.       Douglas Williams ("Williams") is the Village Manager of Winnetka, Illinois, and on information and belief a resident of Cook County, Illinois.  He manages the Village pursuant to authority granted to him by the Village Council, by State statutes and by Village ordinances. At all times relevant, he directed and controlled the business affairs of the Village, its officials and staff regarding the selective and arbitrary enforcement of Village ordinances and building codes.

5.       With regard to the events identified in this Complaint, the Village and Williams and those acting pursuant to their direction, at all times acted under color of law within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

6.       This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

7.       Venue is proper in this court pursuant 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### LaBella's Fundamental Property Interests
### Protected By The Constitution

8.    On May 6, 1993, LaBella entered into an agreement (the "Lease") to lease certain property (the "Premises") at One Chestnut Court in Winnetka, Illinois 60093, and later 505 Chestnut Street, Winnetka, Illinois 60093.  A complete copy of the Lease and all executed Riders thereto was requested by the Village, and have been provided to the Village in accordance with the Village's liquor licensing requirements for restaurants.  The Lease has been extended from time to time, and LaBella's Lease remains in full force and effect until July 31, 2008, all of which was or should have been known to the Village and Williams.

9.    LaBella's restaurant is located immediately west of the Winnetka Village Hall.  It has been one of Chicagoland's finest authentic Italian restaurants since it opened in 1993, and it has operated successfully and profitably from its unique premises in downtown Winnetka for over fourteen years.

10.    LaBella's fourteen years of successful operation in Winnetka has created immense goodwill, fostered a broad and loyal customer base and earned it a reputation throughout the Chicagoland area for excellent Italian dining.  Because of the distinctive cuisine and widely-recognized personality of its maitre d' host, LaBella has attracted hundreds of patrons from a variety of diverse communities throughout the metropolitan Chicago area.

11.    In addition to its Lease of the premises, LaBella has expended large sums of money for its kitchen and dining areas and for all the equipment necessary to operate a restaurant with this reputation.

12.    LaBella has a staff which is highly skilled and dependent on the continued operation of the restaurant.  The staff consists of a number of individuals who work in the

restaurant daily.  The building in which LaBella is situated also has numerous residents who are present in the building at various times throughout the day.

16. In addition to its Lease, LaBella obtained a restaurant license, a liquor license and all appropriate licenses and permits for operating its restaurant in Winnetka; it has continued to receive and maintain those licenses over the years and throughout its presence in Winnetka has been a lawful, taxpaying business.

14. Since its opening, LaBella has strived to comply with all Village ordinances and to respond promptly to Village concerns, taking pride in the appearance of its restaurant and its kitchen and dining areas in order to be of the highest quality.

15. LaBella has substantial, valuable and fundamental property rights consisting of the exclusive use and enjoyment of its leasehold interest and ownership of its Italian restaurant business which it operates in Winnetka, Illinois.  These property rights are protected by the United States Constitution.

## The Village's Discriminatory and Selective Enforcement
## Of Its Building Code And Creation Of A Fire Hazard

16. Beginning at least in 2006 or at an earlier time better known to the Defendants, the Village and Williams permitted LaBella's landlord (the "Landlord") to perform construction work on the roof above LaBella's restaurant without requiring the Landlord to apply for or obtain building permits mandated by the Village's building codes, and/or without any inspections by the Village building inspectors to make sure that the Landlord's work on the roof complied with Village ordinances and its building code.  This work on the roof by the Landlord and its roofers, which included the use of hot tar and torches, was obvious and open to view and was performed in the immediate vicinity of the Winnetka Village Hall.

- 4 -

17.    At all times material to this dispute, the Village and Williams knew or should have known of the defective condition of the roof and that repair work on the roof performed by roofers retained by the Landlord required permits, proper supervision, and compliance with established building procedures. The Defendants knew or should have known that roof work involved the use of hot tar and torches and other flammable materials, and that it should have been inspected for purposes of the safety of numerous persons at LaBella and residing in the building, and for the structural safety of the building itself, and to ensure compliance with the Village's building code requirements. However, the Village and Williams intentionally and arbitrarily took no action to require permits or to stop the Landlord from performing any dangerous, unsupervised work which created potential fire hazards. The Village and Williams refused to inspect the work or enforce compliance with the Village's building code and safety requirements because of their deliberate, selective enforcement when applied to LaBella.

18.    On numerous occasions from at least 2006, LaBella complained to the Village, Williams and other officers and employees of the Village about the Landlord's failure to maintain the roof and the defective condition of the roof with water pouring into the restaurant through holes in the roof and walls of the building. In fact, LaBella met with the Village in the fall of 2006, and provided specific information regarding the roof's defective condition and the need for compliance with the Village's requirements when repairing the roof.

19.    Thereafter, the Village and Williams did not require the Landlord to repair the roof correctly and in a timely and orderly manner so LaBella could plan for the roof work and have a safe and secure roof above its restaurant which complied with the Village's ordinances and codes.

## The February 28, 2007 Complaint

20.    On February 28, 2007, LaBella complained again to the Village and Williams and informed them that a single employee of a roofing contractor hired by the Landlord was performing work on the roof with a propane gas tank and tar, that he had no building permit, and that he might damage the roof or cause other damage if his work was not supervised or stopped. Despite this warning, the Village and Williams intentionally ignored LaBella's stated fears, refused to respond in any way to LaBella's stated concerns, and even refused to assign an inspector the simple task of walking out the west side of the building to inspect this work about which LaBella was complaining even though the subject roof work was visible and within a few yards of the Village Hall doorway.

## The Roofer Sets The Roof On Fire And LaBella Is Forced
## To Close Through No Fault Of Its Own

21.    Notwithstanding that this unsupervised work and the presence of a propane gas tank and the use of tar was specifically brought to the Village's attention, and that the Village was the proper authority to stop this work, neither the Village nor Williams did anything to respond to LaBella's complaint.  Within a couple of hours that same day, this unsupervised roof work with the use of a propane gas tank and hot tar resulted in a major fire on the roof above LaBella, thereby endangering employees, residents, and firefighters, and causing major damage to the roof.

22.    As a result of the fire damage to the roof, LaBella was forced to close its restaurant abruptly, without any advance notice, and through no fault of its own.  Although the damage to the interior of LaBella's restaurant was readily repairable, the Village, Williams and others at their direction wrongfully, maliciously and intentionally refused to permit LaBella to begin to repair the interior of the restaurant or utilize its kitchen to service the outdoor patio of

the restaurant during the summer until and unless the Landlord repaired and replaced the roof above LaBella's restaurant in compliance with all Village codes, such compliance with which the Village had not previously required of the Landlord.

23.    The Village and Williams deliberately obstructed LaBella's repair of the restaurant's interior even though they knew full well that LaBella had to close its restaurant immediately because of the fire through no fault of its own, and would not be able to reopen or resume serving its loyal customer base until the Landlord complied fully with the directives issued by the Village and Williams after the fire.

**Village Involvement In The Failure To**
**Repair Roof So LaBella Could Not Reopen**

24.    At all times material, the Village and Williams knew or in the reasonable exercise of their duties as Village officials should have known that the Landlord was not making any attempt to replace the roof as required under Rider 2, paragraph 5 of the Lease.  As a result, LaBella has been forced to remain closed, without income or any projected date of reopening.  It is without income because of the arbitrary, capricious and spiteful actions by the Village and Williams who even refused to allow the partial reopening of LaBella, knowing that by doing so, LaBella would be forced out of business.  The irrational, wholly arbitrary and illegal actions in which the Defendants have engaged include, *inter alia,* the following discriminatory and intentionally harmful actions:

A.    The Village, Williams and others at Williams' direction, including Michael D'Onofrio ("D'Onofrio"), knowingly permitted the Landlord to make multiple prior roof repairs without any building permits or inspection by the Village even though they knew or should have known that this work on the roof required the use of hot tar and propane torches, that this work was not safe if done improperly, and that this work was done on the cheap by the

Landlord because compliance with the Village codes would have required replacement of the old roof which consisted of multiple layers of roofing;

B.    The Village and Williams knowingly failed to take any enforcement action in 2006 or in 2007 before the fire to require the Landlord to obtain a permit, and repair or replace the roof in a proper and safe manner, consistent with Village requirements.  At all times material, the Village and Williams knew that proper enforcement action would have eliminated the risk of hazards caused by the unsupervised use of propane torches and hot tar by a single worker, which endangered individuals working and/or residing in the building, and the building roof and structure.  In fact, appropriate action by the Village would have eliminated the likely risk of harm to all, and the catastrophic impact on LaBella and the losses which it has sustained to its business, its property and the livelihood of its owner operator as a result of the major fire on the roof;

C.    Shortly after the fire, the Village, Williams and other Village employees at the direction of Williams, for the first time, required that the roof above LaBella had to be completely replaced in order to comply with the Village code.  The Village also required that this work had to be completed before the Village would permit commencement of any restoration of the restaurant premises or allow LaBella to continue its cooking operations.  The Village and Williams knew at all times that a permit and inspection should have been required before the fire in 2007, and that they should have taken appropriate action against the Landlord to enforce their building codes before the fire;

D.    When the Village, Williams and those reporting to Williams required a complete new roof as a condition precedent to reopening LaBella after the fire, they knew or should have known that LaBella's Lease included a term which called for prompt repair of the

roof, and that the Landlord would use any delay in replacing the roof as a basis for claiming that LaBella's Lease was terminated;

   E. Moreover, after the fire, the Village, Williams, D'Onofrio and others met from time to time with representatives of the Landlord, and other businesses, including Corner Cooks, insurers, adjustors and others, for the express purpose of keeping LaBella closed, thereby precluding a once thriving, local Winnetka business from reopening for its customers. During those secret discussions, the Village, Williams and D'Onofrio knew or should have known that (i) the Landlord did not intend to replace the roof promptly, (ii) the Landlord would terminate LaBella's Lease because of the Landlord's delay in repairing the roof, and (iii) LaBella would be forced out of the building because of a fire caused by the Landlord and its roofer. The Village's and Williams' failure to require the Landlord to repair the roof in a timely manner, while working with the Landlord and others to deprive LaBella of its leasehold was intentional, capricious and arbitrary, and done with the illegitimate intent of depriving LaBella of its Lease and its right to reopen its restaurant which was closed through no fault of LaBella;

   F. The Village and Williams also knew that LaBella submitted permit applications to the Village for minor work on the interior of the restaurant caused by the roof fire above LaBella's restaurant. However, the Village and Williams instructed LaBella that it could not begin any interior work until the Landlord replaced the entire roof, and they deliberately refused to process LaBella's permit applications even though they knew that the Landlord was responsible under Rider 2, paragraph 5 of the Lease for restoring the roof and was also responsible for damage to the interior of the restaurant because the Landlord and its roofer caused the fire and the damage to the restaurant itself. They also knew that LaBella had been forced to close, had no income because of the fire and by virtue of its pecuniary duress, was incapable of taking steps to protect its leasehold.

**Unlawful Issuance Of Permits To Corner Cooks
To Deprive LaBella Of Its Leased Premises**

25.     The Village, Williams and others within the Village management also knew that LaBella's Lease did not end until July 31, 2008.  Notwithstanding such knowledge, they met from time to time with representatives of the Corner Cooks and others, and approved permits and designs for Corner Cooks and Jerry's Restaurant to allow them to begin occupying portions of the building which were still leased to LaBella.  The Village and Williams took these actions arbitrarily and intentionally because of their "special" relationship with the owner of Corner Cooks, and their knowledge that the issuance of permits to Corner Cooks and a new tenant for areas already leased by LaBella would keep LaBella out of certain areas within the Premises which were essential to LaBella's operations.

**The Defendants' Actions Were
Capricious, Spiteful, Intentional And Malicious**

26.     At all times relevant, the above actions taken by the Village, Williams and those acting on the direction of Williams relating to enforcement of the Village ordinances and building codes were selective, capricious, arbitrary, intentional and malicious.  Their actions were part of a widespread pattern, practice and custom by Williams which were approved tacitly by the Village to deprive LaBella of the right to keep its restaurant business in Winnetka and to force it out of business.

27.     This unlawful pattern and practice by Williams was and is evidenced by the arbitrary actions outlined above, and is further evidenced by discriminatory and spiteful actions and by selective enforcement of the Village's ordinances and codes, the purpose of which was to injure LaBella while at the same time favoring other restaurants and businesses which were similarly situated as LaBella.  Some examples are as follows:

A.    This pattern and practice by the Village and Williams of favoring certain restaurants in Winnetka similarly situated to LaBella while at the same time discriminating against LaBella was widespread.  There was an express policy so that the restaurants receiving favorable treatment from Williams were well known and referred to among Village subordinate employees as "Friends of Doug" or "FOD's."  The maitre d' of LaBella and LaBella are not "FODs."  The maitre d', however, is a public personality, well known and liked by patrons and out-of-towners alike who come to the restaurant in part to visit with him.  Consequently, LaBella and its host have been the victims of selective, irrational and discriminatory enforcement of Winnetka's ordinances through the spite and animus of Williams and others when compared to other similarly-situated businesses;

B.    Williams has had and continues to have a "special" relationship with the owner of Corner Cooks, a "restaurant" located in the same building as LaBella.  The specific nature and extent of this relationship is best known to the Village and Williams but as a result of this friendship and close relationship, Corner Cooks has been allowed to operate with disregard of Village ordinances, building codes and state liquor laws, all at LaBella's expense, as follows:

(i)    the Village and Williams have cited LaBella and given LaBella 24-hour notices to remove such insignificant things as a string of Christmas lights while at the same time permitting the Corner Cooks to place large, prominent and oversized vinyl banners in its window, banners which violate the Village's sign ordinances;

(ii)    Williams and the Village gave favorable, selective treatment to the Corner Cooks regarding the issuance of Village restaurant and liquor licenses.  The Village, because of the special relationship, issued liquor licenses to Corner Cooks "after the fact," ignoring Village and state laws regarding issuance of such licenses.  The "after the fact" issuance of restaurant and liquor licenses, including some form of "special use" ordinance to

accommodate Corner Cooks' non-compliant activities, failed to conform with Village ordinances and emasculated the customary evaluation required of applicants starting anew, the very evaluation with which LaBella was required to comply. These selective enforcement practices seriously interfered with LaBella's operation of its restaurant and have disrupted LaBella's normal and customary use of its restaurant, including its restroom facilities;

(iii)    The Village, Williams and other Village management have also intentionally ignored Corner Cooks' non-compliance with exhaust requirements which are important aspects of the health and safety regulations of public eating establishments and for which LaBella is obligated to and has complied;

(iv)    The Corner Cooks' exhaust system is not now and has never been in compliance with the Village code and this noncompliance is well known to the Village, Williams and other enforcement officers within the Village but intentionally concealed and not disclosed in recent drawings through the artifice of "existing" on permitted drawings;

(v)    The Village, Williams and Corner Cooks know full well that Corner Cooks' various cooking appliances such as grills, fryers, cook tops and ovens require an exhaust system for hot air, smoke, vapors and fumes, and that the ductwork for Corner Cooks' exhaust system is uncovered and illegally runs horizontally through various areas of the ground floor of the building through LaBella before the exhaust is finally vented to the exterior of the building. Although this exhaust system violates the Village ordinance which requires exhausting of stove and oven hot air and smoke through vertical ductwork leading directly to the exterior of the building, the Village and Williams have permitted Corner Cooks to use this unsafe, unhealthy and non-conforming exhaust system and have participated directly in the cover-up used to conceal this health hazard;

(vi)    In addition, the Village and Williams have permitted Corner Cooks to open Jerry's Restaurant which will seat an additional 40 customers serving food prepared on the same grills, fryers, cook tops and ovens using the Corner Cooks' exhaust system.  Corner Cooks and Jerry's Restaurant have been permitted to expand into areas leased to LaBella while continuing to use this non-conforming exhaust system because of the "special" relationship between Corner Cooks and Williams.  But for the special relationship, Corner Cooks should not have been lawfully entitled to operate a restaurant without substantial modifications to its leased space and an entirely defective exhaust system, let alone operate two restaurants, and is not now entitled to any permit to expand its hazardous operations;

C.    O'Neils Restaurant and Little Ricky's are restaurants in Winnetka which are similarly situated to LaBella.  They, too, received favorable treatment from the Village and Williams while LaBella is treated unfairly and capriciously.  Most graphic of this arbitrary and spiteful treatment of LaBella is the juxtaposition of strikingly different treatment by Williams of O'Neils and Little Ricky's and LaBella:

(i)    Williams ordered a Winnetka sanitation official to withdraw and/or revoke numerous sanitation citations and a restaurant closing order against O'Neils/Little Ricky's which were issued for health and safety violations relating to the storage and handling of food;

(ii)    O'Neils and/or Little Ricky's also have been allowed to remain open although they had been cited for numerous liquor ordinance violations;

(iii)    In stark contrast to the Village's non-enforcement of these requirements with respect to similarly-situated restaurants, Williams instructed a Winnetka sanitation official to issue a citation to the maitre d' of LaBella because he was sitting on a chair on the sidewalk in front of LaBella with a broken leg.  Williams took exception to this innocent

conduct, and he caused the citation to be issued without any rational basis simply to harass LaBella and publicly embarrass its maitre d' and staff and forced LaBella to defend a prosecution by the Village in court;

D.      Although the Village's sanitation inspection procedure applies equally to all restaurants operating in the Village, the Defendants have enforced Village sanitation requirements upon LaBella while permitting other similarly-situated restaurants to carry on restaurant activities without the loss of the Health Permit, notwithstanding the presence of critical uncorrected conditions, including but not limited to: (i) violations relating to inadequate and unhealthy food temperatures; (ii) the absence of adequate refrigeration units which were able to keep foods at the proper temperatures; (iii) open waste lines in dry storage areas; (iv) "food stored under shelves rather than at least 6 inches off the floor; (v) containers of raw food on the floor; (vi) raw chicken and raw beef in walk-in coolers at improper temperatures. At the same time that these activities were overlooked for similarly-situated restaurants, LaBella was threatened with losing its various licenses if ever the most minor of these problems was not corrected. Similarly-situated restaurants were not subject to these same rigorous and selective enforcement actions.

### The Village Ignores The Discrimination

28.      At all relevant times, the Village Council knew or should have known of the selective, arbitrary and capricious enforcement of Village ordinances and building codes by Williams, D'Onofrio and other Village staff at their direction. They have also known of the discriminatory and spiteful treatment by Williams toward LaBella and its employees. Although the Village Council has been fully aware of the discriminatory, unconstitutional conduct visited on LaBella, it nonetheless has knowingly and intentionally failed to take any action to correct and prohibit such conduct by Williams and those whom he directs. Indeed, Plaintiff is informed

and believes and therefore alleges that the Village is considering or has already considered how to reward Defendant Williams for his conduct as Village Manager.

## COUNT I

## DAMAGES FOR VIOLATION OF EQUAL PROTECTION

29.　　LaBella re-alleges paragraphs 1-28 of the Complaint as paragraph 29 of this Count I.

30.　　Section 1983, U.S.C. prohibits persons acting under color of law from depriving persons of any rights, privileges, or immunities secured by the Constitution, including the right to equal protection secured by the Fourteenth Amendment and to be treated equally with those that are similarly situated.

31.　　LaBella has protectable property rights consisting of its Lease and its restaurant business which it has operated successfully in Winnetka for the past fourteen years, and it is entitled to be treated the same as similarly-situated restaurants and businesses in Winnetka.

32.　　At all times relevant, LaBella was similarly situated to other restaurants in Winnetka, and all of these restaurants were subject to and were required to comply with the same Village ordinances, building codes, sanitation reports, health standards and safety laws and requirements.　These restaurants located in the Village include, *inter alia,* Corner Cooks, Jerry's Restaurant, O'Neils, Little Ricky's and other restaurants which have been issued restaurant licenses and/or liquor licenses by the Village.

33.　　At all times relevant, officials who held high positions of power in the Village included Williams and D'Onofrio, and these same individuals dealt with LaBella and all similarly-situated restaurants during the same period of time set out in this Complaint.

34.　　Because LaBella's presence was unwanted by the Village and high Village officials, including Williams and D'Onofrio, they treated LaBella differently in the enforcement

of Village ordinances, codes, sanitation requirements and health standards than they treated other similarly-situated restaurants even though all were subject to the same ordinances, codes, sanitation requirements and health standards during the same period of time. They selectively and vindictively enforced and ignored the Village's ordinances and laws which resulted in LaBella being forced to close its restaurant abruptly, and thereafter, they took arbitrary actions to require LaBella to remain closed while at the same time permitting other similarly-situated restaurants to remain open and to expand substantially in size even though they were not and are not in compliance with Village ordinances, codes, requirements and/or standards. This different treatment by the Village, Williams and D'Onofrio was based on a totally illegitimate animus, dislike, and sheer vindictiveness as a result of their dealings with LaBella and its representatives.

35.    The Village and Williams also required LaBella to fulfill all conditions required to maintain a valid Health Permit regarding various health standards including: food, food protection, personnel, food equipment and utensils, plumbing, water, sewage, toilets, hand-washing facilities, garbage, refuse storage, insect, rodent and animal control, physical structures and other operations associated with the safe and healthy operation of a Winnetka restaurant establishment. However, at the same time, similarly-situated restaurants were not required to correct violations of facilities found to be in non-compliance with the Health Authorities' requirements, thereby causing LaBella to incur expenses and costs which other similarly-situated restaurants were not required to expend in order to comply.

36.    In violation of 42 U.S.C. § 1983 and the equal protection clause, the Village and Williams have deprived LaBella as a party of one of its right to equal protection by intentionally treating it different from others similarly situated by selective and discriminatory enforcement of their ordinances, building code, health and sanitation requirements, and by other arbitrary actions with the express purpose and objective of forcing LaBella out of business in Winnetka.

37.     As a result of such arbitrary and selective enforcement by the Village and Williams, and their other vindictive and arbitrary actions set out above, LaBella has been forced to close its restaurant, has not been able to reopen, has been unable to operate its restaurant, and has lost income from the operation of its business and suffered a significant diminution in the value of its business.

WHEREFORE, LaBella prays for the following relief:

A.     Compensatory damages including but not limited to loss of profits and diminution in value of its business in an amount not less than $2 million;

B.     Punitive damages against Defendant Williams of not less than $5 million;

C.     An order prohibiting Defendants from engaging in any further conduct violative of 42 U.S.C. § 1983;

D.     Attorney's fees and costs; and

E.     Such other relief as this Court deems appropriate and just under the circumstances.

## COUNT II

## DAMAGES FOR DEPRIVATION OF SUBSTANTIVE DUE PROCESS

38.     LaBella realleges paragraphs 1-28 of the Complaint as paragraph 38 of this Count II.

39.     Section 1983, U.S.C. prohibits persons acting under color of law from depriving persons of any rights, privileges or property secured by the 14th Amendment to the Constitution, including the right to substantive due process of law.  When a person has a protectable, vested property interest, that interest may not be taken or impinged upon by governmental action which is wholly without legal justification.

40.     LaBella has protectable vested property rights consisting of its Lease and its restaurant business which it has operated successfully in Winnetka for the past fourteen years. This includes its profitable operations, its licenses including its restaurant and liquor licenses, the

good will that it has created, and its fixtures, furnishings and equipment which are all part of its restaurant in Winnetka which has been shut down by actions by the Village and Williams which are wholly without legal justification.

41.     At all relevant times, the Village and Williams have arbitrarily and capriciously abused their powers when enforcing Village ordinances and building codes, and taking other action to deprive LaBella of its property rights, and they have thereby interfered with LaBella's exclusive use and enjoyment of its restaurant in Winnetka without due process of law.  These actions include the following:

A.     The Village and Williams knew at all times relevant that work on the roof above LaBella required a permit and inspection by the Village in order for LaBella to operate in a safe and secure manner, and the Village and Williams intentionally refused to require compliance with it building code because of its deliberate indifference to LaBella's operation of its restaurant in Winnetka;

B.     In addition, the Village and Williams were specifically informed that a roofer had a propane gas tank and hot tar on LaBella's roof, and that he was working alone on the roof without any permit, supervision or inspection.  Although the Village and Williams knew or should have known that this unsupervised work created a substantial risk of a fire and resulting danger to employees of LaBella, residents of the building, and the structure of the building, they purposely and intentionally refused to take appropriate action to inspect and stop this hazardous and unsafe conduct because of their dislike of LaBella and its employees;

C.     The Village and Williams knew at all times relevant that LaBella was forced to close its business abruptly without prior notice due to actions for which LaBella was not responsible and that LaBella was without any income.  Yet the Village and Williams purposely failed and refused to allow LaBella to repair the interior of its restaurant while at the

same time they knowingly permitted and encouraged the Landlord to delay the repair of the roof so LaBella would not be able to reopen its Italian restaurant; and

        D.      The Village and Williams knew at all relevant times that LaBella had a Lease which was valid until July 31, 2008, and yet they purposely and intentionally worked with and encouraged Corner Cooks to expand its restaurant to areas still leased to LaBella, and to permit Corner Cooks to greatly expand its restaurant capacity by opening Jerry's Restaurant in areas still leased to LaBella, thereby arbitrarily forcing LaBella out of business in Winnetka.

42.      The arbitrary and irrational actions taken by the Village and Williams have no legitimate governmental objective, and they were and are motivated solely by improper personal animus against LaBella.

43.      As a result of the Village's and Williams' denial of substantive due process, LaBella has been forced to close its business, has been unable to reopen its business, and has lost income from the operation of its business and has suffered a significant diminution of the value of its business.

        WHEREFORE, LaBella prays for the following relief:

        A.      Compensatory damages including but not limited to loss of profits and diminution in value of its business in an amount not less than $2 million;

        B.      Punitive damages against Defendant Williams of not less than $5 million;

        C.      An order prohibiting Defendants from engaging in any further conduct violative of 42 U.S.C. § 1983;

        D.      Attorney's fees and costs; and

        E.      Such other relief as this Court deems appropriate and just under the circumstances.

## COUNT III

## THE VILLAGE WILLFULLY BREACHED DUTIES OWED TO LABELLA

44.     LaBella realleges paragraphs 1 through 28 above as paragraph 44 of this Count III.

45.     At all times material, the Village and Williams owed a duty to LaBella as a taxpaying Winnetka business not to permit code or ordinance violations endangering LaBella or its patrons, specifically, or the public, generally.

46.     At all times relevant, the Village and Williams were located in the immediate vicinity of LaBella and were thereby uniquely aware of the danger and risk to LaBella as a result of repeated unsupervised and dangerous work on the roof above LaBella which they knew or should have known included the use of propane torches and hot tar.

47.     Although the Village and Williams were specifically made aware of this unsupervised work and the presence of propane tanks and tar on this roof, and the potential risks of harm to individuals in the building, the structure of the building, and LaBella itself, they intentionally and willfully failed and refused to take any action to stop this dangerous work even though they owed LaBella and its patrons a duty not to permit dangerous and unsafe conditions called to their attention to continue.

48.     LaBella at all times relied on the Village and Williams as the proper authorities to take prompt and appropriate action to control this situation and to stop this potentially dangerous and unsafe work.

49.     Although the Village and Williams knew that LaBella asked for and required affirmative action by the Village to inspect this roof work and to halt any activity which was

- 20 -

unsafe or dangerous, the Village and Williams intentionally failed to take appropriate action even though it was within their authority to do so.

50.    Shortly thereafter, this unsupervised work resulted in a major fire on the roof, thereby endangering individuals and substantially damaging the roof above LaBella.  LaBella was forced to abruptly close its Italian restaurant, and it continues to be closed as a result of the fire.

WHEREFORE, LaBella prays for the following relief:

A.    Compensatory damages including but not limited to loss of profits and diminution in value of its business in an amount not less than $2 million;

B.    Punitive damages against Defendant Williams of not less than $5 million;

C.    Attorney's fees and costs; and

D.    Such other relief as this Court deems appropriate and just under the circumstances.

## COUNT IV

### THE VILLAGE INTENTIONALLY INTERFERED WITH LABELLA'S LEASE AND ITS PROSPECTIVE RESTAURANT BUSINESS

51.    LaBella realleges paragraphs 1 through 28 above as paragraph 51 of this Count IV.

52.    The Village and Williams knew at all times relevant that LaBella had a Lease for its restaurant business which was valid through July 31, 2008.  They also knew that LaBella had a following of loyal customers who would continue to dine at LaBella's Italian restaurant until the expiration of its Lease in 2008.

53.    Although the Village and Williams knew full well of LaBella's Lease and its ongoing business, they intentionally and willfully interfered with LaBella's Lease and with its prospective continuing business because of their wrongful conduct which includes the following:

A.    The Village and Williams, acting intentionally and without any lawful exercise of discretion, instructed LaBella not to begin the repair of the interior of its restaurant until and unless the Landlord replaced the roof.  At the same time, they did not require the Landlord to repair and replace the roof in a prompt manner, knowing full well that the failure to repair the roof timely would interfere with LaBella's ability to repair the interior of its restaurant and reopen for its customers;

B.    The Village and Williams, acting intentionally and without any lawful exercise of discretion, also worked with and encouraged Corner Cooks to expand its space and to bring in Jerry's Restaurant although they knew full well that the expansion of these two restaurant businesses in the same building where LaBella was located interfered with LaBella's quiet enjoyment of its Lease and allowed these restaurants to occupy areas already leased to LaBella.

54.    As a result of these intentional activities by the Village and Williams, done without any lawful exercise of discretion, LaBella does not have access to its leased space and is unable to continue its restaurant business for the remainder of its Lease.

55.    The Village and Williams have intentionally interfered with LaBella's Lease and its continued prospective operation of its business.  As a result, LaBella has been forced to close its restaurant, has been unable to reopen, has no income, and has suffered a significant diminution in the value of its business.

WHEREFORE, LaBella prays for the following relief:

A.    Compensatory damages including but not limited to loss of profits and diminution in value of its business in an amount not less than $2 million;

B.    Punitive damages against Defendant Williams of not less than $5 million;

C.    Attorney's fees and costs; and

- 22 -

      D.    Such other relief as this Court deems appropriate and just under the circumstances.

Dated:  November 26, 2007          Respectfully submitted,


                                      By:   /s/ Dean A. Dickie
                                            One of the Attorneys for Plaintiff

Dean A. Dickie, ARDC No. 0631744         LaBella Winnetka, Inc.
Lee T. Hettinger, ARDC No. 1206397
Sara C. Arroyo, ARDC No. 6288962
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
(312) 876-1700