IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABELLA WINNETKA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 07 C 6633 |
| THE VILLAGE OF WINNETKA and ) | |
| DOUGLAS WILLIAMS, ) | Judge Kendall |
| ) | Magistrate Judge Cole |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

| Kathleen A. Reid | Katherine S. Janega | James A. Clark |
|---|---|---|
| Mulherin, Rehfeldt & Varchetto, P.C. | Village Attorney | Schiff Hardin LLP |
| | Village of Winnetka | 6600 Sears Tower |
| 211 South Wheaton Avenue | 510 Green Bay Road | Chicago, IL 60606 |
| Suite 200 | Winnetka, IL 60093 | Tel: (312) 258-5500 |
| Wheaton, IL 60187 | Tel.: (847) 716-3544 | Fax: (312) 258-5600 |
| Tel: (630) 653-9300 | Fax: (847) 501-3180 | jclark@schiffhardin.com |
| Fax: (630) 653-9316 | KJanega@winnetka.org | |
| KReid@MRVLaw.com | | |

Attorneys for Defendants
The Village of Winnetka and Douglas Williams

Date: December 21, 2007

## INTRODUCTION

Plaintiff LaBella Winnetka, Inc. ("LaBella") operated a restaurant located in the Village of Winnetka (the "Village") in a space leased from a private landlord, until a fire occurred on February 28, 2007, during roof repairs being done by a contractor hired by the landlord. This case is one of three lawsuits arising out of a dispute between LaBella and its landlord over the fire, the roof repair, the closure of the restaurant in the wake of the fire, the landlord's termination of LaBella's lease pursuant to the lease's Fire and Casualty provision, and the landlord's subsequent rental of part of LaBella's former premises to another restaurant. LaBella's insurer sued the roofer in state court, and LaBella filed a separate state court action seeking relief from the landlord, roofer, and insurer.[1] LaBella now seeks to make a federal constitutional case out of this private landlord-tenant dispute, bringing this Section 1983 action against the Village and the Village Manager, Douglas Williams ("Williams"), for alleged violations of the Equal Protection Clause, the Due Process Clause, and state common law.

Count I purports to assert a "class of one" equal protection claim. Although its contours are not entirely clear, this Count appears to allege that Defendants' failure to require a permit for the landlord's roofing repair work, and their enforcement of Village ordinances after the fire (requiring that the roof be repaired and made safe before LaBella could reopen to the public), constituted unequal treatment of similarly situated businesses. Count II purports to assert a substantive due process claim alleging that Defendants "knew or should have known" of the defective condition of the roof, failed to take affirmative action before the fire to ensure that the landlord and roofer complied with Village ordinances, and then refused to allow LaBella to violate those safety standards by operating in the fire-damaged premises, all of which allegedly

---

[1] *General Casualty Company of Illinois as Subrogee of LaBella Winnetka, Inc. v. Avondale Group, Inc.* was filed in the Circuit Court of Cook County on September 17, 2007, and is pending as Case No. 2007-

deprived LaBella of a "property right" in the lease.  Counts III and IV are state law claims: Count III alleges a breach of a "duty" to LaBella, "as a taxpaying Winnetka business," not to "permit code or ordinance violations endangering LaBella or its patrons" (Dkt. 1 (Complaint) ¶ 45), while Count IV alleges that Defendants "intentionally interfered" with LaBella's lease and business by failing to require the landlord to repair the roof promptly after the fire and by allowing another restaurant to expand into part of LaBella's former premises.

For the reasons stated below, the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## ARGUMENT

### I.   THE COMPLAINT FAILS TO STATE A "CLASS OF ONE" EQUAL PROTECTION CLAIM.

#### A.   Plaintiff Fails to Allege Other Entities that Were Similarly Situated.

To state an equal protection claim, a complaint must allege that the defendant treated similarly situated persons differently, and that this difference in treatment was improper. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005).  To be considered "similarly situated," a plaintiff must be "*prima facie* identical in all relevant respects."  *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

LaBella's Complaint fails to state an equal protection claim because it does not allege that similarly situated parties were treated differently in the relevant respect.[2]  The Complaint does allege that Defendants disliked LaBella and liked other restaurants, making LaBella toe the line while treating other restaurants leniently.  For example, it alleges that liquor license rules, rules about what was permitted to be hung in the window, and ventilation and sanitation rules

---

L-9766.  *LaBella Winnetka, Inc. v. Winnetka II, LLC, et al.* was filed in the Circuit Court of Cook County on October 17, 2007, and is pending as Case No. 2007-L-11382.

[2] Remarkably, the Complaint actually stresses that LaBella is *unlike* any other restaurant, alleging its distinctive cuisine, the "widely-recognized personality of its maitre d' host," and that its downtown Winnetka premises were "unique." (Complaint ¶¶ 9, 10)

2

were enforced more strictly against LaBella than against other restaurants. (Complaint ¶ 26) But these allegations have nothing to do with the issues about which LaBella complains and seeks relief. For example, LaBella does not seek an order allowing signs in its window, or granting it a variance from the ventilation code, so as to be treated the same as the other restaurants; nor does it seek an order compelling other restaurants to take down their signs or be denied variances.

Rather than seek relief for these supposed dissimilar treatments, LaBella complains about, and seeks relief from, other alleged bad treatment, such as Defendants' failure to require the landlord to obtain a permit for the roof repair, failure to intervene to stop the roofer's alleged shoddy repairs, refusal to permit LaBella to reopen with a fire-damaged roof, and declining to intervene in LaBella's lease dispute with its landlord. (Complaint ¶¶ 16-19) Nowhere, however, does LaBella allege that others encountered such circumstances or experienced different treatment when they did. In short, LaBella does not identify others who were similarly situated to it in *these* respects, much less others who were similarly situated and yet were treated more favorably.

LaBella simply asserts instead, with sweeping generality, that there are multiple restaurants in the Village,[3] and that the Village's enforcement practices concerning various unspecified building codes and ordinances help other restaurants but hurt LaBella. But these generalizations are not enough to show "similarly situated" comparators for equal protection purposes. The "similarly situated" equal protection requirement demands that the comparators be similarly situated in a very precise way: "*identical* in *all* relevant respects." *Purze*, 286 F.3d at 455 (emphasis added). As the Seventh Circuit has held: "It is clear that similarly situated

---

[3] That they are all restaurants does not itself make them "similarly situated," not just because LaBella stresses its uniqueness and difference from other restaurants (Complaint, ¶¶ 9, 10), but more importantly because there is no suggestion that any of the other restaurants — or anyone else — faced circumstances like those that LaBella did (roof repair, fire, lease with a Fire and Casualty clause, landlord's termination of lease under that clause), and yet experienced different treatment.

3

individuals must be very similar indeed." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002-03 (7th Cir. 2004) (further discussion of "similarly situated" requirement for equal protection claims). The Complaint therefore fails to allege the essential "similarly situated" element of a "class of one" equal protection claim.

      **B.**      **Plaintiff Fails to Allege Irrational and Wholly Arbitrary Conduct.**

LaBella also cannot establish the second prong of its cause of action: that Defendants acted "for reasons of a personal nature unrelated to the duties of the defendant's position." *See Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000), *cert. denied*, 531 U.S. 1080 (2001). LaBella complains that Defendants did not require permits for the roof repairs, refused to inspect the work, did not enforce compliance with "the Village's building code and safety requirements," did not require the landlord to repair the roof "in a timely and orderly manner," did not enforce the "Village's requirements" for the roof repairs and did not attempt to stop the Landlord from performing allegedly "dangerous, unsupervised work which created potential fire hazards." (Complaint ¶¶ 16-19) These allegations fail as a matter of law because the Village does not have a property maintenance code, the work on the roof did not require permits, and the Village's Building Code does not authorize any employee or representative of the Village to engage in on-site supervision of private construction work.

The relevant codes to which LaBella refers are found in Title 15 of the Winnetka Village Code ("WVC"), entitled "Buildings and Construction." (*See* Ex. 1.)[4] The published Code of the Village of Winnetka establishes that the Village has a Building Code, Mechanical Code, Dwelling Code, Energy Code, Electrical Code, Plumbing Code, and Sewer Code, but does not have a maintenance code. While the Village has adopted the International Building Code of

---

[4] Copies of relevant portions of the WVC (Titles 2 and 15) are attached to this Memorandum as Exhibit 1. This Court may take judicial notice of these ordinances on a Rule 12(b)(6) motion to dismiss without

4

2003 by reference, it has specifically excluded that model code's property maintenance provisions. WVC § 15.08.020 A.1 (p. 9 of Title 15).

Nor was a permit required for the work being done on the roof. Permits are required for "construction activity, other than ordinary repairs." WVC § 15.32.010 (p. 51 of Title 15). The Winnetka Village Code defines "ordinary repair" as follows:

> "Ordinary repairs" means work on or repairs made to any part of an existing structure for the purpose of the structure's maintenance, provided, the work or repair does not affect or involve any structural element or any of the following: (1) the cutting away of any wall, partition or portion of wall; (2) changing the use or occupancy classification of the structure; (3) the fire hazard of the structure; (4) the reshingling or recovering of any roof; (5) electrical work; (6) plumbing work; (7) the installation or alteration of any means of egress or of any mechanical systems, including but not limited to heating, cooling and ventilation.

WVC § 15.04.050 B (p. 4 of Title 15). LaBella admits that the work being done on the roof was to repair a leak. (Complaint ¶¶ 17, 18)

Section 15.32.160 of the Village Code requires inspections to be done "from time to time during the course of the work until a final certificate of occupancy is issued, in order to determine that the permit work is being performed and has been completed in conformity with the approved construction documents and this code." WVC § 15.32.160 (p. 59 of Title 15). Whether to conduct additional inspections or to inspect work that is not subject to a permit lies within the discretion of the of the Director of Community Development. *Id.* (pp. 59-60 of Title 15). Since no permit was required, no inspections were required. Further, nothing in the Village Code requires or authorizes the Village to provide on-site supervision of construction activity. To the contrary, the property owner is responsible for all activity at the construction site, for scheduling the work authorized by the permit, and for completing the work before the permit expires. WVC §§ 15.32.150, 15.32.160, 15.32.190 (pp. 59, 60, 61 of Title 15).

---

converting it to one for summary judgment. *See, e.g.*, *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977).

5

LaBella's claim is nothing more than an unfounded insistence that Defendants should have enforced ordinances that either do not exist or do not apply, so as to protect LaBella from its landlord's alleged breach of LaBella's lease terms and from the negligence of the roofing contractor. The alleged refusal of Defendants to take such actions at the demand of LaBella cannot provide the basis for LaBella's equal protection claim. Since Defendants' actions were within the scope of their discretion under the Village Code, LaBella cannot establish that Defendants' actions were "irrational and wholly arbitrary," the fundamental standard established by the seminal case of *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (per curiam); *see also Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127-28 (7th Cir. 2004) (uneven enforcement of ordinances, without more, cannot provide basis for a class of one equal protection claim).

## II. THE COMPLAINT FAILS TO STATE A SUBSTANTIVE DUE PROCESS CLAIM.

### A. Defendants Had No Constitutional Duty to Protect LaBella from Its Landlord or Contractor.

The gravamen of Count II of the Complaint is that Defendants failed to take action to protect LaBella from the negligence of its landlord and the roofing contractor. Count II asserts that Defendants deprived LaBella of its alleged property right in its lease because they failed to intervene when the roofer was conducting dangerous roof repairs, failed to require the landlord to repair the fire damage promptly to allow LaBella to reopen, and did not prevent another restaurant from taking over part of its leased space. (Complaint ¶ 41) This Count fails to state a substantive due process claim because its core premise — that Defendants were responsible for the actions of others — is wrong as a matter of law.

LaBella initially asserts that Defendants failed to enforce "village ordinances and building codes" by failing to require a building permit for the pre-fire roof repair, without citing

6

or attaching any such ordinances or codes. (Complaint ¶¶ 16, 20, 24A, 26, 27, 27B, 28, 34) In fact, as discussed *supra* Part I(B), Section 15.32.010 of the Winnetka Village Code provides that such "ordinary repairs" do not require a permit.

Perhaps for this reason, LaBella also alleges Defendants' failure to intervene to benefit LaBella after the roof repair began, allowing the landlord to delay roof repairs while not permitting LaBella to remain open under the burned roof. (Complaint ¶ 41(C)) Such a failure to intervene, however, does not constitute a denial of due process. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 196-98, 201 (1989) (state's failure to protect individual against harm by third party, even if it was on notice of potential harm, does not violate substantive due process rights).

LaBella also complains about the landlord's termination of LaBella's lease and its leasing of part of the space to another restaurant. Again, however, Defendants had no due process duty to protect LaBella against these actions by third parties. Indeed, Paragraph 11 of the lease, entitled "Fire and Casualty," specifically provides that if the premises "shall be rendered untenantable by fire," the "Lessor may, at his option, terminate the lease or repair the Premises within sixty days." (*See* Ex. 2 ¶ 11.) As LaBella alleged in its state court complaint, the landlord exercised its option to terminate the lease after the fire. (Ex. 3 ¶¶ 46-47)[5]

---

[5] The lease (attached hereto as Ex. 2) was attached as Exhibit A to Plaintiff's state court complaint. That state court complaint (without exhibits) is attached hereto as Exhibit 3. The remaining exhibits to the state court complaint are insurance policies, which are irrelevant to this Motion and not included here. On a Rule 12(b)(6) motion, the court may consider documents, like the lease, that are "referred to in the plaintiff's complaint and are central to [its] claim." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). A court also may take judicial notice of and rely on matters of public record, including prior court proceedings, pleadings, orders, and transcripts. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

7

### B.    Plaintiff Cannot Circumvent Limitations on Procedural Due Process Claims by Attempting to Plead a Substantive Due Process Claim.

In attempting to assert a constitutional violation, LaBella has taken the unusual step of bringing a *substantive*, rather than procedural, due process claim. Had LaBella brought a procedural due process claim, it would have had to comply with *Parratt v. Taylor*, 451 U.S. 527 (1981), and its progeny, which hold that an alleged deprivation of a property interest by the government does not violate the Constitution if the state provides a meaningful post-deprivation remedy for the loss. *See, e.g.*, *Strasburger v. Board of Educ.*, 143 F.3d 351, 357 (7th Cir. 1998), *cert. denied*, 525 U.S. 1069 (1999).

LaBella, of course, has alleged no such lack of a meaningful state remedy — perhaps because it already is taking full advantage of the panoply of more than adequate remedies granted by the Illinois judicial system in its litigation against its landlord, the roofing contractor, and its insurance carrier. But *Parratt* cannot be circumvented in this manner. To prevent plaintiffs from eviscerating *Parratt* by bringing "substantive" due process claims, the law requires that they also show (1) that the government actions were arbitrary and irrational, *and* (2) that the government committed a separate substantive constitutional violation or that state remedies are inadequate to remedy the deprivation. *See, e.g.*, *id.* at 357-58; *Mercatus Group LLC v. Lake Forest Hosp.*, No. 07 C 2042, 2007 WL 4117607, at *15-16 (N.D. Ill. Nov. 15, 2007) (dismissing substantive due process claim when plaintiff had no valid class-of-one equal protection claim and had not alleged inadequacy of state remedies). Because LaBella has failed to assert a valid claim for equal protection, *see supra* Part I, and has not alleged that Illinois' remedies are inadequate, its substantive due process claim must be dismissed.

### III.    THE COMPLAINT FAILS TO STATE A SECTION 1983 *MONELL* CLAIM.

Municipal entities like the Village are not vicariously liable under Section 1983 for the acts of their employees. *See, e.g.*, *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-95

8

(1978). Instead, a municipality may be held liable only for its own actions taken pursuant to official municipal policy or custom. *See, e.g.*, *id.* at 691-92; *Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, at *3 (N.D. Ill. June 25, 2007) (Kendall, J.). To satisfy *Monell*, LaBella must allege "(1) an express policy; (2) a widespread practice that is so permanent and well-settled as to have the force of law; or (3) that the constitutional injury was caused by a person with final policymaking authority." *Id.*

In this case, LaBella has failed to articulate any theory for holding the Village liable. To the contrary, far from alleging a "policy" of the Village to violate his constitutional rights, LaBella admits that such alleged actions "*failed to conform* with Village ordinances." (Complaint ¶ 27(B)(ii) (emphasis added))  Nevertheless, given LaBella's repeated, conclusory intoning of "the Village and Williams" throughout the Complaint, it is possible that LaBella is contending that the Village should be liable for Williams' alleged actions because Williams allegedly had "final policymaking authority" with respect to these matters (even though the Complaint is silent on the subject). This argument is wrong as a matter of law.

Whether Williams is the person with final policymaking authority is purely a question of state law: "[S]tate law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). A court "would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id.* at 126.

Under the relevant law here — the Winnetka Village Code and the Illinois Municipal Code — Williams does not possess the final policymaking authority sufficient to hold the Village liable for his alleged actions. As a matter of Illinois law, the Winnetka Village Council, as the "legislative body of the Village," is the final policymaking authority for the Village.

9

WVC (Ex. 1) § 2.04.010 B (p. 2 of Title 2); 65 ILCS 5/5-3-6. In a managerial form of local government like Winnetka's, the Council is "the policy making body." *Pechous v. Slawko*, 357 N.E.2d 1144, 1150 (Ill. 1976); *see Village of Oak Park v. Illinois State Labor Relations Bd.*, 522 N.E.2d 161, 163 (Ill. App. Ct.) (in council-manager form of government, board is village's policymaking body), *appeal denied*, 526 N.E.2d 840 (Ill. 1988). Indeed, LaBella's own Complaint alleges that the Village is "governed by a Village Council." (Complaint ¶ 3)

The Village Manager, on the other hand, does not possess final policymaking authority. Instead, he is the Chief *Administrative* Officer of the Village, and is "*responsible to the Council for the management and operation*" of Village departments. WVC § 2.12.010 A (p. 6 of Title 2) (emphasis added); *see* 65 ILCS 5/5-3-7 (municipal manager "shall be the administrative head of the municipal government and . . . shall be responsible for the efficient administration of all departments"). Indeed, the fact that "a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion . . . . The official must also be responsible for establishing *final government policy* respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (emphasis added). As the Seventh Circuit has emphasized, persons with only administrative or executive powers are not "final policymakers" for purposes of Section 1983:

> *Monell*'s effort to limit municipal liability under § 1983 to acts that carry out local policy entails *distinguishing legislative from executive functions* . . . . [R]esponsibility for making law or setting policy . . . is authority to adopt rules for the conduct of government.

*Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992) (emphasis added; internal quotations omitted). Illinois village managers, like Williams, do not possess final policymaking authority under Monell. *See, e.g.*, *Kaupus v. Village of University Park*, No. 02 C 3674, 2003 WL 22048173, at *4 (N.D. Ill. Sept. 2, 2003) (village manager of Illinois municipality not final

10

policymaker); *Malec v. Klatzco*, 101 F. Supp. 2d 1066, 1075 (N.D. Ill. 2000) (dismissing *Monell* claim against Illinois municipality: "That . . . [Defendant] is Village Manager does not affect application of the *Monell* principle.").

### IV. ALL FEDERAL CLAIMS AGAINST WILLIAMS MUST BE DISMISSED AS REDUNDANT OF THOSE AGAINST THE VILLAGE.

The Complaint does not specify that Williams is named in his individual capacity. Accordingly, it is presumed that he is named in his official capacity as Village Manager. *E.g., Kolar v. City of Sangamon*, 756 F.2d 564, 568-69 (7th Cir. 1985). Because an official-capacity claim is actually a claim against the municipality, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), the Section 1983 claims against Williams are redundant of the claims against the Village, and should be dismissed for this reason as well. *See, e.g.*, *Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, at *5 (N.D. Ill. June 25, 2007).

### V. THE STATE LAW COUNTS SHOULD BE DISMISSED.

Because LaBella's federal constitutional claims fail as a matter of law, its supplemental state law claims should also be dismissed. *See* 28 U.S.C. § 1367(a). As demonstrated below, these claims also fail on the merits.

#### A. Count III ("Breach of Duty") Fails to State a Claim in Tort.

Count III purports to be a claim for some sort of vague, undefined tort, alleging, without explanation, that Defendants owed LaBella a "duty" to protect it from dangerous conduct by the roofer and "not to permit code or ordinance violations endangering LaBella or its patrons, specifically, or the public, generally." (Complaint ¶¶ 45, 47) No such duty exists. Illinois common law establishes that a "governmental entity and its employees owe no duty of care to individual members of the general public to provide government services." *Zimmerman v. Village of Skokie*, 697 N.E.2d 699, 702 (Ill. 1998). Specifically, "there is no common law duty to the general public for a municipality's failure to enforce an ordinance or building code."

11

*Millerick v. Village of Tinley Park*, 652 N.E.2d 17, 19 (Ill. App. Ct. 1995). Nor does LaBella allege a basis for finding that Defendants had a special duty to protect it from the acts of the roofers and the landlord, since any alleged injury must have occurred "while the plaintiff is under the direct and immediate control of employees or agents of the municipality." *Id.* at 19. LaBella does not and cannot allege that it was under the direction and immediate control of Winnetka.

        **B.**      **Count IV ("Intentional Interference") Should Be Dismissed.**

Count IV purports to state a claim for "intentional interference" with LaBella's lease and its "continued prospective operation of its business." (Complaint ¶ 55) LaBella alleges that Defendants interfered with LaBella's lease after the fire by (1) not letting LaBella begin repairs on its restaurant before the roof was repaired, (2) not requiring the landlord to make prompt roof repairs, and (3) encouraging another restaurant to take over some of LaBella's premises. (Complaint ¶ 53) The premise of each of these allegations is that LaBella had an entitlement to a continuing lease. However, Paragraph 11 of LaBella's lease expressly gave the landlord the sole option to terminate the lease 60 days after the fire, and LaBella's state court complaint acknowledges that the landlord did just that, sending LaBella written notification in May and again in June. (Ex. 2 ¶ 11; Ex. 3 ¶¶ 46-47)

To state a cause of action for tortious interference with a contract, a complaint must contain factual allegations of (1) a valid and enforceable contract, (2) the defendant's knowledge of the contract, (3) an intentional and unjustified inducement of a breach of contract, (4) a subsequent breach by the other party as a result of the defendant's wrongful conduct; and (5) resulting damages. *HPI Health Care Serv., Inc. v Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 675 (Ill. 1989). Similarly, to state a cause of action for tortious interference with a prospective business advantage, a complaint must contain allegations of a reasonable expectancy of a valid business relationship and the defendant's knowledge of the expectancy, coupled with the same

allegations of intentional and unjustified interference, the resulting breach or termination of the expectancy, and damages from the defendant's interference. *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001).

LaBella's Complaint fails to establish either cause of action for interference; the only element alleged is that Defendants knew of the lease between LaBella and its landlord and of LaBella's alleged expectation that its business would continue. However, the facts alleged, both in the Complaint here and in the one state court, including the terms of LaBella's lease (Exs. 2-3), negate the other elements of LaBella's claim. First, LaBella's lease is not enforceable, given the landlord's unilateral right to terminate pursuant to the lease's Fire and Casualty provision. (Ex. 2 ¶11) With its lease terminated by the landlord (Ex. 3 ¶¶ 45-46), LaBella's claimed expectation of continued operation of its business at the leased premises is untenable. In addition, the landlord's termination of the lease (rightly or not) leaves no question that any breach was the result of the landlord's actions, not Defendants'. Further, any damages suffered by LaBella as a result of the purported breach stem directly from the landlord's actions and from LaBella's own inexplicable failure to protect its lease interests upon receiving notice of the landlord's intent to terminate the lease in May, six months before this lawsuit was filed. (Ex. 3 ¶ 45)

      C.    **Defendants Are Immune from Tort Liability.**

Even if Counts III and IV state valid causes of action in tort, Defendants are immune from liability for those claims pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Act"). The Act immunizes municipalities, their officials, and their employees from liability for failing to enforce any laws, failing to issue permits, failing to inspect private property, and negligently inspecting private property. 745 ILCS 10/2-103, 2-

13

104, 2-105, 2-202, 2-205, 2-206, 2-207.  And because the Village's employees are immune from liability for their acts or omissions, the Village is also immune.  745 ILCS 10/2-110.

## VI. PUNITIVE DAMAGES CANNOT BE RECOVERED AGAINST DEFENDANTS.

Finally, LaBella's claim for punitive damages is facially improper.

First, because Williams is not named in his individual capacity, the claims for punitive damages under the federal counts are actually against the Village itself.  *See supra* Part IV.  Because a municipality "is immune from punitive damages" under Section 1983, the punitive damages claim here should be stricken.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

Second, punitive damages against Williams individually are also unavailable under LaBella's state law claims.  Pursuant to Section 2-102 of the Tort Immunity Act, "no public official is liable to pay punitive or exemplary damages in an action arising out of an act or omission made by the public official while serving in the official executive, legislative, quasi-legislative or quasi-judicial capacity."  745 ILCS 10/2-102.  As a public official, Williams is therefore immune from punitive damages liability.

## **CONCLUSION**

For these reasons, Defendants' Motion should be granted, and Plaintiff's Complaint should be dismissed with prejudice.

Date:  December 21, 2007

Respectfully submitted,

/s/ James A. Clark
One of the Attorneys for Defendants
The Village of Winnetka and Douglas Williams

Kathleen A. Reid
Mulherin, Rehfeldt & Varchetto, P.C.
211 South Wheaton Avenue
Suite 200
Wheaton, Illinois 60187
Tel:  (630) 653-9300
Fax: (630) 653-9316
KReid@MRVLaw.com

Katherine S. Janega
Village Attorney
Village of Winnetka
510 Green Bay Road
Winnetka, Illinois 60093
Tel.:  (847) 716-3544
Fax:  (847) 501-3180
KJanega@winnetka.org

James A. Clark
Schiff Hardin LLP
6600 Sears Tower
Chicago, Illinois 60606
Tel:  (312) 258-5500
Fax:  (312) 258-5600
jclark@schiffhardin.com

**CERTIFICATE OF SERVICE**

I, James A. Clark, an attorney, certify that on December 21, 2007, a copy of the foregoing Memorandum in Support of Defendants' Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

Dean A. Dickie
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
(312) 627-2149
Fax: (866) 546-9546
Email:  ddickie@dykema.com

Lee T. Hettinger
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
(312) 876-1700
Email:  lhettinger@dykema.com

Sara C. Arroyo
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
(312) 627-5600
Email:  sarroyo@dykema.com

/s/ James A. Clark