STORE LEASE No. 9

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT |
|---|---|---|---|
| | BEGINNING | ENDING | |
| May 6, 1993 | August 1, 1993 | July 31, 1996 | $3116.67/Mo* |

Location of Premises: One Chestnut Court, Winnetka

*$2566.67/Mo. Lease payment subject to 3% annual increase on August 1 of each year. $550.00 Represents taxes to year 1993. Percentage of any increase thereafter in subsequent years

Purpose: Restaurant

**Square footage 2160 plus 20% of 200 sq. ft. as common elements. All parties agree to remeasure after work is completed. ***Rider provides for two additional five year terms which Lessee may execute.

LESSEE
NAME: Marianne Gigiolio and Marion Gajek, a Partnership
ADDRESS: 422 Ridge Avenue
CITY: Winnetka, IL 60093

LESSOR
NAME: LARS NILSSON
ADDRESS: 874 GREEN BAY RD.,
CITY: WINNETKA, IL. 60093

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor solely for the above purpose the premises designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

**RENT**

1. Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above, monthly in advance, until termination of this lease, at Lessor's address stated above or such other address as Lessor may designate in writing.

**WATER, GAS AND ELECTRIC CHARGES**

2. Lessee will pay, in addition to the rent above specified, all water rents, gas and electric light and power bills taxed, levied or charged on the Premises, for and during the time for which this lease is granted, and in case said water rents and bills for gas, electric light and power shall not be paid when due, Lessor shall have the right to pay the same, which amounts so paid, together with any sums paid by Lessor to keep the Premises in a clean and healthy condition, as herein specified, are declared to be so much additional rent and payable with the installment of rent next due thereafter.

**SUBLETTING; ASSIGNMENT**

3. The Premises shall not be sublet in whole or in part to any person other than Lessee, and Lessee shall not assign this lease without, in each case, the consent in writing of Lessor first had and obtained; nor permit to take place by any act or default of himself or any person within his control any transfer by operation of law of Lessee's interest created hereby; nor offer for lease or sublease the Premises, nor any portion thereof, by placing notices or signs of "To Let," or any other similar sign or notice in any place, nor by advertising the same in any newspaper or place or manner whatsoever without, in each case, the consent in writing of Lessor first had and obtained. If Lessee, or any one or more of the Lessees, if there be more than one, shall make an assignment for the benefit of creditors, or shall be adjudged a bankrupt, Lessor may terminate this lease, and in such event Lessee shall at once pay Lessor a sum of money equal to the entire amount of rent reserved by this lease for the then unexpired portion of the term hereby created, as liquidated damages. Lessor will not unreasonably withhold subletting under the terms of the lease as contained herein.

**LESSEE NOT TO MISUSE**

4. Lessee will not permit any unlawful or immoral practice, with or without his knowledge or consent, to be committed or carried on in the Premises by himself or by any other person. Lessee will not allow the Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that hereinbefore specified. Lessee will not keep or use or permit to be kept or used in or on the Premises or any place contiguous thereto any flammable fluids or explosives, without the written permission of Lessor first had and obtained. Lessee will not load floors beyond the floor load rating prescribed by applicable municipal ordinances. Lessee will not use or allow the use of the Premises for any purpose whatsoever that will injure the reputation of the Premises or of the building of which they are a part.

**CONDITION ON POSSESSION**

5. Lessee has examined and knows the condition of the Premises ~~and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by Lessor, or his agent, prior to or at the execution of this lease that are not herein expressed~~.

**REPAIRS AND MAINTENANCE**

6. Lessee shall keep the Premises and appurtenances thereto in a clean, sightly and healthy condition, and in good repair, all according to the statutes and ordinances in such cases made and provided, and the directions of public officers thereunto duly authorized, all at his own expense, and shall yield the same back to Lessor upon the termination of this lease, whether such termination shall occur by expiration of the term, or in any other manner whatsoever, in the same condition of cleanliness, repair and sightliness as at the date of the execution hereof, loss by fire and reasonable wear and tear excepted. Lessee shall make all necessary repairs and renewals upon Premises and replace broken globes, glass and fixtures with material of the same size and quality as that broken and shall insure all glass in windows and doors of the Premises at his own expense. If, however, the Premises shall not thus be kept in good repair and in a clean, sightly and healthy condition by Lessee, as aforesaid, Lessor may enter the same, himself or by his agents, servants or employes, without such entering causing or constituting a termination of this lease or an interference with the possession of the Premises by Lessee, and Lessor may replace the same in the same condition of repair, sightliness, healthiness and cleanliness as existed at the date of execution hereof, and Lessee agrees to pay Lessor, in addition to the rent hereby reserved, the expenses of Lessor in thus replacing the Premises in that condition. Lessee shall not cause or permit any waste, misuse or neglect of the water, or of the water, gas or electric fixtures.

**ACCESS TO PREMISES**

7. Lessee will allow Lessor or any person authorized by Lessor free access to the Premises for the purpose of examining or exhibiting the same, or to make any repairs or alterations thereof which Lessor may see fit to make, and Lessee will allow Lessor to have placed upon the Premises at all times notices of "For Sale" and "For Rent", and Lessee will not interfere with the same.

**NON-LIABILITY OF LESSOR**

8. Except as provided by Illinois statute, Lessor shall not be liable to Lessee for any damage or injury to him or his property occasioned by the failure of Lessor to keep the Premises in repair, and shall not be liable for any injury done or occasioned by wind or by or from any defect of plumbing, electric wiring or of insulation thereof, gas pipes, water pipes or steam pipes, or from broken stairs, porches, railings or walks, or from the backing up of any sewer pipe or down-spout, or from the bursting, leaking or running of any tank, tub, washstand, water closet or waste pipe, drain, or any other pipe or tank in, upon or about the Premises or the

SHOULD LESSOR'S MORTGAGEE OR FINANCE COMPANY REQUIRE THAT LESSEE EXECUTES A SUBORDINATION AGREEMENT AND ESTOPPEL CERTIFICATE, LESSEE HEREBY AGREES TO EXECUTE THESE DOCUMENTS IN A TIMELY MANNER.

EXHIBIT A

building of [...] they are a part nor from the escape of steam or hot water, [...] any radiator, it being agreed that said radiators are under the control of Lessee, nor for any such damage or injury occasioned by snow or ice being upon or coming through the roof, skylight, trap-door, stairs, walks or any other place upon or near the Premises, or otherwise, nor for any such damage or injury done or occasioned by the falling of any fixture, plaster or stucco, nor for any damage or injury arising from any act, omission or negligence of co-tenants or of other persons, occupants of the same building or of adjoining or contiguous buildings or of owners of adjacent or contiguous property, or of Lessor's agents or Lessor himself, all claims for any such damage or injury being hereby expressly waived by Lessee.

**RESTRICTIONS (SIGNS, ALTERATIONS, FIXTURES)**
9. Lessee shall not attach, affix or exhibit or permit to be attached, affixed or exhibited, except by Lessor or his agent, any articles of permanent character or any sign, attached or detached, with any writing or printing thereon, to any window, floor, ceiling, door or wall in any place in or about the Premises, or upon any of the appurtenances thereto, without in each case the written consent of Lessor first had and obtained; and shall not commit or suffer any waste in or about said premises; and shall make no changes or alterations in the Premises by the erection of partitions or the papering of walls, or otherwise, without the consent in writing of Lessor; and in case Lessee shall affix additional locks or bolts on doors or window, or shall place in the Premises lighting fixtures or any fixtures of any kind, without the consent of Lessor first had and obtained, such locks, bolts and fixtures shall remain for the benefit of Lessor, and without expense of removal or maintenance to Lessor. Lessor shall have the privilege of retaining the same if he desires. If he does not desire to retain the same, he may remove and store the same, and Lessee agrees to pay the expense of removal and storage thereof. The provisions of this paragraph shall not however apply to Lessee's trade fixtures, equipment and moveable furniture.

**HEAT**
10. Where building is equipped for the purpose, Lessor shall furnish to Lessee a reasonable amount of heat, from October 1st to May 1st, whenever in Lessor's judgment necessary for comfortable use of the Premises, during customary business hours (excluding Sundays and holidays), but not earlier than 8 a.m. nor later than 11 p.m. unless specifically stated herein. Lessor does not warrant that heating service will be free from interruptions caused by strike, accident or other cause beyond the reasonable control of Lessor, or by renewal or repair of the heating apparatus in the building. Any such interruption shall not be deemed an eviction or disturbance of Lessee's use and possession of Premises, nor render Lessor liable to Lessee in damages. All claims against Lessor for injury or damage arising from failure to furnish heat are hereby expressly waived by Lessee.

**FIRE AND CASUALTY**
11. In case the Premises shall be rendered untenantable by fire, explosion or other casualty, Lessor may, at his option, terminate this lease or repair the Premises within sixty days. If Lessor does not repair the Premises within said time, or the building containing the Premises shall have been wholly destroyed, the term hereby created shall cease and determine.

**TERMINATION; HOLDING OVER**
12. At the termination of the term of this lease, by lapse of time or otherwise, Lessee will yield up immediate possession of the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will return the keys therefor to Lessor at the place of payment of rent. If Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then Lessor may at its option within thirty days after termination of the term serve written notice upon Lessee that such holding over constitutes either (a) renewal of this lease for one year, and from year to year thereafter, at double the rental (computed on an annual basis) specified in Section 1, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified in Section 1, or (c) creation of a tenancy at sufferance, at a rental of $150.00 dollars per day for the time Lessee remains in possession. If no such written notice is served then a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee. The provisions of this paragraph shall not constitute a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall receipt of any rent or any other act in apparent affirmance of tenancy operate as a waiver of the right to terminate this lease for a breach of any of the covenants herein.

**LESSOR'S REMEDIES**
13. If Lessee shall vacate or abandon the Premises or permit the same to remain vacant or unoccupied for a period of ten days, or in case of the non-payment of the rent reserved hereby, or any part thereof, or of the breach of any covenant in this lease contained, Lessee's right to the possession of the Premises thereupon shall terminate with or (to the extent permitted by law) without any notice or demand whatsoever, and the mere retention of possession thereafter by Lessee shall constitute a forcible detainer of the Premises; and if the Lessor so elects, but not otherwise, and with or without notice of such election or any notice or demand whatsoever, this lease shall thereupon terminate, and upon the termination of Lessee's right of possession, as aforesaid, whether this lease be terminated or not, Lessee agrees to surrender possession of the Premises immediately, without the receipt of any demand for rent, notice to quit or demand for possession of the Premises whatsoever, and hereby grants to Lessor full and free license to enter into and upon the Premises or any part thereof, to take possession thereof with or (to the extent permitted by law) without process of law, and to expel and to remove Lessee or any other person who may be occupying the Premises or any part thereof, and Lessor may use such force in and about expelling and removing Lessee and other persons as may reasonably be necessary, and Lessor may re-possess himself of the Premises as of his former estate, but such entry of the Premises shall not constitute a trespass or forcible entry or detainer, nor shall it cause a forfeiture of rents due by virtue thereof, nor a waiver of any covenant, agreement or promise in this lease contained, to be performed by Lessee. Lessee hereby waives all notice of any election made by Lessor hereunder, demand for rent, notice to quit, demand for possession, and any and all notices and demands whatsoever, of any and every nature, which may or shall be required by any statute of this state relating to forcible entry and detainer, or to landlord and tenant, or any other statute, or by the common law, during the term of this lease or any extension thereof. The acceptance of rent, whether in a single instance or repeatedly, after it falls due, or after knowledge of any breach hereof by Lessee, or the giving or making of any notice or demand, whether according to any statutory provision or not, or any act or series of acts except an express written waiver, shall not be construed as a waiver of Lessor's right to act without notice or demand or of any other right hereby given Lessor, or as an election not to proceed under the provisions of this lease.

**RIGHT TO RELET**
14. If Lessee's right to the possession of the Premises shall be terminated in any way, the Premises, or any part thereof, may, but need not (except as provided by Illinois statute), be relet by Lessor, for the account and benefit of Lessee, for such rent and upon such terms and to such person or persons and for such period or periods as may seem fit to the Lessor, but Lessor shall not be required to accept or receive any tenant offered by Lessee, nor to do any act whatsoever or exercise any diligence whatsoever, in or about the procuring of another occupant or tenant to mitigate the damages of Lessee or otherwise, Lessee hereby waiving the use of any care or diligence by Lessor in the reletting thereof; and if a sufficient sum shall not be received from such reletting to satisfy the rent hereby reserved, after paying the expenses of reletting and collection, including commissions to agents, and including also expenses of redecorating, Lessee agrees to pay and satisfy all deficiency; but the acceptance of a tenant by Lessor, in place of Lessee, shall not operate as a cancellation hereof, nor to release Lessee from the performance of any covenant, promise or agreement herein contained, and performance by any substituted tenant by the payment of rent, or otherwise, shall constitute only satisfaction pro tanto of the obligations of Lessee arising hereunder.

**COSTS AND FEES**
15. Lessee shall pay upon demand all Lessor's costs, charges and expenses, including fees of attorneys, agents and others retained by Lessor, incurred in enforcing any of the obligations of Lessee under this lease or in any litigation, negotiation or transaction in which Lessor shall, without Lessor's fault, become involved through or on account of this lease.

CONFESSION OF JUDGMENT

16. ~~hereby irrevocably constitutes and appoints any attorney any court of record in this~~ State, to be his true and lawful attorney for him and in his name and stead, to enter his appearance in any suit or suits that may be brought in any court in this State at any time when any money is due hereunder for rent or otherwise, to waive the issuing of process and service thereof and trial by jury or otherwise, and to confess a judgment or judgments for such money so due and for costs of suit and for reasonable attorney's fees in favor of Lessor, and to release all errors that may occur or intervene in such proceedings, including the issuance of execution upon any such judgment, and to stipulate that no writ of error or appeal shall be prosecuted from such judgment or judgments, nor any bill in equity filed, nor any proceedings of any kind taken in law or equity to interfere in any way with the operation of such judgment or judgments or of execu-~~tion issued thereon and to consent that execution may immediately issue thereon.~~

LESSOR'S LIEN

17. Lessor shall have a first lien upon the interest of Lessee under this lease, to secure the payment of all moneys due under this lease, which lien may be foreclosed in equity at any time when money is overdue under this lease; and the Lessor shall be entitled to name a receiver of said leasehold interest, to be appointed in any such foreclosure proceeding, who shall take possession of said premises and who may relet the same under the orders of the court appointing him.

REMOVAL OF OTHER LIENS

18. In event any lien upon Lessor's title results from any act or neglect of Lessee, and Lessee fails to remove said lien within ten days after Lessor's notice to do so, Lessor may remove the lien by paying the full amount thereof or otherwise and without any investigation or contest of the validity thereof, and Lessee shall pay Lessor upon request the amount paid out by Lessor in such behalf, including Lessor's costs, expenses and counsel fees.

REMEDIES NOT EXCLUSIVE

19. The obligation of Lessee to pay the rent reserved hereby during the balance of the term hereof, or during any extension hereof, shall not be deemed to be waived, released or terminated, ~~nor shall the right and power to confess judgment given in paragraph 16 hereof be deemed to be waived or terminated~~ by the service of any five-day notice, other notice to collect, demand for possession, or notice that the tenancy hereby created will be terminated on the date therein named, the institution of any action of forcible detainer or ejectment or any judgment for possession that may be rendered in such action, or any other act or acts resulting in the termination of Lessee's right to possession of the Premises. The Lessor may collect and receive any rent due from Lessee, and payment or receipt thereof shall not waive or affect any such notice, demand, suit or judgment, or in any manner whatsoever waive, affect, change, modify or alter any rights or remedies which Lessor may have by virtue hereof.

NOTICES

20. Notices may be served on either party, at the respective addresses given at the beginning of this lease, either (a) by delivering or causing to be delivered a written copy thereof, or (b) by sending a written copy thereof by United States certified or registered mail, postage prepaid, addressed to Lessor or Lessee at said respective addresses in which event the notice shall be deemed to have been served at the time the copy is mailed.

MISCELLANEOUS

21. (a) Provisions typed on this lease and all riders attached to this lease and signed by Lessor and Lessee are hereby made a part of this lease.

(b) Lessee shall keep and observe such reasonable rules and regulations now or hereafter required by Lessor, which may be necessary for the proper and orderly care of the building of which the Premises are a part.

(c) All covenants, promises, representations and agreements herein contained shall be binding upon, apply and inure to the benefit of Lessor and Lessee and their respective heirs, legal representatives, successors and assigns.

(d) The rights and remedies hereby created are cumulative and the use of one remedy shall not be taken to exclude or waive the right to the use of another.

(e) The words "Lessor" and "Lessee" wherever used in this lease shall be construed to mean Lessors or Lessees in all cases where there is more than one Lessor or Lessee, and to apply to individuals, male or female, or to firms or corporations, as the same may be described as Lessor or Lessee herein, and the necessary grammatical changes shall be assumed in each case as though fully expressed. ~~If there is more than one Lessee the warrant of attorney in paragraph 16 is given jointly and severally and shall authorize the entry of appearance of, and waiver of issuance of process and trial by jury by, and confession of judgment against any one or more of such Lessees, and shall authorize the performance of every other act in the name of and on behalf of any one or more of such Lessees.~~

SEVERABILITY

22. If any clause, phrase, provision or portion of this lease or the application thereof to any person or circumstance shall be invalid, or unenforceable under applicable law, such event shall not affect, impair or render invalid or unenforceable the remainder of this lease nor any other clause, phrase, provision or portion hereof, nor shall it affect the application of any clause, phrase, provision or portion hereof to other persons or circumstances.

OPTION TO TERMINATE

~~23. In the event that the Lessor, his successors, attorneys or assigns shall desire to regain the possession of the Premises herein described, for any reason, Lessor shall have the option of so doing upon giving the Lessee thirty days' notice of Lessor's election to exercise such option.~~

CONFESSION OF JUDGMENT

24. If default be made in the payment of rent, or any installment thereof, as herein provided, Lessee hereby irrevocably constitutes any attorney of any Court of Record in this State, attorney for Lessee and in Lessee's name, from time to time, to enter the appearance of Lessee, to waive the issuance of process and service thereof, to waive trial by jury, and to confess judgment in favor of Lessor against Lessee for the amount of rent which may be then due hereunder, together with costs of suit and a reasonable sum for plaintiff's attorney's fees in or about the entry of such judgment, and to waive and release all errors and right of appeal from any such judgment, and to consent to an immediate execution thereon.

PLURALS; SUCCESSORS

~~25. The words "Lessor" and "Lessee" wherever used in this lease shall be construed to mean Lessors or Lessees in all cases where there is more than one Lessor or Lessee, and to apply to individuals, male or female, or to firms or corporations, as the same may be described as Lessor or Lessee herein, and the necessary grammatical changes shall be assumed in each case as though fully expressed. All covenants, promises, representations and agreements herein contained shall be binding upon, apply and inure to the benefit of Lessor and Lessee and their respective heirs, legal representatives, successors and assigns.~~

RIDER TO LEASE DATED

1993 ~~XXXXXXXXXXXXXXXX~~

BETWEEN Lars Nilsson

LESSOR AND Marianne Gigiolio and

Marion Gajek   LESSEE (a partnership)

1. Control of Rider: Should any inconsistency appear between this Rider and the form portion of the Lease herein referred, this Rider shall control.

2. Lessee shall pay a monthly rental of see front of lease Dollars per month and the monthly rental shall commence as of see front of lease, and shall be payable in advance on the first day of each month until the termination of the Lease.

3. ~~In addition to~~ the rent provided for in paragraph 2 above, ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ *includes $3.00 per square foot of the Premises as Lessee's share of real estate taxes.

4. Notwithstanding any provision herein to the contrary, Lessee agrees to pay the Lessor additional rental in the amount of $100.00 if one or both of the following events occurs:

a) Whenever a monthly rental payment or additional rental due under paragraph 4 herein is tendered and received later than the fifth (5th) day of the month; or

b) Whenever a check is tendered for payment of rent is returned without payment by Lessee's bank, for whatever reason.

5. A security deposit in the amount of one month's rent, ~~XXXXXX~~ shall be paid to Lessor by Lessee at the time of the execution of this Lease. This security deposit shall be held as security for the performance of all covenants and agreements of Lessee hereunder. Lessor may at any time or times apply all or any portion thereof to the payment of any amounts due Lessor from the Lessee. The security deposit is not to be construed as applicable against final rent payment or payments required under this Lease. Upon termination of this Lease and full performance by Lessee of all of its obligations hereunder, so much of the security deposit as remains unapplied shall be returned to Lessee. The security deposit shall not bear interest.

6. The Lessee shall have a right to remodel the interior of the demised premises, at its own expense, as may be necessary to fit the same for its business on the condition: 1) that such remodeling plans and specifications meet all requirements of the Village of Winnetka Building Code for issuance of such permit ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ and 2) that all plans for such remodeling shall first be approved by the Lessor which approval shall not be unreasonably withheld; and 3) that Lessee shall furnish Lessor with a waiver of mechanic's lien for all work undertaken as part of the remodeling; and 4) that such remodeling work shall also be approved, if necessary, by Lessor's mortgagee so as not to give rise to a declaration of default. Lessee may also, at its own expense, install such counters, fixtures, machinery and equipment upon or within the leased premises as Lessee may consider necessary to conduct its business. At any time prior to the expiration or earlier termination of the Lease, Lessee may remove any or all such alterations, additions, or installations in such a manner as will not substantially injure the leased premises. In the event Lessee shall elect to make such removal, Lessee shall restore the premises, or the portion or portions affected by such removal, to the same condition as existed prior to the making of such alteration, addition or installation, ordinary wear and tear, damage by fire or other unavoidable cause excepted.

All alterations, additions, or installations not so removed by Lessee shall become the property of Lessor without liability on Lessor's part to pay for the same.

7. Lessee shall maintain insurance coverage in an amount sufficient to pay for the replacement of all plate glass installed in the demised premises, in the event of breakage due to whatever cause. In the event of breakage of plate glass, Lessee shall be responsible to protect the interior of the premises from whatever hazards arise as a result of the breakage.

8. Lessee will install, repair and maintain at its cost the _____ air conditioning unit(s). ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

9. Lessee agrees to obtain all licenses and permits, at its own expense, and so conduct its business on these premises that its activities fully conform to all codes and ordinances of the Village of Winnetka.

10. Lessor's Remedies:

a) All rights and remedies of Lessor herein enumerated shall be cumulative and none shall exclude any other right allowed by law.

b) If any voluntary or involuntary petition or similar pleading under any section or sections of the Bankruptcy or Insolvency Act shall be filed by or against Lessee, or any voluntary or involuntary proceeding in any court or tribunal shall be instituted to declare Lessee insolvent or unable to pay Lessee's debts, or Lessee makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for Lessee, or for the major part of Lessee's property and, in the case of an involuntary petition or proceeding, the petition or proceeding is not dismissed within thirty (30) days, from the date it is filed, Lessor may elect, but is not required, with or without notice of such election and with or without entry or other action by Lessor, to forthwith terminate this Lease. Notwithstanding any other provision of the Lease, upon such termination, Lessor shall forthwith be entitled to recover damages in an amount equal to the value of the rent specified in the form portion of this Lease for the residue of the term plus any other sums then due hereunder.

c) If Lessee defaults in the payment of rent and such default continues for five (5) or more days after the same is due and payable, or if Lessee defaults in the prompt and full performance of any other provisions of this Lease and Lessee does not cure the default within thirty (30) days after written demand by Lessor that the default be cured (unless the default involves a hazardous condition which shall be cured forthwith upon Lessor's demand), or if the leasehold interest of Lessee is levied upon under execution or is attached by process of law or if Lessee abandons the premises then in any such event, Lessor may, if Lessor so elects, but not otherwise, with or without notice of such election and with or without any demand whatsoever, either forthwith terminate this Lease and Lessee's right to possession of the premises.

d) Upon termination of this Lease, whether by lapse of time or otherwise, or upon any termination of the Lessee's right to possession without termination of the Lease, the Lessee shall surrender possession and vacate the premises immediately, and deliver possession thereof to the Lessor, and hereby grants to the Lessor full and free license to enter into and upon the premises in such event, with or without process of law, and to repossess Lessor of the premises as of Lessor's former estate, and to expel or remove Lessee or any others who may be occupying or within the premises and to remove any and all property therefrom, using such force as may be necessary, without being deemed in any manner guilty of trespass, eviction or forcible entry and detainer or conversion of property and without relinquishing the Lessor's rights to rent or any other right given to Lessor hereunder or by operation of law.

~~Lessee expressly waives the necessity of any demand for the payment of rent or for possession and the service of any notice of Lessor's election to terminate this Lease or to re-enter the premises, including any and every form of demand and notice prescribed by any statute or other law,~~ and agrees that the simple breach of any covenant or provision of this Lease by Lessee shall, of itself, without the service of any notice or demand whatsoever, constitute a forcible detainer by Lessee of the premises within the meaning of the statutes of the State of Illinois. In such event, Lessor shall forthwith be entitled to recover damages in an amount equal to the value of the rent specified in the form portion of this Lease for the residue of the term plus any other sums then due hereunder and all such sums shall immediately become due and payable.

e) (i) If Lessee abandons the premises or if Lessor elects to terminate Lessee's right to possession only, without terminating the Lease pursuant to a right granted to Lessor hereunder, Lessor may, at Lessor's option, enter into the premises, remove tenant's signs and other evidence of tenancy, and take and hold possession thereof as in paragraph (d) of this section provided without such entry and possession terminating the Lease or releasing Lessee, in whole or in part, from Lessee's obligation to pay the rent hereunder for the full term. In any such case, Lessee shall pay forthwith to Lessor, if Lessor so elects, in lieu of making the regular payments of rent required hereunder, a sum equal to the entire amount of rent specified in the form portion of this Lease for the residue of the term plus any other sums then due hereunder.

(ii) Upon and after entry into possession without termination of the Lease, Lessor may but need not, relet the premises or any part thereof for the account of Lessee to any person, firm or corporation other than Lessee, for such rent, for such time and upon such terms as Lessor, in Lessor's sole discretion, shall determine. Lessor shall not be required to accept any tenant offered by Lessee or to observe any instruction given by Lessee about such reletting. In any such case, Lessor may make repairs, alterations and additions in or to the premises and redecorate the same to the extent deemed by Lessor necessary or desirable. Lessee shall, upon demand, pay the cost thereof, together with Lessor's expenses of the reletting.

(iii) If Lessor has not elected to collect Lessor's damages as provided in paragraph e) (i) of this section, and if the consideration collected by Lessor upon any such reletting for Lessee's account is not sufficient to pay monthly the full amount of the monthly rental reserved in this Lease, together with, over the term of such new Lease, the costs of repair, alterations, additions, redecorating and Lessor's other costs and expenses of regaining possession and reletting the premises, Lessee shall pay to Lessor the amount of such monthly deficiency upon demand.

f) No waiver of default of Lessee shall be implied to affect, and no express waiver shall affect, any default other than the default specified in such waiver and the date due shall not be implied to affect any default other than the default in payment of rent brought current by such tender of rent.

g) If Lessee at any time fails to make any payment or perform any other act on its part to be made or performed under this Lease, Lessor may, but shall not be obligated to, after thirty-day notice or demand and without waiving or releasing Lessee from any obligation under this Lease, make such payment or perform such other act to the extent Lessor may deem desirable and in connection therewith to pay expenses and employ legal counsel. All sums so paid by Lessor and all costs, charges and expenses incurred by Lessor in connection therewith or incurred by Lessor in any litigation, negotiation or transaction in which Lessee's obligations hereunder or incurred by Lessor in any litigation, negotiation or transaction in which Lessee causes Lessor, without Lessor's fault to be involved or concerned (including but not limited to, reasonable attorney's fees and costs) shall be payable upon demand, together with interest thereon at the rate of eight (8%) percent per annum, from the date such sum was paid or such charge, cost or expense was incurred and Lessor shall have the same rights and remedies for the non-payment thereof as in the case of default in the payment of rent hereunder.

11. Insurance:

a) Liability Insurance. Lessee shall procure from a company or companies satisfactory to Lessor and maintain during the term of this Lease, at its own cost and expense, a policy or policies of insurance in form satisfactory to Lessor, insuring Lessee, Lessor, the titleholder of the land or improvements and the agents, employees and/or beneficiaries, if any, against public liability, property damage, loss by fire, extended coverage and worker's compensation coverage, with respect to the leased premises and the business operated by Lessee, with such limits for bodily injury as to each person and as to each accident and for property damage as Lessor may from time to time require. Lessee shall at the commencement of this Lease carry public liability and property damage insurance in the minimal amounts of Three Hundred Thousand ($300,000.00) Dollars in respect of injury to any one person and Five Hundred Thousand ($500,000.00) Dollars in respect of any one accident, and Fifty Thousand ($50,000.00) property damage.

b) Increase in Fire Insurance Premium. Lessee agrees that it will not keep, use, sell or offer for sale in or upon the leased premises any article which may be prohibited by the standard form of fire insurance policy. Lessee agrees to pay any increase in premium for fire and extended coverage insurance that may be charged during the term of this Lease on the amount of such insurance which may be carried by Lessor on premises or buildings of which the leased premises are a part, resulting from the type of merchandise sold or equipment installed by Lessee in the leased premises; whether or not Lessor has consented to the same. In determining whether increased premiums are the result of Lessee's use of the leased premises, a schedule, issued by the organization making the insurance rate on the leased premises, showing the various components of such rate, shall be conclusive evidence of the several items and charges which make up the fire insurance rate on the premises.

c) Cancellation. Any insurance required to be procured and maintained by Lessee under the provisions of this Lease shall not be subject to cancellation or modification except after ten (10) days' prior written notice to Lessor, and each policy shall so provide all policies of insurance required to be furnished hereunder, together with receipts or other documents satisfactory to Lessor showing payment of premiums thereon shall be deposited with Lessor prior to the commencement of the term hereof and renewals thereof not less than thirty (30) days prior to the expiration of the term of such coverage; provided, however, that if Lessee shall maintain any insurance required hereunder under a blanket policy, Lessee shall have sufficiently complied with the terms hereof by furnishing Lessor a certificate or certificates for the same.

12. Lessee will allow Lessor or any person authorized by Lessor free access to the demised premises for the purpose of examining same or to make any repairs or alterations thereof which Lessor may deem fit to make to insure the safety to persons and prevent property damage to the building. Further, Lessee shall allow Lessor or any person authorized by Lessor free access to exhibit the premises and place "For Rent" signs on the premises if this Lease is terminated prematurely, or within ninety (90) days of the expiration of this Lease.

13. In the event Lessee hereunder shall become a corporation duly authorized to do business in the State of Illinois said corporation shall join, execute and ratify the terms of this Lease while the individual Lessee's shall remain as jointly and severally liable as guarantors of the payment of rent and performance of the terms and conditions herein.

14. The Lessor and Lessee understand and agree that time is of the essence of all of the terms and provisions of this Lease Agreement. Further this Lease Agreement and Rider herein shall be binding on the heirs, executors, administrators and assigns of the respective parties.

IN WITNESS WHEREOF, the parties hereto set their hands and seals this 6 day of May, 19 03.

Witness

LESSOR:

LESSEE:

-2-

Also a three page rider and a two page preprinted rider included in this lease

Also "Riders # 3 and 4" Dated 7-26-93

WITNESS the hands and seals of the parties hereto, as of the Date of Lease stated above.

_____(SEAL)     _____(SEAL)
_____(SEAL)     _____(SEAL)
_____(SEAL)     _____(SEAL)
          (Lessor)                        (Lessee)

ASSIGNMENT BY LESSOR

On this_____, 19____, for value received, Lessor hereby transfers, assigns and sets over to _____, all right, title and interest in and to the above Lease and the rent thereby reserved, except rent due and payable prior to_____, 19____.

_____(SEAL)
_____(SEAL)

GUARANTEE

On this_____, 19____, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned Guarantor hereby guarantees the payment of rent and performance by Lessee, Lessee's heirs, executors, administrators, successors or assigns of all covenants and agreements of the above lease.

_____(SEAL)
_____(SEAL)

NOTE: Use Form Number 12-1P for assignment by Lessee.

*[Handwritten annotations in margins: "Initial term 5-7-31-98", "option 8-1-98", "7-31-2003", "MG LN", "MG AK DUES LN"]*

## RIDER NUMBER TWO
## TO LEASE DATED ~~APRIL~~ MAY 6, 1993 ON
## CHESTNUT COURT PREMISES IN
## WINNETKA, ILLINOIS,
## BETWEEN LARS NILSSON, LESSOR AND
## MARIANNE GIGIOLIO AND MARION GAJEK, LESSEE

1. Should any conflict of inconsistency appear between this Rider No. Two and the standard form of Store Lease or Rider No. One thereto, this Rider No. Two shall control.

2. The Premises to be leased by Lessor to Lessee under this Lease are deliniated on plat of the first floor of the building formerly occupied by the Indian Trail Restaurant at #1 ~~Chestnut Street~~, Winnetka, Illinois. The parties agree that a total of ____ square feet constitute the Premises. Common areas, exits and corridors used in common are also designated on the plat, Exhibit "A", attached hereto and made a part hereof.

3. Lessee proposes to make the following alterations to the building and Premises at its expense, which expense shall be credited against the first rents due to Lessor upon receipt by Lessor of invoices showing the expenses so incurred by Lessee and proof of payment therefor:

   a. A new entrance from Chestnut Court sidewalk into Premises, including new windows which are adjacent to the door as well as all finishing materials and labor expenses incurred in adding this new entrance.
   b. Reopening the corridor to the existing bathrooms, including drywallings, and all materials and labor used in completing the construction on the hallways.
   c. Installing new air-conditioning on the roof with all necessary electrical and mechanical work needed to make the system work effieciently and in a satisfactory manner including seperate thermostats and fan controls in the kitchen and other main rooms.
   d. Re-routing the kitchen stairs into the kitchen area.
   e. Walling in the kitchen area which is a part of the Premises.
   f. Making the Premises handicapped accessable to bring it in compliance with the ADA Act.
   g. Providing separate meters for water, gas and electric to be used in the Premises along with all labor necessary to install these seperate meters.
   h. Replace main dinning room floor with ceramic tile.

Plans and specifications for the work shall be subject to prior written approval by Lessor, which approval shall not be unreasonably withheld. Lessor shall provide free and unobstructed access to Premises for Lessee's contractor and workmen from 8:00 A.M. until 5:00 P.M. daily except Sundays for the purpose of completing Lessee's improvements and alterations aforesaid.

4. The term of the Lease shall begin on August 1, 1983, or at such earlier date as Lessee is open for business. Rent shall be prorated on a daily basis if the term commences other than at the first of the month. The initial term shall end five years after the beginning of the first full calendar month of the Lease.

5. Lessor covenants at its expense to keep the foundations and roof of the premises and the structural soundness of the concrete floors and exterior walls thereof, in good order, repair and condition.

6. If Lessee shall timely and faithfully perform all of the terms, covenants and conditions of this lease during the original occupancy of all or substantially all of the demised Premises, Lessee shall have the right and option; exercisable by giving written notice thereof to Lessor at least six (6) months prior to the expiration of the original term of this lease or at the expiration of the First Additional Term, to extend the terms of the lease for an additional term of five (5) years ("First Additional Term"), upon all of the terms, covenants and conditions contained in this lease, ~~except that the annual rent~~ for that portion of the First Additional Term commencing August 1, 1993, shall be increased over the annual rent payable during the initial term (but in no event decreased) to the extent of the percentage of increase in the Consumer Price Index for All Urban Consumers, Chicago, Illinois and Northwestern Indiana--All Items-Series A (1967=100) prepared by the Bureau of Labor Statistics of the United States Department of Labor (the "Index") between the calendar month August, 1993 and the calendar month July, 1998. In the event that the Index shall no longer be published with a base year of 1967, the parties shall compute, by reference to data available from said Bureau of Labor Statistics, the actual percentage increase in such consumer prices during the period in question. If the Index shall cease to be published, the parties shall use, as the Index, the most ~~comparable index then published by the United States Government~~. If Lessee exercises its option for the second additional term, the annual rent shall be increased by the same formula for the ~~period from August 1, 2003, to July 31, 2008.~~

IN WITNESS WHEREOF, the parties hereto set their hands and seals this ____6th____ day of __May__, 19_93_.

_____
Witness

_____
Witness

_____
Witness

Lessor: _____

Lessee: _____

Lessee: _____

RIDER NUMBER THREE
TO LEASE DATED MAY 6, 1993 ON
CHESTNUT COURT PREMISES IN
WINNETKA, ILLINOIS,
BETWEEN LARS NILSSON, LESSOR AND
MARIANNE GIGIOLOIO AND MARION GAJEK, LESSEE

1. The Leased Space will now include the Old Indian Trail entrance from Chestnut Street (see attached drawing). Lessee will get five months free rent for the additional space to compensate Lessee for all needed repairs and remodeling, such as Heat, Air Conditioning, Separate metering of gas, electric and water, decorating and alterations.

2. Construction:

    a. Upon completion of the alterations, and prior to final payment, Lessee shall furnish Lessor with 1. the Contractors sworn statement and completion affadavit, (2) full and final waivers of lien, (3) receipted bills covering all labor and materials expended and used, (4) other appropriate documents evidencing completion of the Alterations, and (5) as-built plans of the Alterations.

    b. Lessee will request that Contractor hold Lessor, its beneficiaries and the respective agents and employees harmless from any and all liabilities of every kind and description, including reasonable attorney's fees, which may arise out of or be connected in any way with the Alterations or materials claimed to have been furnished to Lessee shall be discharged of record (or paid if notice be served) by Lessee within ten days after filing (or service) at the expense of Lessee.

3. The additional monthly rent will be $925.00, which includes additional percentage of common areas. In addition Lessee will pay monthly in additional real estate taxes of $197.25. Rent payments and taxes to be subject to the same increases as the other space leased, and will start and end on the same dates thereof.

_____     _____
Lessor                              Lessee

July 27th 1993                      July 26, 1993
_____     _____
Date                                Date

Rider Number Four to Lease
dated May 6, 1993 on Chestnut Court
premises in Winnetka, IL between Lars Nilsson,
Lessor and Marianne Gigiolioio and Marion
Gajek, Lessee

1. Lessee will have exclusive use to one of the commercial freezers (the most Easterly one) located on the premises for the duration of this lease; however, it must be wired to Lessee's electricity meter at Lessee's expense.

2. The leased space will also include use of a reasonable part of the basement for storage in areas to be determined by agreement of Lessee and Lessor, as well as access to use of the existing basement washroom facilities.

7-27-93
_____
Lessor/Date

_____ 8-2-93
Lessee/Date

_____ 8-8-93
Lessee/Date

RIDER NUMBER SIX TO LEASE
DATED MAY 6, 1993, ON CHESTNUT COURT PREMISES
IN WINNETKA, IL, BETWEEN LARS NILSSON, LESSOR
AND MARIANNE GIGIOLIOIO AND MARION GAJEK, LESSEE

1. The above lease now include 576 sq. ft. beneath the hoods and across to the first freezer at the east side of the kitchen, as outlined in the enclosed drawing, which is made a part of our lease.

2. The rent on the above space will be $768.00 per month, taxes will be $144.00 per month. Lessee will maintain a one month's security deposit. There will be a three month rent abatement period beginning June 1, 1994, so that Lessee can erect a wall demising his own premises, as agreed, and separate out all of the heating, electrical systems, etc.

3. In order to assure maximum security for each tenant, and the ability to lock their individual space, all deliveries and refuse removal will be done through the main entrance or each tenants' own side doors.

4. Lessor does not warrant that the hood's mechanical systems are functional. It is most likely that the tenant will have to put in new fans.

Date _June 1 '94_

LESSOR: _____

LESSEES: _____

Chestnut Street Partners
874 Green Bay Rd.,
Winnetka, Illinois 60093-1803
Phone: 847-446-5800 Fax: 847-446-7779

January 16, 2001

The law Offices of
Todd J. Stephens
Attn: Todd Stephens
Suites 205 & 207
833 Elm Street
Winnetka, Illinois 60093

Re: Options for the lease with M. Gigiolio, M. Gajek and LaBella.

Dear Todd,

I fail to see what the problem is. We have a perfectly good lease in place that expires 7-31-2003. The lease provides for a second option from August 1, 2003 to July 31, 2008.

Your clients should notify me in writing that they wish to extend the first option period to expire on July 31, 2006 instead of July 31, 2003. Obviously I will go along with it, but I need for them to put it in writing.

Very Truly Yours,

Lars Nilsson