IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABELLA WINNETKA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE VILLAGE OF WINNETKA and DOUGLAS WILLIAMS, <br><br> Defendants. | Case No. 07 CV 6633 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

The defendants' Motion should be denied for several cogent reasons which are detailed below. The Complaint clearly complies with federal pleadings requirements and alleges proper claims for denial of equal protection and substantive due process against the Village of Winnetka ("the Village") and Douglas Williams ("Williams"). Further, as defendants ignore many of the allegations in the 23-page Complaint, deny the truthfulness of the facts asserted in the Complaint, and attach materials that are beyond the allegations in the Complaint, the motion is both substantively and procedurally deficient.

**I.    INTRODUCTION**

    **A.    Standard for Motion To Dismiss**

When considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Spearman Industries Inc. v. St. Paul Fire and Marine Ins. Co.,* 109 F.Supp. 2d 905 (N.D. Ill. 2000). Thus, the issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004).

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that all the allegations in the complaint are true (even if doubtful in fact). 127 S. Ct. at 1965. However, a plaintiff need not allege in the Complaint all facts involved in the claim. *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). In a civil rights case alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 165 (1993).

  B. **Defendants' Motion To Dismiss Does Not Comply With The Requirements Of A Rule 12(b)(6) Motion**

The defendants' Motion to Dismiss does not comply with the requirements of a Rule 12(b)(6) motion for several reasons. First, the defendants fail to address the detailed facts alleged in the Complaint. Second, the defendants have not accepted all well-pleaded facts as true which requires that the motion be denied. Third, the defendants have improperly attached documents outside the Complaint which should not be considered by this Court in disposing of a Rule 12(b)(6) motion.

  C. **The Attachments Themselves Are Improper**

The defendants have attached selected portions of Winnetka's ordinances and they contend that this Court can, *ipso facto,* rely upon those materials without converting their motion into a Rule 56 motion. Their contention is invalid.

First, the ordinances are not complete on their face. For example, the defendants include ordinances relating to certain powers delegated to the Village Manager, which themselves are very broad, but the ordinance attached to the Memorandum also provides that there may be additional powers and authority which are not included as part of the defendants' attachment (*see* Section 2.12.050 and 2.12.050K). Another example is the failure to include ordinances such as the plumbing ordinance and ordinances relating to fire safety which are applicable to the assertions raised by the plaintiff in the Complaint. In addition, the defendants have raised factual arguments based on their interpretation of the ordinances rather than simply asking the Court to take judicial notice of some of their ordinances. Arguments relating to the application and interpretation of ordinances are simply inappropriate on a Rule 12(b)(6) Motion to Dismiss.

The defendants attached a copy of the plaintiff's State court Complaint, ostensibly to suggest that plaintiff has available relief elsewhere.[1] The defendants contend that this Court can take judicial notice of the State court complaint in deciding this Rule 12(b)(6) motion without converting their motion into a Rule 56 motion, but they are again in error. The pleading filed in the Circuit Court is simply the initial non-verified Complaint filed in that case, discovery has not yet been initiated, and there is no legitimate basis for contending that allegations in the State court complaint are somehow dispositive of constitutional claims raised in this case. Moreover, the defendants make factual arguments based on certain matters asserted in the Circuit Court complaint to attempt to dispute the allegations in the Complaint in this case, but those factual arguments are improper on a Rule 12(b)(6) motion. Furthermore, the defendants have misrepresented the matters asserted in State court. For example, the Motion to Dismiss argues

---

[1] It should be noted that there is no diversity as to those parties so the plaintiff filed that action in State court and the existence of the State court action is irrelevant to the factors which the Court must consider here.

that LaBella's lease was terminated by the landlord and was no longer in place, but this argument completely misstates the allegations in the State court Complaint which asserts that there was no lawful basis for the landlord's purported termination of the lease, which remains in effect until July 31, 2008. Thus, the defendants' argument in their Motion to Dismiss is completely at odds with the allegations by LaBella in the State court case and also denies the truth of the allegations of the Complaint in this case.

In addition, the defendants' Memorandum also relies for the most part on cases involving summary judgment rulings which are not on point at this preliminary stage of the proceeding. Similarly, the defendants' prayer for dismissal with prejudice is also improper because there is no basis to dismiss the Complaint with prejudice at this stage of the proceeding.

## II.   THE COMPLAINT CLEARLY ALLEGES AN EQUAL PROTECTION CLAIM WITH LABELLA AS A CLASS OF ONE

### A.   The Complaint Alleges That LaBella Is Similarly-Situated To Other Restaurants And That It Has Been Denied Equal Protection

Count I of LaBella's Complaint alleges that the Village and Williams intentionally treated LaBella arbitrarily and capriciously in the enforcement of Village ordinances, codes, and health and safety requirements to LaBella's detriment while treating other similarly-situated restaurants favorably even though all were subject to the same ordinances, codes, health and safety requirements, during the same period of time. These allegations which appear in Count I clearly state a class of one equal protection claim on behalf of LaBella.

In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the Supreme Court made clear that there can be a "class of one" equal protection claim. In that case, the plaintiff contended that the Village's treatment of one of its residents was "irrational and wholly arbitrary" and "motivated by ill will" toward that individual and "that the Village acted either with the intent to deprive Olech of her rights or in reckless disregard of her rights." *Village of Willowbrook*, 528

U.S. at 563.  The Supreme Court stated, "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly-situated and that there is no rational basis for the difference in treatment."  528 U.S. at 564.  The Supreme Court also pointed out that the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the government's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statue or by its improper execution through duly constituted agents.  528 U.S. at 564.  Equal protection mandates at a minimum that a municipality apply its laws in a rational and non-arbitrary way, and that its application of the law rationally furthers some legitimate, articulated purpose which does not constitute invidious discrimination.  *Ciechon v. City of Chicago*, 686 F.2d 511, 522 (7th Cir. 1982) (Unequal treatment of one paramedic involved with second paramedic in treating same patient deprived the first paramedic of equal protection where there was no rational basis for disparate treatment).

Count I alleges that both the Village and Williams were legally required to follow existing ordinances, codes, requirements, and standards, and to apply these laws equally as to all similarly-situated entities.  It identifies other similarly-situated restaurants which were subject to the same ordinances, codes, requirements, and standards, at the same time and by the same officials.  The Complaint also alleges that the defendants selectively enforced these requirements to harm LaBella while treating others favorably.  (Paragraphs 26-28, 30-37)

The defendants contend that the Complaint does not allege a cause of action for equal protection because it does not include any "comparators" for a class of one claim.  That contention is devoid of merit.  First, the defendants' Motion itself shows that the defendants are on notice of a claim that the defendants treated other similarly-situated restaurants favorably

while enforcing ordinances to hurt LaBella. For example, the defendants agree that the following equal protection claims are set out in the Complaint and that they must be accepted as true for purposes of the motion:

- The defendants disliked LaBella and liked other restaurants, and they made LaBella toe the line while treating other restaurants leniently (p. 3 of 17);

- LaBella seeks relief from the defendants for failure to require the landlord to obtain a permit, for failure to intervene in roof repairs, for refusal to permit LaBella to reopen with fire damaged roof, and declining to intervene regarding roof repairs, and that the defendants' enforcement of ordinances helped some restaurants but hurt LaBella (p. 4 of 17);

- The Village did not require a permit for the roof, refused to inspect the roof, did not enforce compliance with the Village's building codes and safety requirements, did not require the landlord to repair the roof in a timely manner, did not enforce Village requirements for roof repairs, and did not attempt to stop activities which created a potential fire hazard (p. 5 of 17).

It is absolutely clear from reading the defendants' motion that the Complaint adequately informs them of the nature of the plaintiff's equal protection claims, and places them in a position to defend those claims.

Furthermore, the Complaint accurately describes "comparators" which establish equal protection claims. The Complaint alleges that the Village intentionally and arbitrarily required replacement of the roof above LaBella in order to be in compliance with the Village code which had never been required before (Paragraphs 22-23); failed to require the landlord to repair the roof; and refused to allow LaBella to partially reopen and begin repairing the interior of its restaurant. (Paragraphs 24A-F). At the same time, the Village and Williams permitted Corner Cooks to reopen in the same building with the same potential risks and also allowed Corner Cooks to expand by adding Jerry's restaurant, even though its exhaust system for grills and ovens were clearly a fire and safety hazard and violated the Village's ordinances (Paragraphs 25, 26A, B). Moreover, the Complaint alleges numerous examples of favorable treatment of

O'Neils, Little Ricky's and other Winnetka restaurants which demonstrates a pattern and a practice by the Village and Williams of capricious, arbitrary, and selective enforcement of the Village ordinances which permitted similarly-situated restaurants in Winnetka to remain open even though they were in violation of ordinances (they are "Friends of Doug" or "FODs"). The Complaint alleges that the defendants refused to allow LaBella to begin repairs and reopen (Paragraphs 25, 26C, 26D). The Complaint clearly states a claim for equal protection in which LaBella as a class of one, has been severely prejudiced by the Village and Williams' conduct in selectively, capriciously, and arbitrarily enforcing Village ordinances and codes to harm LaBella while favoring similarly-situation restaurants in their selective enforcement of Village laws.

As noted above, the Complaint does not have to include all the facts relating to the plaintiff's claim of a denial of equal protection, and LaBella has offered summaries of some of the allegations in the Complaint in this response. Although it is impossible for LaBella to restate all of its twenty-three pages of allegations, the Complaint includes additional facts that are relevant to LaBella's equal protection claims. These allegations relate to other similarly-situated restaurants and businesses which have been treated favorably by the defendants, unlike their discriminatory treatment of LaBella which is still closed.

The cases cited by the defendants in their equal protection arguments are without merit. The *Stachowski* case cited by the defendants is simply not on point. In that case, the sole "class of one" contention was made by a former police officer, who stole $53,000 from the Town of Cicero and yet received his retirement benefits. He alleged, however, in the lawsuit that he was treated differently than other police officers when he was denied his back-pay. The Court of Appeals held that Stachowski was not in the same class with officers who retired with unblemished records and therefore was not treated differently than those officers for purposes of

equal protection. The *Purze* case, also relied upon by the defendants, is readily distinguishable. In that case, developers contended that they were treated differently by the Village of Winthrop Harbor, and they relied on comparison with three other developments. The 7th Circuit affirmed summary judgment for the defendants because the comparators were not similarly-situated to the plaintiff. For example, the plaintiffs requested different variances than the other three developers; they submitted their plats at different times, *i.e.*, twenty years difference, and the requests by the other three developers were granted by a different Board. None of these dissimilar factors are present here.

In this case, the Complaint asserts selectively different treatment of LaBella by the Village and Williams at the same time and for the same conduct as other similarly-situated restaurants in Winnetka. In fact, the Corner Cooks restaurant and LaBella were in similar if not identical positions before and after the fire, i.e. located in the same building, on the same floor with the same potential hazards, and yet the Village did not permit LaBella to reopen while it allowed Corner Cooks not only to reopen but to expand its restaurant into LaBella's space. There was no rational basis for such disparate treatment. Rather, this invidious discrimination was the result of the Village and Williams' alleged pattern and practice of selective enforcement of the Village's ordinances in favor of "FODs."

   **B.** <u>**The Complaint Alleges Arbitrary And Capricious Actions By The Village and Williams**</u>

The defendants also argue that the Complaint does not allege that the defendants acted with irrational and wholly arbitrary conduct. However, this argument ignores the allegations in Paragraphs 23-28 and misstates the requirements of the Village's building codes. They claim that the roof work did not require a "permit," that an "inspection" of the roof work was not required, and that the Village does not authorize "on-site supervision" of contractor's work.

However, a permit is required for the roof work pursuant to Section 15.04.050 because the Village's building code required a building permit where (i) there was a potential fire hazard, (ii) it involved recovering of the roof, and (iii) the work related to drains on the roof which falls within the permit requirements of the plumbing code. Further, there should have been inspections of this work on the roof. Part A1 of Section 15.32.160 provides that inspections <u>shall</u> be required for work requiring a permit, and this work required a permit. Moreover, Part A2 provides that all "construction activity," which is defined in Section 15.04.050, "shall also be subject to such inspections, even if no permit has been issued by the Village for such construction activity." Thus, the Village ordinances mandated an inspection of this roof work. In addition, Section 15.04.100 specifically provides that Village officials have authority to issue "Stop Work Orders" if work "is being performed in an unsafe or dangerous manner . . .." If that occurs, the Village "is authorized to order such work to be stopped immediately." Here the Complaint alleges that the Village was informed of the potential problem created by the worker prior to the fire, that the roofer was performing work in an unsafe and dangerous manner, and yet the Village and Williams, notwithstanding having been warned of the problem, refused to take any action to inspect the work and issue a stop work order to prevent this dangerous work from continuing (Paragraphs 21-24). As a result of the failure and refusal of the Village and Williams to take action to inspect the roof and stop this work, the roofer set the roof on fire which has resulted in LaBella's loss of its restaurant through the arbitrary and vindictive actions of the Village and Williams (Paragraphs 16-28).

    If the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court. *Esmail v. MacCrane*, 53 F.3d 176, 179 (7th Cir. 1995). Here the

Complaint clearly alleges vindictive actions and illegitimate animus by the Village and Williams in their selective enforcement of the Village's laws and ordinances and codes against LaBella and in favor of other restaurants and businesses. (Paragraphs 26-28, 34-37). These allegations state a cause of action for a class of one equal protection claim, and the defendants' Motion to Dismiss should be denied.

### III. THE COMPLAINT CLEARLY ALLEGES A CLAIM FOR THE DENIAL OF SUBSTANTIVE DUE PROCESS

The Complaint also alleges a claim for substantive due process. The Complaint alleges numerous complaints to the Village regarding the defective condition of the roof, the specific complaint to the Village on February 28, 2007 regarding a dangerous activity on the roof, the potential for harm to the individuals in LaBella's restaurant and in the building, and the refusal by the Village to take any action including an inspection of the site by the Village which had the authority to stop the dangerous activities occurring at that time (Paragraphs 16-24). The Complaint alleges further that a fire occurred shortly after LaBella notified the Village of the unsafe and dangerous work on the roof, that the fire resulted in serious damage to the roof although LaBella's premises remained tenantable, that the defendants required a completely new roof, and that they did not require the landlord to restore the roof in a prompt manner (Paragraphs 25-28).

The Complaint also alleges that LaBella was forced to close its restaurant although the restaurant area remained tenantable, that it was forced to do so through no fault of its own, and that the Village and Williams obstructed LaBella's ability to reopen its profitable restaurant, and specifically approved an expansion of the Corner Cooks restaurant into areas already leased to LaBella (Paragraphs 25-28). The Complaint further alleges that LaBella had property rights consisting of its lease and restaurant business (Paragraphs 8-15), and that the Village and

Williams arbitrarily and capriciously abused their powers to deprive LaBella of its restaurant for all of the vindictive and discriminatory reasons alleged in the Complaint (Paragraphs 38-43). Clearly, these allegations are sufficient to state a claim for a denial of substantive due process by the Village and Williams to the substantial detriment and loss of property by LaBella.

Substantive due process inquires whether the government had sufficient justification for the deprivation of such property or liberty, *Illinois Bell Telephone Company v. Village of Itasca, Ill.*, 503 F. Supp. 2d 928, 949 (N.D. Ill. 2007), and the touchstone of due process is protection of the individual against arbitrary action of government. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The substantive due process guarantee protects against government power arbitrarily and oppressively exercised. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Substantive due process, at its essence, protects an individual from the exercise of governmental power without a reasonable justification, and it affords protection of the individual against arbitrary action of government. *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). Conduct intended to injure in some way which is unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level, and historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. *Sacramento,* 523 U.S. at 849. What shocks the conscience is a flexible standard that depends on the factual context of the particular case at hand, and when a state actor has time to deliberate prior to committing the offending behavior, the standard for conscience-shocking behavior is lower than it would be in "hyperpressurized situations" that afford no time to consider the action. *Associates In Obstetrics & Gynecology v. Upper Merion Township*, 270 F. Supp. 2d 633, 654 (E.D. Penn. 2003). Use and enjoyment of property are interests protected by substantive due process, and this interest applies to leaseholds

as well as ownership. *Neiderhiser v. Barough of Berwick*, 840 F.2d 213, 218 (3d Cir. 1988) (finding a violation of due process in a zoning dispute where a municipality interfered with a lessee's enjoyment of property); *American Fabricare v. Township of Falls*, 101 F. Supp. 2d 301, 309 (E.D. Pa. 2000) (applying substantive due process analysis to lessee's claim).  To support a substantive due process claim based upon the danger creation theory, a Section 1983 plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put plaintiff at substantial risk of serious, immediate and proximate harm; (4) the risk was obvious and known; (5) the defendants acted recklessly in conscious disregard of the risk; and (6) such conduct, when viewed in total, shocks the conscience. *Armijo v. Wagon Mount Public Schools, et al.,* 159 F. 3d 1253 (1998).

The allegations in Count II of the Complaint state a cause of action for deprivation of substantive due process.  Count II includes sufficient allegations to demonstrate that LaBella was deprived of its property rights, and that the Village and Williams acted in an arbitrary and capricious manner.  It alleges that they failed to take any action in response to a very serious and potentially dangerous situation; they had authority to stop the dangerous activities on the roof which placed individuals in the building in jeopardy; but declined to do so and they knowingly placed LaBella's property in danger.  Clearly, the allegations in Count II shock the conscience.

The defendants contend that the plaintiff has no substantive due process claim because LaBella has not asserted a procedural due process claim.  However, the defendants' position is incorrect because there is a substantive due process claim when the actions by the municipality are arbitrary and capricious, and the municipality also committed a constitutional violation.  Here

the Complaint alleges arbitrary and capricious actions by the Village and Williams without any legitimate government purpose, and the Complaint also alleges a constitutional claim of denial of equal protection. These allegations are clearly sufficient to state a claim by LaBella for denial of substantive due process.

### IV. THE COMPLAINT PROPERLY ALLEGES THE VILLAGE'S LIABILITY UNDER *MONELL*

The Complaint clearly alleges that the Village and Williams engaged in a pattern and practice of selective enforcement of Village ordinances and codes which meets the policy requirements of *Monell*. Here the Complaint describes at length and in detail the actions by the Village and Williams in his official capacity in a widespread practice of selectively and arbitrarily enforcing Village ordinances and codes relating to restaurants and businesses in Winnetka. Clearly, Village employees such as Williams and D'Onofrio whose responsibilities are of a broad scope, function in policy-making positions for the Village. Furthermore, the Complaint identifies the Village President and Trustees and alleges that the Village President and Trustees knew that Williams and other Village employees were acting in a discriminatory and arbitrary manner and with animus toward LaBella while favoring other restaurants and businesses. The Complaint alleges that the Trustees knowingly approved of Williams' conduct, and they failed to take any action to stop these arbitrary and discriminatory practices (Paragraphs 1, 26, 28). These allegations, read as a whole, are clearly sufficient to allege a widespread pattern and practice which establishes the Village's liability for the selective enforcement and discriminatory policies alleged in the Complaint.

To bring a Section 1983 claim against a municipality, a plaintiff must show that an official policy or custom not only caused the constitutional violation, but was the moving force behind it. *Monell v. Department of Social Servs.,* 436 U.S. 658, 690-95 (1978). A plaintiff may

establish a municipal policy or custom by alleging that: (1) the city had an express policy that, when enforced, causes a constitutional deprivation; (2) the city had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority. *Fairly v. Andrews, et al.*, 430 F.Supp.2d 786, 800 (N.D. Ill. 2006).

The defendants contend that the Village board had the policymaking authority and that Williams had only "administrative" authority. However, their arguments ignore the insidious and discriminatory practices alleged to have been engaged in by the Village and Williams, which were widespread and are alleged by LaBella throughout the Complaint. These allegations are sufficient to establish a municipal policy by the Village (Paragraphs 1, 26, 28). Furthermore, their arguments fail to include all the allegations in the Complaint, and fail to admit the truthfulness of the allegations that the Village Board knew of the arbitrary and improper conduct, and notwithstanding such knowledge, failed to take any action to deter these improper and discriminatory practices (Paragraph 28).

V.     **VILLAGE MANAGER SHOULD NOT BE DISMISSED**

The Complaint includes allegations that Williams was involved in both an individual and official capacity in that he gave favorable treatment for "Friends of Doug," that he had a special relationship with owner of Corner Cooks, that he ordered a sanitation official to revoke citations against O'Neils and/or Little Ricky's, and that he ordered enforcement of ordinances against LaBella in contrast to non-enforcement against others (Paragraphs 25, 27A, 27B, 27C). Suit may be brought against individual officers in either their official or individual capacity or both. *Higdon v. Wells County Sheriff's Office*, 426 F. Supp. 2d 854, 860 (N.D. Ind. 2006). In this case, these allegations at this point in the case are sufficient to assert claims against Williams both in

his official capacity and his individual capacity. *A fortiori*, he should not be dismissed. Likewise, the claim for punitive damages against Williams in his individual capacity should not be dismissed at the motion to dismiss stage.

## VI.     THE COMPLAINT PROPERLY ALLEGES STATE CLAIMS AGAINST THE DEFENDANTS

### A.     Count III Alleges A Cause Of Action Against The Defendants For Violation Of A Special Duty Owed To Labella

Defendants contends that Count III does not allege a special duty. The following four elements comprise a special duty exception under Illinois law: (1) the municipality must be uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or willful in nature; and (4) the injury must occur when the plaintiff is under the direct and immediate control of employees or agents of the municipality. *Burdine v. Village of Glendale Heights*, 139 Ill. 2d 501, 508, 565 N.E.2d 654 (1990). In this case, Count III alleges each of these elements and the Motion to Dismiss should be denied.

### B.     Count Iv Alleges A Cause Of Action For Intentional Interference With Contract And With Prospective Economic Advantage

The defendants contend that Count IV of the Complaint fails to allege a cause of action for interference with contract and prospective economic advantage. However, the defendants' argument is based entirely on a denial of the truth of the allegations in the Complaint and an assumption that LaBella's lease was not enforceable based on the defendants' misleading and inaccurate summary of the allegations in LaBella's State court Complaint. Contrary to the defendants' arguments, the lease remains in full force and effect until July 31, 2008 (Paragraphs 8, 52-55), the defendants knew full well that LaBella intended to reopen its restaurant, and the Village and Williams failed to take action to require the roof to be repaired

(Paragraphs 8, 52, 55) and thereafter gave favorable treatment to the landlord and Corner Cooks to deprive LaBella of its leased space. The Village and Williams refused to allow LaBella to reopen. Count IV clearly states a cause of action, and the defendants' Motion to Dismiss should be denied.

### C. Immunity Is Not Appropriate Here

The defendants have filed a Rule 12(b)(6) motion, and they have presented an argument based on immunity. That argument is not appropriate as immunity is only an affirmative defense based on the factual record, and the defendants have not yet filed an answer.

Dated: January 7, 2008

Respectfully submitted,

LABELLA WINNETKA, INC.

By: /s/ Dean A. Dickie
One of the Plaintiff's Attorneys

Dean A. Dickie, ARDC No. 0631744
Lee T. Hettinger, ARDC No. 1206397
Sara C. Arroyo, ARDC No. 6288962
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
(312) 876-1700

CHICAGO\2410554.3
ID\SCA

**Certificate of Service**

I, Dean A. Dickie, hereby certify that on January 7, 2008, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Kathleen Ann Reid, Esq.
> Matthew Richard Schreck, Esq.
> Ray Hunter Rittenhouse, Esq.
> Sara Kathryn Forsmark, Esq.
> MULHERIN, REHFELDT & VARCHETTO, P.C.
> 211 South Wheaton Avenue
> Suite 200
> Wheaton, IL 60187
> Tel: (630) 653-9300
> Fax: (630) 653-9316
>
> Katherine S. Janega, Esq.
> Village Attorney
> VILLAGE OF WINNETKA
> 510 Green Bay Road
> Winnetka, IL 60093
> Tel: (847) 501-3180
> Fax: (847) 507-3180
>
> James A. Clark, Esq.
> SCHIFF HARDIN LLP
> 6600 Sears Tower
> Chicago, IL 60606
> Tel: (312)258-5500
> Fax (312)258-5600

　　　　　　　　　　　　　　　/s/ Dean A. Dickie