IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABELLA WINNETKA, INC., ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | No. 07 C 6633 |
| THE VILLAGE OF WINNETKA and ) | |
| DOUGLAS WILLIAMS, ) | **Judge Kendall** |
| ) | **Magistrate Judge Cole** |
| **Defendants.** ) | |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

| Kathleen A. Reid | Katherine S. Janega | James A. Clark |
|---|---|---|
| Mulherin, Rehfeldt & Varchetto, P.C. | Village Attorney | Schiff Hardin LLP |
| | Village of Winnetka | 6600 Sears Tower |
| 211 South Wheaton Avenue | 510 Green Bay Road | Chicago, IL 60606 |
| Suite 200 | Winnetka, IL 60093 | Tel: (312) 258-5500 |
| Wheaton, IL 60187 | Tel.: (847) 716-3544 | Fax: (312) 258-5600 |
| Tel: (630) 653-9300 | Fax: (847) 501-3180 | jclark@schiffhardin.com |
| Fax: (630) 653-9316 | KJanega@winnetka.org | |
| KReid@MRVLaw.com | | |

Attorneys for Defendants
The Village of Winnetka and Douglas Williams

Date: January 14, 2008

## **INTRODUCTION**

LaBella's Complaint alleges that it experienced a series of misfortunes — the roof over its leased restaurant space leaked; the roofer the landlord hired negligently caused a serious fire; the landlord was slow to begin repairing the fire damage, and instead said it was terminating the lease; the landlord later contracted with a competitor restaurant to use part of what had been LaBella's space. LaBella's real dispute is plainly with the landlord and roofer, and indeed it sued both in state court. But in its federal Complaint, LaBella lays its woes at the door of the Village of Winnetka (and its Village Manager) on the ground that their failure to intervene to avert these misfortunes denied LaBella equal protection and due process, violated state law "duties," and interfered with LaBella's present contract and future business expectancy.

Defendants' brief in support of their Rule 12(b)(6) motion discussed the allegations of the Complaint and the law, and for the Court's convenience attached materials subject to judicial notice that contain LaBella's judicial representations (its state court complaint against the landlord and roofer) or were referred to in the federal Complaint (Winnetka ordinances, the lease attached to the state court complaint).

Rather than meet these arguments, LaBella's response engages in diversion. At every turn, it claims that the issues cannot be addressed on a motion to dismiss. LaBella says that attaching the state court complaint, ordinances, and lease was improper on a Rule 12(b)(6) motion. (Pl.'s Br. 2-3) Not so. *See Limestone Dev. Corp. v. Lemont*, 473 F. Supp. 2d 858, 867-68 (N.D. Ill. 2007) (Kendall, J.) (taking judicial notice of records of proceedings in another court in deciding Rule 12(b)(6) motion in suit against municipality and municipal employees); Defs.' Op. Br. 7 n.5. LaBella says, without citing authority, that the ordinances Defendants attached to their brief carry no weight because they are incomplete, and that "[a]rguments relating to the application and interpretation of ordinances are simply inappropriate on a Rule 12(b)(6) Motion

to Dismiss." (Pl.'s Br. 3) Not so. The ordinances are local laws (readily available on the Village's website, *see* http://www.villageofwinnetka.org/pdf/documents/VillageCode.pdf), and interpretation of laws is exactly what courts do on motions to dismiss; the cure for any alleged incompleteness would be for LaBella to cite more of the laws (which it has not done). LaBella says that tort immunity is an affirmative defense that cannot be considered on a Rule 12(b)(6) motion. (Pl.'s Br. 16) Not so. *See Kincaid v. Brown*, No. 07 C 2759, 2007 WL 4247183, at *4-5 (N.D. Ill. Nov. 30, 2007) (Kendall, J.) (applying Illinois Tort Immunity Act on Rule 12(b)(6) motion). LaBella says that its claim for punitive damages against Williams "should not be dismissed at the motion to dismiss stage" since it is possible to assert individual-capacity claims that justify punitive damages. (Pl.'s Br. 15) Not so. Not only did the Complaint not expressly assert any individual capacity claim against Williams, but LaBella itself admits that the Complaint named Williams "in his official capacity." (Pl.'s Br. 13) LaBella accuses Defendants of failing to credit the allegations of the Complaint as much as they should at the motion to dismiss stage. (*E.g.*, Pl.'s Br. 2, 15.) Not so. It is no longer the law that a complaint survives a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007) (*Conley v. Gibson* formulation is "not the minimum standard of adequate pleading to govern a complaint's survival," and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

LaBella's response brief ignores much of the law Defendants cited (*e.g.,* it does not even mention, much less discuss, the key due process case, *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989), or a key equal protection case, *McDonald v. Village of Winnetka*, 371 F.3d 992 (7th Cir. 2004)), and relies on mere assertions that it meets the legal

2

standards (*e.g.*, blandly asserting that the Complaint "alleges each of the elements" of a "special duty" claim "and the Motion to Dismiss should be denied," Pl.'s Br. 15).  This is not enough:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

*Twombly*, 127 S. Ct. at 1964-65 (internal citations and quotation marks omitted).

## ARGUMENT

I. **Plaintiff Fails to Allege a Class-of-One Equal Protection Claim.**

    A. **LaBella's Complaint Fails to Allege Others Similarly Situated.**

Defendants first moved to dismiss LaBella's equal protection claim because it failed to allege that other restaurants experienced similar circumstances but were treated differently. LaBella responds that "selective" enforcement of ordinances, codes, requirements, and standards among certain restaurants in Winnetka was enough (Pl.'s Br. 5, 7, 8), but it is not.

Because federal courts are not "responsible for telling [municipalities] how to allocate their limited time and money," *Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004), to state an equal protection claim, a plaintiff must show it was treated differently from others similarly situated,[1] and "similarly situated individuals must be very similar indeed." *McDonald*, 371 F.3d at 1002.  LaBella cannot simply complain that Defendants

---

[1] The Seventh Circuit has explained why the "similarly situated" element is important in class-of-one cases:

> The concept of equal protection is trivialized when it is used to subject every decision made by state or local government to constitutional review by the federal courts.  To decide is to choose, and ordinarily to choose *between* . . . . [W]hen . . . the government is treating unequally two persons that are prima facie *unequal* in a rationally relevant respect[,] . . . the equal protection clause is inapplicable.

*Indiana State Teachers Ass'n v. Board of School Comm'rs*, 101 F.3d 1179, 1181-82 (7th Cir. 1996) (emphasis in original) (affirming dismissal for failure to identify comparable person treated more favorably); *see Albiero v. Kankakee*, 246 F.3d 927, 932-33 (7th Cir. 2001); *Ibarra v. Martin*, 143 F.3d 286, 292-93 (7th Cir. 1998).

3

*generally* enforce ordinances selectively or favor others. No *equal protection* issue exists unless their treatment of LaBella was different in situations that are "*identical* in *all* relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (emphasis added).[2]

None of the restaurants LaBella claims is similarly situated— Corner Cooks, O'Neils, and Little Ricky's — is identical to LaBella in all relevant respects. What LaBella complains about is the failure to require a permit for roofing repairs, to oversee the roofer's repair work, to permit the restaurant to reopen under a fire-damaged roof, or to intervene in the restaurant's lease dispute, and LaBella does not allege that the others were treated differently in these respects. For Corner Cooks, for example, to be comparable, Defendants would have had to require a permit for a roofer at Corner Cooks' demand, jump in to supervise repairs of Corner Cooks' roof, allow Corner Cooks to reopen under a burnt roof, and help Corner Cooks when the landlord terminated its lease. Absent such allegations,[3] LaBella has failed to allege an equal protection claim.

### B.　　As a Matter of Law, Defendants' Actions Were Not Irrational.

Even apart from the issue of comparators, LaBella did not — and cannot — adequately allege that Defendants were irrational or vindictive. Irrationality and vindictiveness are hard to show. If there is any "plausible" reason for government action, it is rational. *Chicago Bd. of Realtors, Inc. v. Chicago*, 819 F.2d 732, 740 (7th Cir. 1987). The vindictiveness standard

---

[2] Even slight differences between proposed comparators defeat a class-of-one claim. In *Purze*, for example, there was no equal protection violation for failure to grant a zoning variance when others received variances "of a kind not requested" by the plaintiff or under circumstances different from plaintiff's, such as different times and different topography. 286 F.3d at 455. In *Indiana State Teachers*, favoring a union with a longstanding relationship constituted "treating unequally two persons that are prima facie *unequal* in a rationally relevant respect — the union with which the government has been dealing contentedly for many years and the union that wishes not only to break up the existing cozy relationship but also change the means by which a favored union shall be chosen in the future." 101 F.3d at 1811-82 (emphasis in original). It is insufficient for LaBella to allege different treatment of others in different circumstances.

[3] Neither are the other restaurants similarly situated to LaBella, since LaBella's complaint here seeks no relief for not getting the same kind of leniency on issues of ventilation, signage, liquor, or health matters that the Village is alleged to have given them.

requires a "totally illegitimate animus toward the plaintiff by the defendant," and even then, "[i]f the defendant would have taken the complained-of action anyway, even if it didn't have the animus, the animus would not condemn the action; a tincture of ill will does not invalidate government action." *Olech v. Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *aff'd on other grounds*, 528 U.S. 562 (2000). This standard is extraordinarily deferential to government choices.

Defendants' Opening Brief explained that its actions were not only rational and non-vindictive, but precisely in accord with the Village's ordinances. No permit was required for the roof repair, for example, because WVC § 15.32.010 expressly does not require a permit for ordinary repairs. (Defs.' Op. Br. 5)

LaBella challenges this view, claiming that the Village and Village Manager misunderstand the Village's own ordinance, and that "there should have been" an inspection of the roofer's work because, in LaBella's view, that work was not ordinary repair — but Defendants' interpretation is hardly irrational.[4] Nor are LaBella's assertions that an inspection was "mandated" (since certain construction activity is "subject to" inspection), or that it was "arbitrary and vindictive" not to issue a "Stop Work Order" (since the Village official "had authority" to do so), the only rational and constitutional interpretations. To the contrary, the law provides that such consistency in discretionary actions is not constitutionally mandatory:

---

[4] Indeed, far from showing that Defendants' interpretations were "irrational" and "wholly arbitrary," LaBella misstates and misinterprets the Ordinary Repair section. No building permit is required for ordinary repairs, with enumerated exceptions. WVC § 15.04.050 B. None of the three exceptions LaBella invokes applies. LaBella argues that a building permit is required if there was "a potential fire hazard," but the ordinance calls for a permit only if the construction affects a fire hazard of the structure, not for a "potential fire hazard." There is a potential fire hazard every time a homeowner plugs in a power tool, but no building permit is therefore required. Next, LaBella argues that fixing the roof leak equates to "reshingling or recovering" the roof, but the Village rationally could consider leak repairs to be short of recovering or reshingling. Finally, LaBella invokes the plumbing code, but nothing in the Complaint supports the notion that the roofer was doing rooftop plumbing work that required a building permit.

5

> The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets. Selective, incomplete enforcement of the law is the norm in this country.

*Tuffendsam*, 385 F.3d at 1128 (internal quotations omitted).

Nor were Defendants' other challenged actions irrational. LaBella blames Defendants for the loss of its lease, saying they failed to force the landlord to fix the roof, and did not allow LaBella to reopen without roof repairs. But Defendants had no control over the landlord's choice to terminate the lease rather than promptly repair the roof, and insisting that the fire-damaged roof be restored before the interior could be repaired and the restaurant could reopen (a public safety and health issue) was the opposite of irrational.

## II. LaBella Fails to State a Substantive Due Process Claim.

### A. Defendants Had No Constitutional Duty to Protect LaBella.

As Defendants explained, LaBella's substantive due process claim fails under the Supreme Court's decision in *DeShaney*. (Defs.' Op. Br. 6-7) Rather than address *DeShaney*, LaBella offers random hornbook substantive due process principles and concludes that Defendants' actions "shock the conscience."

*DeShaney* involved a four-year-old child who was physically abused by his father. Despite knowledge of repeated abuse that ultimately led to the child's severe brain damage requiring permanent institutionalization, the state agency repeatedly returned the child to his abuser. A suit on behalf of the child against the state agency and individuals responsible for the decisions to return him to his father alleged a violation of substantive due process. 489 U.S. at 191-93.

Even in those compelling circumstances, the Supreme Court held that there was no deprivation of the child's substantive due process rights because the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from

6

each other." *Id.* at 196.  The state officials in *DeShaney* did not abuse the child; his father did. Defendants here did not start the fire on LaBella's roof or terminate his lease; the roofer and landlord did.  If the *DeShaney* child had no claim against the state actors for failing to rescue him from his abusive father (indeed, for actually *returning* him to his abuser), LaBella has no claim against Defendants here for having failed to protect its leasehold.  *See also Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 768-69 (2005) (no substantive due process claim when police failed to enforce TRO and father murdered his children) (reversing Tenth Circuit).

Although LaBella ignores *DeShaney*, it appears to attempt to bring its claim within a narrow exception to the rule of that case.  LaBella cites *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253 (10th Cir. 1998), a case that applied a "state-created danger" exception.[5]  Post-*DeShaney* cases permitting the application of this exception are "rare and often egregious." *Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003).  Indeed, the exception has not been applied outside the context of physical safety and danger.  *Akpulonu v. McGowan,* No. 03 C 4546, 2004 WL 2034084, at *12 (N.D. Ill. Aug. 12, 2004).  LaBella notes the standards stated in *Armijo* for the exception, but offers no analysis of how its claim fits those standards — because it does not fit.  LaBella principally fails to show how any affirmative acts by Defendants, and not just their alleged *failure* to act, created danger to LaBella.  Defendants are not alleged to have burned LaBella's roof or terminated its lease.  Instead, LaBella alleges that they "failed" to act when they assertedly should have.  (Complaint ¶¶ 24B & E, 27, 28, 41, 47, 49)  Indeed,

---

[5] *Armijo* is one of several post-*DeShaney* cases dealing with a unique issue, the responsibility of public schools for dealing with potential student suicides.  The First and Seventh Circuits have questioned whether *Armijo* correctly applied a state-created-danger exception even in that context in light of *DeShaney*'s holding.  *See Hasenfus v. LaJeunesse*, 175 F.3d 68, 74 (1st Cir. 1999) (*Armijo*, "[i]f sound, . . . is at the outer limit"); *Martin v. Shawano-Gresham School District*, 295 F.3d 701, 711 (7th Cir.) (noting "limited application of *Armijo*"), *cert. denied*, 537 U.S. 1047 (2002).  Nonetheless, it is unnecessary to determine *Armijo*'s soundness because, as discussed in the text, LaBella falls short of bringing its due process claim within the state-created-danger exception.

LaBella's own brief characterizes Defendants' conduct as *inaction* when danger was created by others: they "failed to take any action in response to a very serious and potentially dangerous situation; they had authority to stop the dangerous activities on the roof which placed individuals in the building in jeopardy; but declined to do so and they knowingly placed LaBella's property in danger." (Pl.'s Br. 12)

Nor does LaBella show how the other state-created-danger factors apply. It does not explain how a building permit would have stopped the roof fire; how Defendants' conduct, rather than the roofer's or the landlord's, proximately caused LaBella's harm; or how Defendants' conduct "shocks the conscience," particularly under the standards of *DeShaney* and *Castle Rock*.

### B.  LaBella's Substantive Due Process Claim Would Circumvent *Parratt*.

As Defendants noted, LaBella's substantive due process claim would also improperly circumvent *Parratt v. Taylor*, 451 U.S. 527 (1981). (Defs.' Op. Br. 8)  LaBella does not deny that it has adequate state remedies at its disposal, or that its substantive due process claim fails if it has failed to state a valid equal protection claim. (Pl.s' Br. 12-13)  Because LaBella's equal protection claim is invalid, its substantive due process claim should be dismissed as well.

### III.  Plaintiff Has Failed to State a *Monell* Claim.

LaBella also fails to articulate a viable *Monell* theory against the Village.

First, LaBella nowhere disputes the Illinois statutes, Winnetka ordinances, and cases cited by Defendants establishing that, *as a matter of law*, village managers like Williams do not possess "final policymaking authority." (Defs.' Op. Br. 9-11)  Instead, LaBella simply insists that Williams's responsibilities were "of a broad scope" and that he functions in a "policy-making position" (Pl.'s Br. 13) — neither of which is sufficient to allege Williams's *final*

8

*policymaking* authority.[6]  To have final policymaking authority, "an official must possess responsibility for making law or setting policy, that is, authority to adopt rules for the conduct of government.  The mere authority to implement pre-existing rules is not the authority to set policy."  *Killinger v Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) (internal quotations omitted); *e.g.*, *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 764 (7th Cir. 2003) ("The fact that a particular official — even a policymaking official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.") (internal quotations omitted), *cert. denied*, 541 U.S. 1096 (2004).

Second, even the act of a "final policymaker" does not bind the municipality if the act frustrated, rather than implemented, municipal policy. *Lyttle v. Killackey*, ___ F. Supp. 2d ___, 2007 WL 4162811, at *7-8 (N.D. Ill. Nov. 20, 2007) (Kendall, J.) (police officers' violation of first amendment rights of Iraq war protestors frustrated city policy opposing Iraq war).  Here, LaBella alleges that Williams's actions "*failed to conform* with Village ordinances."  (Complaint ¶ 27(B)(ii) (emphasis added))  Williams's alleged *violations* of Village policy, as articulated in Village ordinances, cannot constitute Village policy.  *Taylor v. Carmouche*, 214 F.3d 788, 791 (7th Cir. 2000) (city not liable for department head's retaliation against employees:  "If [defendants] retaliated against protected speech, then they violated rather than implemented [the City's] personnel policy . . . ."), *cert. denied*, 531 U.S. 1073 (2001).

---

[6] LaBella refers fleetingly to Michael D'Onofrio (Pl.'s Br. 13), but does not state his title, either in the brief or Complaint, or explain his final policymaking authority.  D'Onofrio is Director of Community Development, and under Village ordinance he is "*subject to* the control and direction of the Village Manager" (WVC § 2.44.030 C (emphasis added; attached hereto as Exhibit 1)), who in turn is responsible to the Council.  D'Onofrio therefore is two steps removed from Winnetka's final policymaking authority, the Village Council.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (when municipal employee's actions are "subject to review by the municipality's authorized policymakers," employee is not final policymaker); *Rasche v. Beecher*, 336 F.3d 588, 600 (7th Cir. 2003) (final policymaker's authority must be "final in the special sense that there is no higher authority") (internal quotations omitted).

Third, Williams's supposed "widespread practice" to violate *LaBella's* rights is particular to LaBella only, and therefore insufficient to state a *Monell* claim. A municipal custom must be so "permanent," "well settled," "persistent," and "widespread" as to have "the force of law." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978). As this Court has noted, "a plaintiff's own isolated experiences are insufficient to establish custom." *Zubek v. City of Chicago*, No. 04 C 5399, 2006 WL 1843396, at *5 (N.D. Ill. July 5, 2006) (Kendall, J.). Williams's alleged actions, taking place only over the course of a few months, and directed only at LaBella, cannot constitute municipal policy.

Finally, LaBella's assertion that Williams's actions were "approved tacitly" by "the Village" is insufficient to withstand a motion to dismiss. If LaBella is attempting to assert a "ratification" theory, it would have to allege "that a municipal official with final policymaking authority *approved* the subordinate's decision *and the basis for it*." *Killinger*, 389 F.3d at 772 (emphasis added). Merely deferring to the decision of a subordinate employee is insufficient to constitute ratification. *See McDonald v. Village of Winnetka*, No. 00 C 3199, 2003 WL 168637, at *16 n.2 (N.D. Ill. Jan. 23, 2003), *aff'd on other grounds*, 371 F.3d 992 (7th Cir. 2004). LaBella's vague and conclusory allegations do not satisfy this standard. At best, they improperly attempt to impose *respondeat superior* liability on the Village.

### IV. All Federal Claims Against Williams, as Well as the Punitive Damages Claims, Must Be Dismissed.

In their Opening Brief, Defendants demonstrated that because the Complaint does not specifically provide that Williams is sued in his individual capacity, he is presumed to be sued in his official capacity as Village Manager. (Defs.' Op. Br. 11) All federal claims against Williams are therefore redundant of those against the Village, and must be dismissed. (*Id.*)

LaBella's response is at once contradictory and a *non sequitur*. First, elsewhere in its brief LaBella concedes that Williams is sued "*in his official capacity*." (Pl.s' Br. 13 (emphasis

10

added))[7]  Moreover, LaBella does not dispute Defendants' authorities, or that no punitive claim can be asserted in an official-capacity claim, but instead cites *Higdon v. Wells County Sheriff's Office*, 426 F. Supp. 2d 854 (N.D. Ind. 2006), for the truism that a Section 1983 suit "may" be brought against municipal employees in their official and/or individual capacities.  (Pl.'s Br. 14)  The issue here, of course, is not whether Williams *may* be sued in his individual capacity, but whether he *is* sued in his individual capacity.  LaBella nowhere denies that the Complaint fails to specify that Williams is sued in his individual capacity.  The fact that the Complaint contains allegations of actions Williams supposedly took (*see* Pl.'s Br. 14) says nothing about whether LaBella is attempting to hold Williams *individually* liable for those actions, rather than attempting to attribute those actions to the Village.

For these reasons, LaBella's punitive damages claim brought under Section 1983 is a claim against the Village, and must be stricken because punitive damages cannot be assessed against municipalities under Section 1983.  (Defs.' Op. Br. 14)  Furthermore, LaBella does not deny that Williams is immune from state law punitive damages liability under the Illinois Tort Immunity Act, which prohibits such damages against public officials, regardless of the "capacity" in which they are sued.  (Defs.' Op. Br. 14; 745 ILCS 10/2-102)  Accordingly, those punitive damages claims should be dismissed as well.

---

[7] Indeed, if Williams were sued in his individual capacity, he would be entitled to qualified immunity, because LaBella has not established either (1) a violation of a constitutional right, or (2) that the constitutional standards LaBella espouses were "clearly established" and objectively clear based on the *specific facts* confronting Williams at the time.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  LaBella cites no "closely analogous" cases, *Dunn v. Elgin*, 347 F.3d 641, 650 (7th Cir. 2003), holding a public official liable for either class-of-one equal protection or substantive due process violations based on the facts here.

11

### V.     Plaintiff Cannot State a Valid Claim Under Illinois Law.

LaBella does not deny that if its federal claims are dismissed, its state law claims should be dismissed as well under 28 U.S.C. § 1367(a), and also fails to address Defendants' arguments that these state law claims fail on their merits.

#### A.     Counts III and IV Should Be Dismissed Under the Tort Immunity Act.

As an initial matter, LaBella *does not dispute* Defendants' argument that the Illinois Tort Immunity Act bars each of LaBella's state law claims. (Defs.' Op. Br. 13-14) Instead, LaBella's sole contention is that this tort immunity defense cannot be raised on a Rule 12(b)(6) motion, but only after an answer has been filed. (Pl.'s Br. 16)

Once again, LaBella cites no authority for its argument. As this Court has held, defenses under the Act are cognizable on a Rule 12(b)(6) motion. *Kincaid*, 2007 WL 4247183, at *2; *see Remet v. City of Chicago*, ___ F.3d ___, No. 06-4206, 2007 WL 4233520, at *2-4 (7th Cir. Dec. 4, 2007) (upholding Rule 12(b)(6) dismissal on tort immunity grounds of claim that city failed to provide services). For this reason alone, Counts III and IV should be dismissed with prejudice.

#### B.     Defendants Owed No "Special Duty" to LaBella.

LaBella's nebulous "duty" claim in Count III fails for additional reasons. LaBella makes no argument that Defendants had a general duty of care to protect LaBella from its landlord and the landlord's roofer. (Defs.' Op. Br. 11-12) Instead, LaBella claims that Defendants owed it a "special duty." (Pl.'s Br. 15) LaBella's contention is contrary to Illinois law.

A purported common law "special duty" cannot trump the immunities granted under the Act. As the Seventh Circuit has stated: "[T]he special duty exception to statutory immunity is no longer viable in Illinois. The Supreme Court of Illinois recently has held that the imposition of the special duty exception to override the legislatively created governmental immunities in the Tort Immunity Act violates the sovereign immunity provisions . . . and also violates the

separation of powers clause of the Illinois Constitution." *Payne v. Churchich*, 161 F.3d 1030, 1044 n.18 (7th Cir. 1998) (internal quotations omitted), *cert. denied*, 527 U.S. 1004 (1999). Because the Act insulates Defendants from liability for the acts alleged here — a proposition LaBella does not dispute — LaBella cannot rely on a "special duty" to circumvent the Act.

Moreover, LaBella's own brief demonstrates that it cannot satisfy the elements of the "special duty," even if such a duty could overcome Defendants' immunity. LaBella correctly notes that a special duty can be created only if "the plaintiff is *under the direct and immediate control* of employees or agents of the municipality" at the time of the alleged injury. (Pl.'s Br. 15 (emphasis added); *see also* Defs.' Op. Br. 12.) LaBella, however, nowhere alleges — and could not allege — that it was under Defendants' "direct and immediate control." Indeed, even when a municipality's alleged failure to enforce its building codes and to conduct proper inspections results in severe injury and death — as in the recent tragic case of the Lincoln Park porch collapse — it neither owed nor breached any "special duty" to those injured:

> [P]laintiffs cannot establish that they were under the "direct and immediate" control of the City or its inspectors when the porch collapsed. At oral argument, plaintiffs argued that the control element was satisfied when they alleged that the City inspected the porch; knew that it was not safe; and failed to act. We disagree. Such a broad interpretation is unreasonable as it has the potential of bringing virtually every porch within city limits under the exception, thus rendering the immunity meaningless.

*Ware v. City of Chicago*, 873 N.E.2d 944, 953 (Ill. App. Ct.) (reversing denial of motion to dismiss), *appeal denied*, 226 Ill. 2d 583 (2007).[8]

---

[8] The case LaBella cites undermines its argument. In *Burdinie v. Village of Glendale Heights*, 565 N.E.2d 654 (Ill. 1990), the Court *rejected* an attempt to hold a municipality liable for injuries caused when a municipal employee, held out by the municipality as a qualified swimming instructor, *instructed* the plaintiff, a student in an adult swimming class, to jump into the pool, knowing that the student was a "non-swimmer." *Id.* at 657. Even under those circumstances, the plaintiff was not under the municipality's direct and immediate control. *Id.* at 666-67. The Court noted that the "direct and immediate control" requirement has been satisfied only in cases involving fire and police protection: "Police and fire departments are paramilitary organizations.

13

### C.     LaBella Has No Claim for Tortious Interference.

Count IV claims that Defendants "intentionally interfered with LaBella's Lease and its continued prospective operation of its business." As Defendants explained, however, LaBella failed to allege key elements of a tortious interference claim. (Defs.' Op. Br. 12-13) LaBella does not dispute the elements of tortious interference with an existing contract and tortious interference with prospective economic advantage. In particular, those claims require "intentional and unjustified" conduct by the defendant and that the defendant's wrongful conduct caused the third party's breach or termination. (*Id.*)

LaBella instead points to its allegations that it considered its lease to be ongoing, that it wanted to reopen, that Defendants "failed to take action" to compel fire repairs by the landlord, and that Defendants did not allow it to reopen without fire repairs (Pl.'s Br. 15-16), but these are allegations only of knowledge plus inaction. Rather than allege that Defendants interfered in the affairs between LaBella and its landlord, LaBella claims that Defendants *failed* to interfere — that they failed to force the landlord to make fire repairs, to continue the lease rather than exercise the termination clause, or to continue to lease to LaBella rather than Corner Cooks.

Defendants' motion to dismiss was not "based entirely on a denial of the truth of the allegations in the Complaint," as LaBella contends. (Pl.'s Br. 15) It is not "an assumption that LaBella's lease is not enforceable" (*id.*) that undermines Count IV. Rather, LaBella itself alleged in its state court complaint that the *landlord* acted to terminate the lease, and whether that action was proper is between LaBella and the landlord and the subject of the state court proceedings. What makes Count IV of LaBella's federal Complaint deficient is its lack of any

---

The very essence of their duties is to be cloaked in State authority, making refusal to obey an order or suggestion a difficult proposition in the mind of a private citizen." *Id.* at 667.

14

allegation that the Village and Williams intentionally took unjustified action that *caused* the landlord to behave this way — the essential core element of an intentional interference claim.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion should be granted, and Plaintiff's Complaint should be dismissed with prejudice.

Date:  January 14, 2008

Respectfully submitted,

/s/ James A. Clark
One of the Attorneys for Defendants
The Village of Winnetka and Douglas Williams

| Kathleen A. Reid | Katherine S. Janega | James A. Clark |
|---|---|---|
| Mulherin, Rehfeldt & Varchetto, P.C. | Village Attorney | Schiff Hardin LLP |
| 211 South Wheaton Avenue | Village of Winnetka | 6600 Sears Tower |
| Suite 200 | 510 Green Bay Road | Chicago, Illinois 60606 |
| Wheaton, Illinois 60187 | Winnetka, Illinois 60093 | Tel:  (312) 258-5500 |
| Tel:  (630) 653-9300 | Tel.:  (847) 716-3544 | Fax:  (312) 258-5600 |
| Fax: (630) 653-9316 | Fax:  (847) 501-3180 | jclark@schiffhardin.com |
| KReid@MRVLaw.com | KJanega@winnetka.org | |

**CERTIFICATE OF SERVICE**

      I, James A. Clark, an attorney, certify that on Monday, January 14, 2008, a copy of the foregoing Defendants' Reply Brief in Support of Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

Dean A. Dickie
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
(312) 627-2149
Fax: (866) 546-9546
Email:  ddickie@dykema.com

Lee T. Hettinger
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
(312) 876-1700
Email:  lhettinger@dykema.com

Sara C. Arroyo
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL  60606
(312) 627-5600
Email:  sarroyo@dykema.com

                        /s/ James A. Clark