## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LABELLA WINNETKA, INC.,

              Plaintiff,

      vs.

THE VILLAGE OF WINNETKA and
DOUGLAS WILLIAMS,

              Defendants.

Case No. 07 CV 6633

Judge Virginia Kendall
Magistrate Judge Cole

PLAINTIFF DEMANDS TRIAL BY JURY

### AMENDED COMPLAINT

Plaintiff LaBella Winnetka, Inc., by and through its attorneys, for its Amended Complaint against The Village of Winnetka, Illinois, and Douglas Williams, the Village Manager, states as follows:

### Nature Of This Constitutional Action

1.     LaBella Winnetka, Inc. ("Plaintiff" or "LaBella") has brought this case under 42 U.S.C. § 1983 and the due process and equal protection guarantees secured to LaBella by the 14th Amendment to the United States Constitution against the Village of Winnetka ("Village") and Douglas Williams ("Williams"), the Village Manager.  Acting under color and authority of law, the Village and Williams, through their arbitrary, capricious and unlawful conduct, have deprived LaBella of the use of its leased restaurant property, its food and liquor licenses  and its right to operate its successful Italian restaurant in Winnetka, Illinois.  LaBella has also brought claims against the Defendants in this Amended Complaint under the laws of the State of Illinois.

### PARTIES

### The LaBella Restaurant

2.     LaBella is an Illinois corporation with its principal place of business in Winnetka, Cook County, Illinois.  LaBella operates a restaurant with authentic Italian cuisine and an Italian

born, well known, and highly visible maitre d'.  It has been one of Chicagoland's finest Italian restaurants for the past fourteen years.

## The Village Defendants

3.      The Village of Winnetka ("Village") is a municipal corporation located in Cook County, Illinois.  It is organized, operated and funded pursuant to the laws of the State of Illinois. The Village is governed by a Village Council which consists of a president and six Village board trustees.  The Village president is Edmund C. Woodbury, and the Trustees are E. King Poor, Tom Eilers, Jessica B. Tucker, Kenneth L. Behles, Herb Ritchell, and Sandra A. Berger.  The Village is a "person" within the meaning of 42 U.S.C § 1983.

4.      Douglas Williams ("Williams") is the Village Manager of Winnetka, Illinois, and on information and belief, a resident of Cook County, Illinois.  He manages the Village pursuant to authority granted to him by the Village Council, by State statutes and by Village ordinances. At all times relevant, he directed and controlled the business affairs of the Village, its officials and staff regarding the selective and arbitrary enforcement of Village ordinances and building codes.

5.      With regard to the events identified in this Amended Complaint, the Village and Williams and those acting pursuant to their direction, at all times acted under color of law within the meaning of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

7.      Venue is proper in this court pursuant 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### LaBella's Fundamental Property Interests
### Protected By The Constitution

8.      On May 6, 1993, LaBella entered into an agreement (the "Lease") to lease certain property (the "Premises") at One Chestnut Court in Winnetka, Illinois 60093, and later 505 Chestnut Street, Winnetka, Illinois 60093.  A complete copy of the Lease and all executed Riders thereto was requested by the Village, and have been provided to the Village in accordance with the Village's liquor licensing requirements for restaurants.  The Lease has been extended from time to time, and LaBella's Lease remains in full force and effect until July 31, 2008, all of which was or should have been known to the Village and Williams.

9.      LaBella's restaurant is located immediately west of the Winnetka Village Hall.  It has been one of Chicagoland's finest authentic Italian restaurants since it opened in 1993, and it has operated successfully and profitably from its unique Premises in downtown Winnetka for over fourteen years.

10.     LaBella's fourteen years of successful operation in Winnetka has created immense goodwill, fostered a broad and loyal customer base and earned it a reputation throughout the Chicagoland area for excellent Italian dining.  Because of the distinctive cuisine and widely-recognized personality of its maitre d' host, LaBella has attracted hundreds of patrons from a variety of diverse communities throughout the metropolitan Chicago area.

11.     In addition to its Lease of the Premises, LaBella has expended large sums of money for its kitchen and dining areas and for all the equipment necessary to operate a restaurant with this reputation.

12.     LaBella has a staff which is highly skilled and dependent on the continued operation of the restaurant.  The staff consists of a number of individuals who work in the

restaurant daily.  The building in which LaBella is situated also has numerous residents who are present in the building at various times throughout the day.

13.     In addition to its Lease, LaBella obtained a restaurant license, a liquor license and all appropriate licenses and permits for operating its restaurant in Winnetka; it has continued to receive and maintain those licenses over the years and throughout its presence in Winnetka has been a lawful, taxpaying business.

14.     Since its opening, LaBella has strived to comply with all Village ordinances and to respond promptly to Village concerns, taking pride in the appearance of its restaurant and its kitchen and dining areas in order to be of the highest quality.

15.     LaBella has substantial, valuable and fundamental property rights consisting of the exclusive use and enjoyment of its leasehold interest and ownership of its Italian restaurant business which it operates in Winnetka, Illinois.  These property rights are protected by the United States Constitution.

## The Village's Discriminatory And Selective Enforcement Of Its Building Code And Creation Of A Fire Hazard

16.     Beginning at least in 2006 or at an earlier time better known to the Defendants, the Village and Williams permitted LaBella's landlord (the "Landlord") to perform construction work on the roof above LaBella's restaurant without requiring the Landlord to apply for or obtain building permits mandated by the Village's building codes, and/or without any proper and appropriate inspections by the Village building inspectors to require the Landlord to bring the roof into compliance with Village ordinances and its building code.  This work on the roof by the Landlord and its roofers, which included the use of hot tar and torches, was obvious and open to view and was performed in the immediate vicinity of the Winnetka Village Hall.

17.    At all times material to this dispute, the Village and Williams knew or should have known that the roof was not in compliance with Village ordinances and that the work on the roof performed by roofers retained by the Landlord required permits, proper supervision, and compliance with established building codes and procedures.  The Defendants knew or should have known that roof work involved the use of hot tar and torches and other flammable materials, and that it should have been inspected for purposes of the safety of numerous persons at LaBella and residing in the building, and for the structural safety of the building itself, and to ensure compliance with the Village's building code requirements.  However, the Village and Williams intentionally and arbitrarily took no action to require permits or to stop the Landlord from performing any dangerous, unsupervised work which created potential fire hazards.  The Village and Williams refused to inspect the work or enforce compliance with the Village's building code and safety requirements because of their deliberate, selective enforcement when applied to LaBella.

18.    On numerous occasions from at least 2006, LaBella complained to the Village, Williams and other officers and employees of the Village about the Landlord's failure to maintain the roof and the defective condition of the roof with water pouring into the restaurant through holes in the roof and walls of the building.  LaBella met with the Village in the fall of 2006 and provided specific information regarding the roof's defective condition and the need for compliance with the Village's requirements when repairing the roof.

19.    Thereafter, the Village and Williams did not require the Landlord to bring the roof into compliance with Village ordinances, and to do so in a timely and orderly manner so LaBella could plan for the roof work and have a safe and secure roof above its restaurant which complied with the Village's ordinances and codes.

### The February 28, 2007 Complaint

20.    On February 28, 2007, LaBella complained again to the Village and Williams and informed them that a single employee of a roofing contractor hired by the Landlord was performing work on the roof with a propane gas tank and tar, that he had no building permit, and that he might damage the roof or cause other damage if his work was not supervised or stopped. Despite this warning, the Village and Williams intentionally ignored LaBella's stated fears, refused to respond in any way to LaBella's stated concerns, and even refused to assign an inspector the simple task of walking out of the Village Hall to inspect this work about which LaBella was complaining, even though the subject roof work was visible and within a few yards of the Village Hall doorway.

### The Roofer Sets The Roof On Fire And LaBella Is Forced
### To Close Through No Fault Of Its Own

21.    Notwithstanding that this unsupervised work and the presence of a propane gas tank and the use of tar was specifically brought to the Village's attention, and that the Village was the proper authority to issue a stop-work order and stop this work immediately, the roofer continued on the roof with a torch because the Village and Williams did not take action or issue a stop work order in response to LaBella's complaint about this dangerous activity.  Within a couple of hours that same day, this unsupervised roof work with the use of a propane gas tank and hot tar resulted in a major fire on the roof above LaBella, thereby endangering employees, residents, and firefighters, and causing major damage to the roof.

22.    As a result of the fire damage to the roof, LaBella was forced to close its restaurant abruptly, without any advance notice, and through no fault of its own.  Although the damage to the interior of LaBella's restaurant was readily repairable, the Village, Williams and others at their direction wrongfully, maliciously and intentionally refused to permit LaBella to

begin to repair the interior of the restaurant, to remain open in its bar area which had adequate seating, or continue to utilize its kitchen to service the bar area and the outdoor patio of the restaurant during the summer until and unless the Landlord replaced the roof above LaBella's restaurant in compliance with all Village codes, such compliance with which the Village had not previously required of the Landlord.

23. The Village and Williams deliberately obstructed LaBella's continued use of its kitchen and bar area and repair of the restaurant's interior even though they knew full well that LaBella had to close its restaurant immediately because of the fire, that it was forced to do so through no fault of its own, and that it would not be able to reopen or resume serving its loyal customer base until the Landlord complied fully with the directives issued by the Village and Williams after the fire.

### Village Involvement In The Failure To Repair Roof So LaBella Could Not Reopen

24. At all times material, the Village and Williams knew that they would not allow LaBella to reopen, and they knew that the Landlord was not making any attempt to restore LaBella to its leased Premises, or to replace the roof as required under Rider 2, paragraph 5 of the Lease. As a result of the Village's and Williams' refusal to allow LaBella to partially reopen, LaBella has been forced to remain closed, without income or any projected date of reopening. It is without income because of the arbitrary, capricious and spiteful actions by the Village and Williams who even refused to allow the partial reopening of LaBella, knowing that by doing so, LaBella would be forced out of business. The irrational, wholly arbitrary and illegal actions in which the Defendants have engaged include, *inter alia,* the following discriminatory and intentionally harmful actions:

A.    The Village, Williams and others at Williams' direction, including Michael D'Onofrio ("D'Onofrio"), knowingly permitted the Landlord to make multiple prior roof repairs without any building permits or proper inspection by the Village to ensure compliance with Village ordinances and codes even though they knew or should have known that this work on the roof was not in compliance, required the use of hot tar and propane torches, that this work was not safe if done improperly, and was done on the cheap by the Landlord because compliance with the Village codes would have required replacement of the old roof which consisted of multiple layers of roofing and had other defects.

B.    The Village and Williams knowingly failed to take any enforcement action in 2006 or in 2007 before the fire to require the Landlord to obtain a permit, and repair or replace the roof in a proper and safe manner, consistent with Village requirements.  At all times material, the Village and Williams knew that proper enforcement action would have eliminated the risk of hazards caused by the unsupervised use of propane torches and hot tar by a single worker, which endangered individuals working and/or residing in the building, and the building roof and structure.  In fact, appropriate action by the Village would have eliminated the likely risk of harm to all, and the catastrophic impact on LaBella and the losses which it has sustained to its business, its property and the livelihood of its owner operator as a result of the major fire on the roof;

C.    Shortly after the fire, the Village, Williams and other Village employees at the direction of Williams, for the first time, required that the roof above LaBella had to be completely replaced in order to comply with the Village code.  The Village also required that this work had to be completed before the Village would permit commencement of any restoration of the restaurant premises or allow LaBella to reopen on a partial basis and to continue its cooking operations.  In fact, the Village and Williams knowingly refused LaBella's request to partition

off the main dining area from the kitchen and continue cooking operations so it could service the tables in the bar area and its tent.  The Village and Williams knew at all times that a permit and inspection should have been required before the fire in 2007, and that they should have taken appropriate action against the Landlord to enforce their building codes before the fire;

D.     When the Village, Williams and those reporting to Williams required a complete new roof as a condition precedent to reopening or partially reopening LaBella after the fire, they knew or should have known that LaBella had a right to continued operation of its restaurant under its Lease, and that LaBella's Lease included a term which called for prompt repair of the roof, and that the Landlord would use any delay in replacing the roof as a basis for claiming that LaBella's Lease was terminated even though everyone knew that LaBella was forced to close through no fault of its own;

E.     Moreover, after the fire, the Village, Williams, D'Onofrio and others met from time to time with representatives of the Landlord, and other businesses, including Corner Cooks, insurers, adjustors and others, for the express purpose of keeping LaBella closed, thereby precluding a once thriving, local Winnetka business from reopening for its customers.  During those secret discussions, the Village, Williams and D'Onofrio knew or should have known that (i) the Landlord did not intend to replace the roof promptly, (ii) the Landlord would terminate LaBella's Lease because of the Landlord's delay in repairing the roof, and (iii) LaBella would be forced out of the building because of a fire caused by the Landlord and its roofer.  The Village's and Williams' failure to require the Landlord to repair the roof in a timely manner, while working with the Landlord and others to deprive LaBella of its leasehold, was intentional, capricious and arbitrary, and done with the illegitimate intent of depriving LaBella of its Lease and its right to reopen its restaurant which was closed through no fault of LaBella;

- 9 -

F.    The Village and Williams also knew that LaBella submitted permit applications to the Village for minor work on the interior of the restaurant caused by the roof fire above LaBella's restaurant.  However, the Village and Williams instructed LaBella that it could not partially reopen, and could not begin any interior work until the Landlord replaced the entire roof.  They deliberately refused to process LaBella's permit applications even though they knew that the Landlord was responsible for restoring LaBella to its leased Premises, was required under Rider 2, paragraph 5 of the Lease to restore the roof, and was also responsible for damage to the interior of the restaurant because the Landlord and its roofer caused the fire and the damage to the restaurant in the first place.  They also knew that LaBella had been forced to close, had no income because of the fire, and by virtue of its pecuniary duress, was incapable of taking steps to protect its leasehold.

### Unlawful Issuance Of Permits To Corner Cooks
### To Deprive LaBella Of Its Leased Premises

25.    The Village, Williams and others within the Village management also knew that LaBella's Lease did not end until July 31, 2008.  Notwithstanding such knowledge, they met from time to time with representatives of the Corner Cooks and others, and approved permits and designs for Corner Cooks and Jerry's Restaurant to allow them to begin occupying portions of the building which were still leased to LaBella including the bar area which LaBella asked to reopen.  The Village and Williams took these actions arbitrarily and intentionally because of their "special" relationship with the owner of Corner Cooks, and their knowledge that the issuance of permits to Corner Cooks and a new tenant for the bar area already leased by LaBella would force LaBella out of business.

**The Defendants' Actions Were
Capricious, Spiteful, Intentional And Malicious**

26.    At all times relevant, the above actions taken by the Village, Williams and those acting on the direction of Williams relating to enforcement of the Village ordinances and building codes were selective, capricious, arbitrary, intentional and malicious.  Their actions were part of a widespread pattern, practice and custom by Williams to favor certain restaurants in Winnetka, and his actions were well known to the Village Board and were approved by the Village Board to deprive LaBella of the right to keep its restaurant business in Winnetka and to force it out of business.

27.    This unlawful pattern and practice by Williams is evidenced by the arbitrary actions outlined above, and is further evidenced by discriminatory and spiteful actions and by selective enforcement of the Village's ordinances and codes, the purpose of which was to injure LaBella while at the same time favoring other restaurants and businesses which were similarly situated as LaBella.  Some examples are as follows:

A.    This pattern and practice by the Village and Williams of favoring certain restaurants in Winnetka similarly situated to LaBella while at the same time discriminating against LaBella was widespread.  There was an express policy so that the restaurants receiving favorable treatment from Williams were well known and were referred to among Village subordinate employees as "Friends of Doug" or "FOD's."  The maitre d' of LaBella and LaBella are not "FODs."  The maitre d', however, is a public personality, well known and liked by patrons and out-of-towners alike who come to the restaurant in part to visit with him. Consequently, LaBella and its host have been the victims of selective, irrational and discriminatory enforcement of Winnetka's ordinances through the spite and animus of Williams and others when compared to other similarly-situated businesses;

B.     Williams has had and continues to have a "special" relationship with the owner of Corner Cooks, a "restaurant" located in the same building as LaBella. The specific nature and extent of this relationship is best known to the Village and Williams but as a result of this friendship and close relationship, the Village has allowed Corner Cooks to operate with disregard of Village ordinances, building codes and state liquor laws, all at LaBella's expense, as follows:

(i)     Williams and the Village gave favorable, selective treatment to the Corner Cooks regarding the issuance of Village restaurant and liquor licenses. The Village, because of the special relationship, issued liquor licenses to Corner Cooks "after the fact," thereby ignoring Village and state laws regarding issuance of such licenses. The "after the fact" issuance of restaurant and liquor licenses, including some form of "special use" ordinance to accommodate Corner Cooks' non-compliant activities, failed to conform with Village ordinances and emasculated the customary evaluation required of applicants starting anew, the very evaluation with which LaBella was required to comply. These selective enforcement practices seriously interfered with LaBella's operation of its restaurant and have disrupted LaBella's normal and customary use of its restaurant, including its restroom facilities;

(ii)     The Village and Williams have permitted Corner Cooks to expand its operations and to open Jerry's Restaurant which seats an additional 40 customers serving food prepared on the same grills, fryers, cook tops and ovens using the Corner Cooks' exhaust system. Corner Cooks and Jerry's Restaurant have been permitted to expand into the bar area still leased to LaBella while continuing to use this non-conforming exhaust system because of the "special" relationship between Corner Cooks and Williams. But for the special relationship, Corner Cooks would not have been lawfully entitled to operate a restaurant without substantial modifications to

its leased space, including replacement of its entirely defective exhaust system, let alone operate

two restaurants, and is not now entitled to any permit to expand its hazardous operations;

(iii)    The Village and Williams approved ordinances and permits which

has allowed Jerry's Restaurant to operate out of the bar area leased to LaBella.  This is the same

area which the Village and Williams refused to allow LaBella to install a partition and to use in

order to partially reopen after the fire.  Instead, Jerry's Restaurant and Corner Cooks have

expanded into and operate out of space leased to LaBella, including the very same bar area that

was requested to remain open by LaBella, only to be denied by the Village and Williams;

(iv)    The Village and Williams permitted Corner Cooks to reopen

immediately after the fire above, while prohibiting LaBella from continuing its operations.

Corner Cooks and LaBella were in similar if not identical positions before and after the fire

because the two restaurants were subject to the same risks as a result of the roof's non-

compliance with certain Winnetka ordinances after the fire, and were located on the same floor

immediately adjacent to one another.

C.    O'Neil's Restaurant is another example of a restaurant in Winnetka, and

an "FOD" which is similarly situated to LaBella.  It, too, received favorable treatment from the

Village and Williams while LaBella is treated unfairly and capriciously.  Most graphic of this

arbitrary and spiteful treatment of LaBella is the juxtaposition of strikingly different treatment by

Williams of O'Neil's and LaBella:

(i)    LaBella requested to partition off the affected section of the

LaBella Winnetka following the fire so that it could continue cooking operations and remains

open.  The Village denied LaBella's request.

(ii)    At the time of this filing, O'Neils is open for business and

continues its cooking operations even though a portion of its restaurant is partitioned-off for

building renovations.  This was authorized by a permit issued by the Village, specifically, D'Onofrio, on March 18, 2008, which remains is in effect until June 16, 2009, more time than the amount of time LaBella had remaining on its lease when it was forced to close.

### The Village Ignores The Discrimination

28.    At all relevant times, the Village Council knew or should have known of the selective, arbitrary and capricious enforcement of Village ordinances and building codes by Williams, D'Onofrio and other Village staff at their direction.  Specifically, the Village council had a practice and policy of entering into closed sessions during the discussion of Williams' issues, at which time it would approve Williams' agenda.

29.    The Board, at all relevant times, was aware of Williams' conduct and treatment in favor of the FOD's, such as Corner Cooks, and the arbitrary and capricious conduct and treatment against LaBella.  The Village Council has also known of the discriminatory and spiteful treatment by Williams toward LaBella and its employees, and was aware of the treatment against LaBella during the time Corner Cooks and Jerry's Restaurant began operating out of LaBella's leasehold Premises.  Although the Village Council has been fully aware of the discriminatory, unconstitutional conduct visited on LaBella, it nonetheless has knowingly and intentionally failed to take any action to correct and prohibit such conduct by Williams and those whom he directs.  Indeed, Plaintiff is informed and believes and therefore alleges that the Village is considering or has already considered how to reward Williams for his conduct as Village Manager.

### COUNT I

### DAMAGES FOR VIOLATION OF EQUAL PROTECTION

30.    LaBella realleges paragraphs 1 through 29 above as paragraph 30 of this Count I.

31.     Section 1983, U.S.C. prohibits persons acting under color of law from depriving persons of any rights, privileges, or immunities secured by the Constitution, including the right to equal protection secured by the 14th Amendment and to be treated equally with those that are similarly situated.

32.     LaBella has protectable property rights consisting of its Lease and its restaurant business which it has operated successfully in Winnetka for the past fourteen years, and it is entitled to be treated the same as similarly-situated restaurants and businesses in Winnetka.

33.     At all times relevant, LaBella was similarly situated to other restaurants in Winnetka, and all of these restaurants were subject to the same Village ordinances, building codes, sanitation reports, health standards and safety laws and other requirements.  These restaurants located in the Village include, *inter alia,* Corner Cooks, Jerry's Restaurant, O'Neil's and other restaurants which have been issued restaurant licenses and/or liquor licenses by the Village.

34.     At all times relevant, officials who held high positions of power in the Village included Williams and D'Onofrio, and these same individuals dealt with LaBella and all similarly-situated restaurants during the same period of time set out in this Amended Complaint.

35.     Because LaBella's presence was unwanted by the Village and high Village officials, including Williams and D'Onofrio, they treated LaBella differently in the enforcement of Village ordinances and codes than they treated other similarly-situated restaurants even though all were subject to the same ordinances, codes, standards and/or requirements during the same period of time.  They selectively and vindictively enforced and ignored the Village's ordinances and laws which resulted in LaBella being forced to close its restaurant abruptly, and thereafter, they took arbitrary actions to require LaBella to remain closed while at the same time permitting other similarly-situated restaurants to remain open and to expand substantially in size

even though they were not and are not in compliance with Village ordinances, codes, requirements and/or standards. The Village and Williams also allowed another restaurant to not only expand into LaBella's leased space, but operate out of space that LaBella was denied access to for purposes of continuing its operation after the fire. The Village and Williams allowed Corner Cooks to remain open while not allowing LaBella to re-open, though Corner Cooks and LaBella shared the same common roof over that portion of the Premises. This continuous disparate treatment by the Village, Williams and D'Onofrio was based on a totally illegitimate animus, dislike, and sheer vindictiveness as a result of their dealings with LaBella and its representatives.

36.     In violation of 42 U.S.C. § 1983 and the equal protection clause, the Village and Williams have deprived LaBella as a party of one of its right to equal protection by intentionally treating it different from others similarly situated by its practice of selective and discriminatory enforcement of their ordinances, building code, and by other arbitrary actions with the express purpose and objective of forcing LaBella out of business in Winnetka.

37.     As a result of such arbitrary and selective enforcement by the Village and Williams, and their other vindictive and arbitrary actions set out above, LaBella has endured repeated discrimination and ill-treatment, has been forced to close its restaurant, has not been able to reopen, has been unable to operate its restaurant, and has lost income from the operation of its business and suffered a significant diminution in the value of its business.

WHEREFORE, LaBella prays for the following relief:

A.     Compensatory damages including but not limited to loss of profits and diminution in value of its business in an amount not less than $2 million;

B.     Punitive damages against Williams of not less than $5 million;

C.     An order prohibiting Defendants from engaging in any further conduct violative of 42 U.S.C. § 1983;

D.   Attorney's fees and costs; and

E.   Such other relief as this Court deems appropriate and just under the circumstances.

## COUNT II

## DAMAGES FOR DEPRIVATION OF SUBSTANTIVE DUE PROCESS

38.   LaBella realleges paragraphs 1-37 above as paragraph 38 of this Count II.

39.   Section 1983, U.S.C. prohibits persons acting under color of law from depriving persons of any rights, privileges or property secured by the 14th Amendment to the Constitution, including the right to substantive due process of law.  When a person has a protectable, vested property interest, that interest may not be taken or impinged upon by governmental action which is wholly without legal justification.

40.   LaBella has protectable vested property rights consisting of its Lease and its restaurant business which it has operated successfully in Winnetka for the past fourteen years. This includes its profitable operations, its licenses including its restaurant and liquor licenses, the goodwill that it has created, and its fixtures, furnishings and equipment which are all part of its restaurant in Winnetka which has been shut down by actions by the Village and Williams which are wholly without legal justification.

41.   At all relevant times, the Village and Williams have arbitrarily and capriciously abused their powers when enforcing Village ordinances and building codes, and taking other action to deprive LaBella of its property rights, and they have thereby interfered with LaBella's exclusive use and enjoyment of its restaurant in Winnetka without due process of law.  These actions include the following:

A.   The Village and Williams knew at all times relevant that work on the roof above LaBella required a permit and inspection by the Village in order for LaBella to operate in

a safe and secure manner, and the Village and Williams intentionally refused to require compliance with it building code because of their deliberate indifference to LaBella's operation of its restaurant in Winnetka;

B.     In addition, the Village and Williams were specifically informed that a roofer had a propane gas tank and hot tar on LaBella's roof, and that he was working alone on the roof without any permit, supervision or inspection.  Although the Village and Williams knew or should have known that this unsupervised work created a substantial risk of a fire and resulting danger to employees of LaBella, residents of the building, and the structure of the building, they purposely and intentionally refused to take appropriate action to inspect and stop this hazardous and unsafe conduct because of their dislike of LaBella and its employees;

C.     The Village and Williams knew at all times relevant that LaBella was forced to close its business abruptly without prior notice due to actions for which LaBella was not responsible and that LaBella was without any income.  Yet the Village and Williams purposely failed and refused to allow LaBella to repair the interior of its restaurant while at the same time they knowingly permitted and encouraged the Landlord to delay the repair of the roof so LaBella would not be able to reopen its Italian restaurant;

D.     The Village and Williams knew at all relevant times that LaBella had a Lease which was valid until July 31, 2008, and yet they purposely and intentionally worked with and encouraged Corner Cooks to expand its restaurant to areas still leased to LaBella, and to permit Corner Cooks to greatly expand its restaurant capacity by opening Jerry's Restaurant in areas still leased to LaBella, thereby arbitrarily forcing LaBella out of business in Winnetka; and

E.     By their conduct, the Village and Williams also deprived LaBella, as a class of one, of equal protection of the law.

42.     The arbitrary and irrational actions taken by the Village and Williams had no legitimate governmental objective, and they were and are motivated solely by improper personal animus against LaBella.  LaBella has no adequate state law remedy available to it to address this unlawful conduct by the Village and Williams.

43.     As a result of the Village's and Williams' denial of substantive due process, LaBella has been forced to close its business, has been unable to reopen its business, and has lost income from the operation of its business and has suffered a significant diminution of the value of its business.

WHEREFORE, LaBella prays for the following relief:

A.     Compensatory damages including but not limited to loss of profits and diminution in value of its business in an amount not less than $2 million;

B.     Punitive damages against Williams of not less than $5 million;

C.     An order prohibiting Defendants from engaging in any further conduct violative of 42 U.S.C. § 1983;

D.     Attorney's fees and costs; and

E.     Such other relief as this Court deems appropriate and just under the circumstances.

## COUNT III

### THE VILLAGE'S WILLFUL AND UNLAWFUL CANCELLATION OF LABELLA'S FOOD AND LIQUOR LICENSES

44.     LaBella realleges paragraphs 1 through 29 above as paragraph 44 of this Count III.

45.     Beginning in 1993, fourteen years ago, LaBella applied for a Food Dealer License and a Retail Liquor License (the "Licenses") from the Village to operate a restaurant and serve liquor in its restaurant located in Winnetka, Illinois.  The Village issued these Licenses to LaBella at that time.

46.     Annually thereafter, from 1993 to 2007, LaBella renewed its Licenses by completing the renewal forms which have been routinely sent to it by the Village. The Village, in turn, renewed LaBella's Licenses for the past fourteen years.

47.     The Licenses are extremely valuable property rights as they are a condition precedent to LaBella's ability to operate its restaurant business in Winnetka, Illinois. Without its Licenses, LaBella cannot serve food or alcoholic beverages to its customers at its restaurant in Winnetka. LaBella's Licenses are routinely issued for one-year periods, and have been routinely renewed by the Village for the past thirteen years. Those Licenses have been securely held by LaBella because they can only be revoked for cause after notice and a due process hearing.

48.     There has been no cause for LaBella to lose its Licenses. LaBella has never been cited for violation of State or Village Liquor Laws although other similarly situated restaurants have been cited but they have not lost their licenses. In addition, some of LaBella's staff has received Bassett training for serving alcoholic beverages which exceeds the Village's requirements for obtaining a liquor license. At all times material, LaBella has cooperated with those within the Village charged with the responsibility for administering and policing the food and liquor licenses issued by the Village.

49.     Beginning at a time in 2007 better known to the Village and Williams, they began to meet, discuss and conspire with unknown individuals to prevent LaBella from reopening following a fire which forced LaBella to close without any fault on its part. The Village and Williams took actions to cancel LaBella's licenses so it could not reopen, and so food dealer and retail liquor licenses could be issued to an expanded Corner Cooks and a new restaurant called Jerry's Restaurant using the same address as LaBella's restaurant in Winnetka, Illinois.

50.     The Village and Williams took these actions even though they knew full well that LaBella has a lease for its restaurant which is valid through July 31, 2008. They purposely and

intentionally worked with LaBella's lessor and/or with Corner Cooks and Jerry's Restaurant in order to cancel LaBella's Licenses because such conduct will force LaBella out of its leased space for the benefit and convenience of the lessor, Corner Cooks and Jerry's Restaurant.

51.     These unlawful actions include the following:

A.     The Village and Williams first developed a strategy to deprive LaBella of its Food Dealer License, No. F19-2007. Although the Village has routinely sent renewal forms to LaBella's for the past fourteen years, the Village and Williams instructed their staff not to send the annual renewal form to LaBella so LaBella could not renew its Food Dealer License for the year 2008. As a result of their conduct, LaBella was deprived of its right to renew its Food Dealer License without cause, without notice and without a hearing.

B.     The Village and Williams next took unlawful actions to terminate LaBella's "Village of Winnetka Retail Liquor License," a Class A-1 license in Winnetka. LaBella holds this Retail Liquor License until March 31, 2008, and LaBella also holds a liquor license from the State of Illinois which is good until August 31, 2008. Although the Village has routinely sent renewal forms to LaBella for the past fourteen years, the Village and Williams instructed their staff not to send the annual renewal form to LaBella so LaBella could not renew its Retail Liquor License. In addition, the Village and Williams actively worked with and facilitated the passage of an ordinance approving the issuance of a Class A-1 liquor license to Corner Cooks and Jerry's Restaurant at the same address as LaBella, and after doing so, they cancelled LaBella's Retail Liquor License – without cause, notice or a hearing.

52.     The Village and Williams took these actions against LaBella to force LaBella out of business and to destroy its business even though LaBella has successfully operated its restaurant business for fourteen years without violations of the Village's ordinances relating to service of food and alcoholic beverages.

53.     During the same period of time when the Village and Williams revoked LaBella's Food Dealer License and its Retail Liquor License, the Village and Williams failed to take any action to revoke the licenses of FOD's for multiple liquor violations relating to serving minors, failing to purchase alcoholic beverages from authorized distributors, improper disposal of spent liquor bottles to hide non-compliance, and other infractions relating to serving alcohol, and for multiple sanitation inspection violations relating to food, food equipment and utensils, toilets, physical structure of restaurants, and other operational violations.

54.     These actions by the Village and Williams to cancel LaBella's Food Dealer License and its Retail Liquor License without cause, without notice, and without a hearing are unlawful, intentional and malicious, and they have deprived LaBella of its valuable property rights in its Licenses, and destroyed LaBella's restaurant business in violation of the due process clause of the 14th Amendment.  LaBella has been deprived of its rights to operate its restaurant business, has been irreparably harmed, and has no adequate remedy at law.

WHEREFORE, LaBella prays for entry of an order granting the following relief:

A.     Preliminarily and permanently enjoining the Village and Williams from cancelling LaBella's Licenses;

B.     Compensatory damages including but not limited to loss of profits and diminution in value of its business in any amount not less than $2 million;

C.     Punitive damages against Williams of not less than $5 million;

D.     Attorneys' fees and costs; and

E.     Such other relief as this Court deems appropriate and just under the circumstances.

**COUNT IV**

**THE VILLAGE INTENTIONALLY INTERFERED WITH
LABELLA'S LEASE AND ITS PROSPECTIVE
RESTAURANT BUSINESS**

55.     LaBella realleges paragraphs 1 through 29 and 45 through 54 above as paragraph 55 of this Count IV.

56.     The Village and Williams knew at all times relevant that LaBella had a Lease for its restaurant business which was valid through July 31, 2008.  They also knew that LaBella had a following of loyal customers who would continue to dine at LaBella's Italian restaurant until the expiration of its Lease in 2008.

57.     Although the Village and Williams knew full well of LaBella's Lease and its ongoing business, they intentionally and willfully interfered with LaBella's Lease and with its prospective continuing business because of their wrongful conduct which includes the following:

A.     The Village and Williams, acting intentionally and without any lawful exercise of discretion, instructed LaBella not to begin the repair of the interior of its restaurant until and unless the Landlord replaced the roof.  At the same time, they did not require the Landlord to repair and replace the roof in a prompt manner, knowing full well that the failure to repair the roof timely would interfere with LaBella's ability to repair the interior of its restaurant and reopen for its customers;

B.     The Village and Williams, acting intentionally and without any lawful exercise of discretion, also worked with and encouraged Corner Cooks to expand its space and to bring in Jerry's Restaurant, although they knew full well that the expansion of these two restaurant businesses in the same building where LaBella was located interfered with LaBella's quiet enjoyment of its Lease and allowed these restaurants to occupy areas already leased to LaBella.

58.     As a result of these intentional activities by the Village and Williams, done without any lawful exercise of discretion, LaBella does not have access to its leased space and is unable to continue its restaurant business for the remainder of its Lease.

59.     The Village and Williams have intentionally interfered with LaBella's Lease and its continued prospective operation of its business.  As a result, LaBella has been forced to close its restaurant, has been unable to reopen, has no income, and has suffered a significant diminution in the value of its business.

WHEREFORE, LaBella prays for the following relief:

A.     Compensatory damages including but not limited to loss of profits and diminution in value of its business in an amount not less than $2 million;

B.     Punitive damages against Williams of not less than $5 million;

C.     Attorney's fees and costs; and

D.     Such other relief as this Court deems appropriate and just under the circumstances.


Dated:  April 3, 2008                              Respectfully submitted,


                                                   By:   /s/ Dean A. Dickie
                                                         One of the Attorneys for Plaintiff
Dean A. Dickie, ARDC No. 0631744                         LaBella Winnetka, Inc.
Lee T. Hettinger, ARDC No. 1206397
Sara C. Arroyo, ARDC No. 6288962
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
(312) 876-1700

## Certificate of Service

I, Dean A. Dickie, hereby certify that on April 3, 2008, I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kathleen Ann Reid, Esq.
Matthew Richard Schreck, Esq.
Ray Hunter Rittenhouse, Esq.
Sara Kathryn Forsmark, Esq.
MULHERIN, REHFELDT & VARCHETTO, P.C.
211 South Wheaton Avenue
Suite 200
Wheaton, IL 60187
Tel: (630) 653-9300
Fax: (630) 653-9316

Katherine S. Janega, Esq.
Village Attorney
VILLAGE OF WINNETKA
510 Green Bay Road
Winnetka, IL  60093
Tel: (847) 501-3180
Fax: (847) 507-3180

James A. Clark, Esq.
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Tel: (312)258-5500
Fax (312)258-5600

/s/ Dean A. Dickie