IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABELLA WINNETKA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07 C 6633 |
| THE VILLAGE OF WINNETKA and | ) | |
| DOUGLAS WILLIAMS, | ) | Judge Kendall |
| | ) | Magistrate Judge Cole |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

| | | |
|---|---|---|
| Kathleen A. Reid | Katherine S. Janega | James A. Clark |
| Mulherin, Rehfeldt & | Village Attorney | Schiff Hardin LLP |
|   Varchetto, P.C. | Village of Winnetka | 6600 Sears Tower |
| 211 S. Wheaton Avenue | 510 Green Bay Road | Chicago, Illinois 60606 |
| Suite 200 | Winnetka, Illinois 60093 | Tel: (312) 258-5500 |
| Wheaton, Illinois 60187 | Tel:  (847) 716-3544 | Fax: (312) 258-5600 |
| Tel: (630) 653-9300 | Fax:  (847) 501-3180 | jclark@schiffhardin.com |
| Fax: (630) 653-9316 | kjanega@winnetka.org | |
| kreid@mrvlaw.com | | |

Attorneys for Defendants
The Village of Winnetka and Douglas Williams

Date:  May 12, 2008

## TABLE OF CONTENTS

Page

I. The Amended Complaint Fails to State an Equal Protection Claim ................................ 1
    A. LaBella's "Similarly Situated" Allegations Still Fail ............................................. 1
    B. LaBella Does Not Sufficiently Allege Irrational /Illegitimate Conduct ................ 4
        1. Irrationality ................................................................................................ 4
        2. Illegitimate Animus ................................................................................... 5
II. The Amended Complaint Fails to State a Substantive Due Process Claim ...................... 6
    A. The Amended Complaint Fails Just as the Original Complaint Did ..................... 6
    B. Defendants Had No Constitutional Duty to Protect LaBella from Its Landlord or the Roofer ....................................................................................... 7
III. Count III Fails to State a Due Process Claim Regarding LaBella's Food and Liquor Licenses ................................................................................................................. 9
    A. Plaintiff Has Failed to Allege Inadequate State Remedies .................................... 9
    B. LaBella Did Not Even Apply to Renew Its Licenses ............................................ 9
    C. LaBella Does Not Allege that It Qualified for Renewal ....................................... 9
        1. Food Licenses .......................................................................................... 10
        2. Liquor Licenses ....................................................................................... 10
IV. The Amended Complaint Fails to State a Section 1983 Monell Claim .......................... 11
V. All Federal Claims Against Williams Must Be Dismissed as Redundant of Those Against the Village. ......................................................................................................... 13
VI. The State Law Claim Should Be Dismissed .................................................................. 13
VII. Punitive Damages Cannot Be Recovered Against Defendants ....................................... 15
Conclusion ................................................................................................................................. 15

On March 13, 2008, the Court dismissed the original complaint of Plaintiff LaBella Winnetka, Inc. ("LaBella"), giving LaBella an opportunity to replead. LaBella's Amended Complaint ("AC") changes little and still fails to state a claim. Defendants respectfully request that the AC be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

I. **The Amended Complaint Fails to State an Equal Protection Claim.**

    A. **LaBella's "Similarly Situated" Allegations Still Fail.**

The Court dismissed Count I of the original complaint because it did not allege that LaBella was similarly situated to others with respect to "the forced closure of its restaurant and its inability to reopen,"[1] but allowed LaBella to replead to "add to or clarify" its allegations. 2008 WL 696902 at *4-5. The AC does not cure this deficiency.

The Seventh Circuit has held that "[i]t is difficult to proceed on a class-of-one equal protection theory," and "[t]he similarly situated test is a particularly high bar because '[v]arious factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment.' " *Lerch v. City of Green Bay*, 2008 WL 822254 at *2 (7th Cir. Mar. 27, 2008) (*quoting Racine Charter One, Inc. v. Racine Unified Sch. Dist.,* 424 F.3d 677, 681 (7th Cir. 2005)).

Here, Defendants' allegedly wrongful treatment of LaBella was (1) allowing the landlord to repair the roof without obtaining a building permit (AC ¶¶ 16-19, 24); (2) not inspecting the repair work when LaBella complained (*id.* ¶¶ 17, 20, 24); (3) not issuing a stop-work order when LaBella complained (*id.* ¶¶ 20, 24); (4) refusing to allow LaBella to begin post-fire repairs or to reopen its bar area and kitchen to service its outdoor patio, despite knowing that LaBella's "landlord was responsible for restoring LaBella to its leased premises" (*id.* ¶¶ 22, 24); and (5) meeting with representatives of the landlord, other businesses, and insurance adjusters in

---

[1] *See Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (to be "similarly situated," a plaintiff must be "*prima facie* identical in all relevant respects").

order to keep LaBella closed (*id.* ¶¶ 23, 24). The AC does not allege that any others were "*prima facie* identical" in these respects, yet treated differently.[2] It identifies two comparators (Corner Cooks and O'Neil's) with whom Defendants allegedly had special relationships, but there are no allegations that Defendants required roofers to obtain permits at *their* request, inspected roof work for *them,* thereby averting a fire for *them,* issued stop-work orders when *they* complained, or allowed *them* to remain open, serving food and drink, after their premises were damaged by a "major fire" (*id.* ¶ 21).

Instead, regarding Corner Cooks, the AC alleges that it received favorable treatment regarding food and liquor licenses (issuance of licenses "after the fact" and a "special-use ordinance" allowing it to use a noncompliant exhaust system)[3]; was allowed to open Jerry's Restaurant using the same cooking and exhaust facilities; and was allowed to expand into what had been LaBella's undamaged bar area. AC ¶ 27B. As for O'Neil's, the AC alleges only that it was allowed to remain open while renovations occurred behind a partition, while LaBella was not allowed to partition off its fire-damaged dining area and reopen its kitchen. *Id.* ¶ 27C. There is no allegation that the O'Neil's renovations were anything like LaBella's fire scene. The Court already held that "being allowed to remain open" is an insufficient basis to consider a business such as O'Neil's to be comparable to LaBella. 2008 WL 696902 at *5 n.3.

---

[2] Indeed, despite referring to building codes and ordinances, the AC does not cite any code or ordinance under which Defendants *should* have required a building permit, conducted inspections, etc. As discussed in Defendants' motion to dismiss the original complaint, the Village ordinances (of which the Court may take judicial notice) do not call for these actions. *See* Dkt. 24 at 4-6; Dkt. 30 at 5-6.

[3] LaBella does not allege that it was similarly situated yet treated differently in these respects, or in any food and liquor license respects. LaBella claims in Count III that Defendants denied it due process by "revoking" its food and liquor licenses (by failing to send it applications for renewal), and also suggests that they did not revoke licenses of "FODs" (friends of Defendant Williams) for violations of food and liquor laws (AC ¶ 53). But Count III does not assert an equal protection claim, and in any event the FODs' alleged circumstances are not *prima facie* identical to LaBella's — LaBella asserts only that, at a level of great generality, FODs got breaks with regard to licenses.

2

The Court's opinion stated that LaBella could satisfy the "substantially similar" requirement if it alleged that it and Corner Cooks were equally affected by the fire, but only Corner Cooks was allowed to reopen. *Id.* at *5. The AC does not do so. It carefully alleges that the two businesses were on the same floor of the same building (AC ¶ 27B(iv)), but there is noticeably no allegation that Corner Cooks' premises were affected at all by the fire.[4]

Nor does the allegation that Corner Cooks was allowed to expand into LaBella's former bar area (AC ¶ 27B(iii)) indicate that they were substantially similar yet treated differently. According to the AC, the bar area was undamaged (*id.* ¶ 27B), and Corner Cooks annexed it to its undamaged premises after the solely-responsible landlord terminated LaBella's lease (*id.* ¶ 24E-F; *see* Lease (Exhibit 1) ¶ 11 ("Fire and Casualty," giving landlord the option to terminate or repair within 60 days after fire)).[5] LaBella may have a complaint about the landlord (and does, in state court), but in this complaint Corner Cooks and LaBella are not alleged to be identically situated.

At bottom, LaBella complains that it did *not* get certain kinds of favorable treatment from Defendants (their intervention into LaBella's roof and lease situation with its landlord), while Corner Cooks and O'Neil's allegedly *did* get certain *different* kinds of favorable treatment (an exhaust variance, permission to expand an undamaged restaurant, permission to renovate behind a partition). Since these treatments are not "*prima facie* identical," LaBella has not satisfied the

---

[4] The businesses' being adjacent on the same floor of the same building does not in itself mean that they were equally affected by the fire, or that both were closed by the fire but only one was allowed to reopen. The allegations are compatible with other scenarios: *e.g.*, that the building had a one-story section (where LaBella was, and where the directly-overhead roof fire occurred) and a multiple-story section (where Corner Cooks/Jerry's occupied the first floor, with no overhead fire — also explaining any variance from through-the-roof exhaust ventilation).

[5] The Court has held (2008 WL 696902 at *10 n.7) that the Lease is properly considered on a Rule 12(b)(6) motion. The Lease (attached hereto as Exhibit 1) was attached as Exhibit A to Plaintiff's state court complaint. That state court complaint (without exhibits) is attached hereto as Exhibit 2.

3

first step in the equal protection analysis.

### B. LaBella Does Not Sufficiently Allege Irrational /Illegitimate Conduct.

The lack of sufficient allegations of differential treatment of *prima facie* identical parties is enough by itself to require dismissal. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005). But even if LaBella met this threshold, it would further need to allege that the differential treatment was irrational or (or perhaps and) motivated solely by illegitimate animus. *Levenstein v. Salafsky,* 414 F.3d 767, 775 (7th Cir. 2005).[6] The AC does not do so.

#### 1. Irrationality.

Even if there were allegations of differential treatment of identically situated parties, the AC does not allege that "there is no rational basis for the difference in treatment." *Id.*

> Under the rational basis test, the court will uphold the . . . classification so long as it bears a rational relation to some legitimate end. . . . A court will not strike down a [classification] merely because it may be unwise, improvident, or out of harmony with a particular school of thought. . . . Rather, this inquiry requires the court to consider only whether any state of facts reasonably may be conceived to justify the classification . . . , and it is enough that a purpose may conceivably or

---

[6] The seminal class-of-one equal protection decision, *Olech v. Village of Willowbook*, 528 U.S. 562, 565 (2000), held that a plaintiff could state such a claim by alleging differential treatment of the similarly situated, without rational basis, and "d[id] not reach the alternative theory of 'subjective ill will.'" Justice Breyer's concurrence noted that Olech had alleged "'vindictive action,' 'illegitimate animus,' or 'ill will,'" and "the presence of that *added* factor . . . is sufficient to minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right." *Id.* at 566 (emphasis added).

Some subsequent Seventh Circuit cases have treated "ill will" as an additional element, necessary to show irrationality. *E.g., RJB Properties, Inc. v. Board of Educ.*, 468 F.3d 1005, 1009-10 & n.2 (7th Cir. 2006); *Purze*, 286 F.3d at 455; *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Others, such as *Levenstein,* recite "ill will" (or "illegitimate animus") as an *alternative* to the "irrationality" element. *See Racine Charter One,* 424 F.3d at 683-84 (discussing the two lines of cases). But Defendants are aware of no case in which a plaintiff has prevailed *solely* on the basis of ill will, *without* irrationality. Indeed, unless suspect classifications or fundamental rights are involved, basic equal protection law invalidates differences in treatment only if they are irrational. *See, e.g., Heller v. Doe,* 509 U.S. 312, 319-20 (1993) (Under "equal protection analysis . . . a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.").

4

may reasonably have been the purpose and policy of the relevant governmental decisionmaker, even if the decisionmaker never articulated that rationale.

*Racine Charter One*, 424 F.3d at 1009-10 (internal quotations and citations omitted).

Though LaBella faults Defendants for not intervening to require a building permit, inspect the roof repair work, or issue a stop-work order, it cites nothing requiring these actions, and rational reasons for such conduct toward LaBella are at least *conceivable*. For example, it is surely at least *conceivably* rational to allow roof repairs to proceed as they did (particularly when LaBella had been complaining "from at least 2006" about "water pouring into the restaurant through holes in the roof," AC ¶18) and when the Village ordinance specifies that such repairs require no building permit (s*ee infra*, n.7). Defendants' conduct toward Corner Cooks (granting a variance for its exhaust system; not forcing the landlord to complete repairs in 60 days or continue LaBella's lease; allowing the landlord to let Corner Cooks expand into undamaged space after it terminated LaBella's lease) and O'Neil's (allowing it to remodel behind a partition) was also conceivably rational. Any difference in treatment of LaBella and the others is also conceivably rational: LaBella does not allege that it requested an exhaust variance; there are conceivably rational distinctions between partially reopening a restaurant in a fire scene and operating with a variant exhaust system, or between fire repair and non-fire renovations behind a partition.

    2.    **<u>Illegitimate Animus.</u>**

The Court noted that LaBella's original complaint "appears to adopt the 'illegitimate animus' equal protection approach," but did not reach whether the pleading was sufficient in this regard. 2008 WL 696902 at *4. Even if "illegitimate animus" were a proper stand-alone alternative to "irrationality," *see supra* note 6, the AC does not sufficiently plead it. It alleges that Williams engaged in "spiteful actions" and "spite and animus." AC ¶ 27. But this naked assertion is not enough. *See Lerch*, 2008 WL 822254 at *3 (plaintiff's "own unexplained and

5

unsupported assertions that the city does not like him" does not "show that he was unfairly singled out for enforcement"). Indeed, if a defendant's conduct is otherwise proper, a "tincture of ill will" does not make it constitutionally improper. *Olech v. Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *aff'd,* 528 U.S. 562, 565 (2000).

II.     **The Amended Complaint Fails to State a Substantive Due Process Claim.**

    A.     **The Amended Complaint Fails Just as the Original Complaint Did.**

The Court dismissed LaBella's original substantive due process claim (which alleged that Defendants deprived it of its property interest in its lease and restaurant business), citing *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). As *Lee* states,

> Both the Supreme Court and this Court have emphasized how limited the scope of the substantive due process doctrine is. . . . Accordingly, substantive due process is not a blanket protection against unjustifiable interferences with property. . . . Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. . . . *And when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show [1] either the inadequacy of state law remedies or [2] an independent constitutional violation before the court will even engage in this deferential rational-basis review.*

*Id.* (internal quotations and citations omitted; emphasis added); *see also, e.g., Strasburger v. Board of Educ.*, 143 F.3d 351, 357 (7th Cir. 1998), *cert. denied,* 525 U.S. 1069 (1999). The AC does not substantively change the allegations regarding due process — LaBella still claims the same deprivation of its lease and restaurant business, and still alleges no fundamental right — so the same analysis applies. The Court concluded before that LaBella did not allege that its state law remedies are inadequate, and that its equal protection claim failed. Those defects remain. Plaintiffs' new conclusory allegation that it had "no adequate state law remedy" (AC ¶ 42) is simply that: wholly conclusory, and entirely at odds with Plaintiff's vigorous pursuit of the panoply of state law remedies afforded by the Illinois judicial system in its litigation with the

6

landlord, the roofing contractor, and its insurance carrier. *See also infra* Part III. The AC's due process claim therefore should be dismissed.

      **B.    Defendants Had No Constitutional Duty to Protect LaBella from Its Landlord or the Roofer.**

Defendants also moved to dismiss the original complaint's due process claim on the further ground that its premises — that Defendants had a duty to protect LaBella from the conduct of its landlord and the landlord's roofer — were unfounded in law. The Court dismissed the original complaint without reaching this issue, but this ground applies equally to the AC.

Like the original complaint, the AC alleges that Defendants deprived LaBella of its property right in its lease by failing to inspect, supervise, or halt the roofer's pre-fire work, failing to require the landlord to make quick post-fire repairs to allow LaBella to reopen, and failing to prevent another restaurant from taking over certain areas that had been leased to LaBella. AC ¶¶ 16, 17, 20, 21, 24, 25. The AC asserts that Defendants' failure to supervise and inspect the landlord's roofer's work (apparently as part of the permit process LaBella claims should have been used) constitutes a substantive due process claim. *Id.* ¶¶ 18, 20, 21, 24B, 24C. LaBella does not allege, however, that Defendants are responsible for igniting the fire on LaBella's roof, terminating its lease, or reletting the premises to Corner Cooks.[7]

---

[7] Far from being irrational, Defendants' conduct complies with Village ordinances (which are not themselves alleged to be irrational). LaBella continues to claim that the work performed on the roof required a permit and inspection by the Village. AC ¶ 41A. But the Winnetka Village Code ("WVC") requires no permit for ordinary repairs such as LaBella's roof work. WVC § 15.32.010 (p. 51 of Title 15). (Copies of relevant portions of the WVC are attached hereto as Exhibit 3.) LaBella again fails to cite or attach any ordinance that supports its contention that a building permit was required for roof repair. Similarly, LaBella makes no attempt to allege how requiring roof repairs after the fire, or issuing permits that allowed Corner Cooks to annex an undamaged part of LaBella's former space, after the landlord terminated LaBella's lease, is contrary to the Village Code. The AC's only allegation relating to how requiring a roof replacement and refusing partial reopening violated LaBella's rights is its claim that Defendants knew of LaBella's private contractual rights obliging the landlord to repair the premises. AC ¶¶ 24C-F. Nowhere, however, does the AC allege what authority would oblige, or even permit, the Village to adjudicate the lease-rights dispute between LaBella and its landlord or to

There is no constitutional right that obliges municipalities to supervise roof repairs, to intervene in landlord-tenant disputes, or to deter the landlord from reletting one tenant's former space to another. The Due Process Clause does not require the state to protect a citizen's property interests against invasion by private individuals. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. LaBella alleges that its "property rights" are its leasehold interest and ownership of its Italian restaurant business. AC ¶ 15. As in *DeShaney*, Defendants had no constitutional duty to intervene with respect to the repair of LaBella's roof prior to the fire, or to require the landlord to repair the roof within a certain time period subsequent to the fire. Neither did Defendants have any duty to prevent the landlord from terminating the lease pursuant to the terms of the lease or from leasing one of those areas to another restaurant.

*DeShaney* concluded that there was no substantive due process violation even though the defendant (the social service agency) committed numerous affirmative acts (including returning a child to his abusive father) that, if different, would have protected the child, since it was the father, not the defendant, who injured the child. *See, e.g., Witkowski v. Milwaukee County*, 480 F.3d 511, 512 (7th Cir. 2007) (courtroom sheriff, shot by criminal defendant who was supposed to be restrained, did not state a substantive due process claim against the would-be restrainers: "Neither Gunn nor Halstead shot Witkowski; Ball did. The most one can say is that Gunn and Halstead failed to protect Witkowski (and everyone else in the courtroom) from Ball."). The

---

require the landlord to abide by the term that required prompt repair (rather than the term that permitted lease termination if the space was rendered untenantable by fire). Even more unusual is the unexplained claim that the Village's issuance of permits to Corner Cooks was "unlawful" because of LaBella's claimed (though disputed) lease rights. AC ¶ 25. It cannot be a substantive due process violation not to have sided with LaBella in its various disputes with the landlord or Corner Cooks, particularly when LaBella points to no action by Defendants that is outside of its proper role of enforcing ordinances and codes.

Village and Williams are similarly alleged, by action and inaction, to have given the landlord and roofer an opportunity to harm LaBella, but it was they and not Defendants who injured LaBella.

### III. Count III Fails to State a Due Process Claim Regarding LaBella's Food and Liquor Licenses.

#### A. Plaintiff Has Failed to Allege Inadequate State Remedies.

Count III is unclear whether LaBella is attempting to state a claim for substantive or procedural due process for the nonrenewal of its food and liquor licenses. In either event, the Count fails because it does not allege that LaBella's state law remedies are inadequate.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that an alleged deprivation of a property interest by the government does not violate the Constitution if the state provides a meaningful post-deprivation remedy for the loss. *See, e.g., Strasburger*, 143 F.3d at 357. As noted above, LaBella has alleged no such lack of a meaningful state remedy. *See supra* Part II(A). Count III, therefore, fails regardless of the type of due process claim LaBella is attempting to assert. Indeed, as demonstrated below, Defendants could not possibly have caused a deprivation of LaBella's right to due process, because LaBella fails to allege (1) that it even applied to renew its licenses, and (2) that it qualified for the renewal of its licenses.

#### B. LaBella Did Not Even Apply to Renew Its Licenses.

Count III alleges that Defendants deprived LaBella of due process by failing to send it applications to renew its food and liquor licenses. But renewal applications are readily available, *see* http://www.villageofwinnetka.org/?x=formsdocs.htm&t=0&p=0 (online fill-in forms) (attached hereto as Exhibit 4), so failing to send applications could hardly have injured LaBella.

#### C. LaBella Does Not Allege that It Qualified for Renewal.

Moreover, LaBella does not allege that it meets the criteria for renewal that apply to all applicants.

1.      **Food Licenses.**

Under the Village Code, to be eligible for a food license, the applicant must have a "food service establishment" or a "retail food store," or premises on which food may be prepared and served or offered. Winnetka Village Code ("WVC") §§ 8.12.060, 8.12.050 C, 8.12.050 D (p.13 of Title 8) (Ex. 3). Further, the Illinois Food Service Sanitation Code provides numerous requirements with which LaBella could not comply. For example, it requires that walls and ceilings, including doors, windows, and similar enclosures be in good repair. Illinois Food Service Sanitation Code, Ill. Admin. Code tit. 77, § 750.1210(a); *see* WVC § 8.12.030. In its AC and its state court complaint, LaBella admits it has no premises in which to operate its restaurant or to serve food, a requirement to be eligible for a food dealer license. AC ¶¶ 22, 23, 24, 25 26; Ex. 2 ¶¶ 22, 24, 25. No amount of due process would change the fact that LaBella does not possess premises for food service as required for a food license.

2.      **Liquor Licenses.**

The Village Code provides that every Class A-1 license issued "shall terminate on the last day of March next following its issuance." WVC § 5.09.090 A (p. 11 of Title 5). LaBella alleges that it held a Class A-1 liquor license until March 31, 2008 (AC ¶ 51B) and that Defendants "canceled" the license (*id.* ¶¶ 49, 50, 54). It is clear from the face of the AC, however, that LaBella's liquor license was *not* cancelled before the end of its term, and that LaBella did not apply for renewal — so the license simply expired at the end of its term. Nor does LaBella allege that if it had applied it would have met the criteria for issuance of a license. Liquor license applicants must have a lease on premises for the full period for which the license is sought. WVC § 5.09.080 A.14 (p. 10 of Title 5). To be eligible for a Class A-1 liquor license a restaurant must have the ability to "actually and regularly serve complete meals." WVC §§ 5.09.010, 5.09.100 B (pp. 6, 11 of Title 5). LaBella does not allege that it has a lease for the

10

period March 2008 through March 2009, nor that it has the ability to serve complete meals. To the contrary, LaBella alleges throughout the AC that it is closed and out of business. AC ¶¶ 22, 23, 24, 25, 26.

IV.     **The Amended Complaint Fails to State a Section 1983 *Monell* Claim.**

The AC likewise does nothing to cure the deficiencies of the original complaint's failed *Monell* claim against the Village.

First, as this Court has recognized, even the act of a "final policymaker" does not bind the municipality if the act frustrated, rather than implemented, municipal policy. *Lyttle v. Killackey*, 528 F. Supp. 2d 818, 828 (N.D. Ill. 2007), *reconsideration granted in part on other grounds*, ___ F. Supp. 2d ___, 2008 WL 696900 (N.D. Ill. Mar. 13, 2008) (Kendall, J.); *see also Taylor v. Carmouche*, 214 F.3d 788, 791 (7th Cir. 2000) (same), *cert. denied*, 531 U.S. 1073 (2001); *Auriemma v. Rice*, 957 F.2d 397, 400 (7th Cir. 1992) (same). Here, the AC remains unchanged, and continues to allege that Williams's actions "failed to conform with Village Ordinances." AC ¶ 27B(i). Such alleged violations of Village policy cannot constitute Village policy.

Second, this Court held that Williams was not a "final policymaker" under Illinois statutes and Winnetka ordinances, but allowed Plaintiff leave to attempt to plead a "delegation" of final policymaking authority to Williams through a Council resolution. 2008 WL 696902 at *6 & n.5. Because the AC does not even attempt to do so, the Court should find as a matter of law that Williams is not a final policymaker.

Third, the AC does nothing to alter the Court's conclusion that the original complaint did not plead "ratification": that a final policymaker "approved the subordinate's decision and the basis for it." *Id.* at *7 (internal quotations omitted). Like the original complaint, the AC alleges only that the Village Council was aware of Williams's conduct and knowingly failed to correct it. The AC adds only a conclusory allegation that the Council entered into "closed sessions" to

11

approve Williams's "agenda" (AC ¶ 28), which is insufficient as a matter of law: a final policymaker's deferral to a subordinate's decision does not constitute ratification. *See, e.g., McDonald v. Village of Winnetka*, No. 00 C 3199, 2003 WL 168637, at *16 n.2 (N.D. Ill. Jan. 23, 2003), *aff'd on other grounds*, 371 F.3d 992 (7th Cir. 2004).

Finally, the AC does not and cannot allege municipal liability under a "widespread practice" theory. As this Court has recognized, allegations that a plaintiff constituted a "class of one" are inherently inconsistent with a *Monell* claim based on a "widespread" municipal practice. *See Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116, at *3 (N.D. Ill. June 25, 2007) (Kendall, J.) (Plaintiff "fails to plead the existence of a widespread practice, *nor can he in light of the fact that his Complaint appears to allege that the Village's alleged animosity was directed toward [him] alone*.") (emphasis added); *see also Manufactured Home Communities, Inc. v. County of San Diego*, No. 05-56401, 2008 WL 630075, at *1 (9th Cir. Mar. 6, 2008) (class-of-one claim is incompatible with *Monell* custom claim).

Moreover, a municipal custom must be so "widespread," "permanent," "well settled," and "persistent" as to have "the force of law." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978). As this Court has noted, "a plaintiff's own isolated experiences are insufficient to establish custom." *Zubek v. City of Chicago*, No. 04 C 5399, 2006 WL 1843396, at *5 (N.D. Ill. July 5, 2006) (Kendall, J.). Although, under certain circumstances (albeit not class-of-one cases), repeated actions directed at an individual could be evidence of a "widespread policy" directed at others as well, *Phelan v. Cook County*, 463 F.3d 773, 789-90 (7th Cir. 2006), "the word 'widespread' must be taken seriously," *id.* at 790. Here, Williams's supposed actions were alleged to be directed against LaBella alone, over the period of a few months. Williams's alleged actions, therefore, cannot have been so "widespread," "permanent," and "well-settled" as to have the force of Village law. *See, e.g., id.* (plaintiff's being subjected to harassment by

12

"multiple [municipal] employees" was insufficient to state *Monell* claim).

**V.     All Federal Claims Against Williams Must Be Dismissed as Redundant of Those Against the Village.**

The briefing regarding the original complaint flagged the absence of any allegation that Williams was named in his individual capacity. Indeed, LaBella's response to the motion to dismiss stated that Williams was sued "in his official capacity." *See* Dkt. 29 at 13. If LaBella meant to assert a claim against Williams in his individual capacity, the AC provided an opportunity to say so, but LaBella did not. It is therefore presumed that Williams is named in his official capacity. *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985).[8] "A suit against government officers in their official capacities is equivalent to a suit against the municipality itself." *Messner*, 2007 WL 1832116 at *5. Thus, the claims against Williams are redundant of the claims against the Village and must be dismissed.

**VI.    The State Law Claim Should Be Dismissed.**

Because LaBella's federal constitutional claims fail as a matter of law, its supplemental state law claim should be dismissed. 28 U.S.C. § 1367(c)(3). This claim also fails on the merits.

Count IV claims that Defendants interfered with LaBella's lease and its prospective business interests. Count IV first alleges that Defendants interfered by prohibiting LaBella's repairs to its restaurant's interior until the Landlord had first repaired the burned roof. AC ¶ 57A. The Village is alleged to have refused permits requested by LaBella for interior repairs (*id.* ¶ 24F) even though it knew that the Landlord would delay the roof repairs. The Illinois Local Governmental and Governmental Employees Tort Immunity Act, however, immunizes

---

[8] Indeed, if Williams had been sued in his individual capacity, he would be entitled to qualified immunity. LaBella cannot establish either a violation of a constitutional right, or that the constitutional standards LaBella espouses were "clearly established" and objectively clear based on the situation then confronting Williams. There are no "closely analogous" cases, *see Dunn v. Elgin*, 347 F.3d 641, 650 (7th Cir. 2003), holding a public official liable for either class-of-one equal protection or due process violations based on the facts here.

Defendants from failing or refusing to issue permits. 745 ILCS 10/2-104, 2-206. Even if such interference were proved, therefore, it would not justify recovery.

The second way Defendants allegedly interfered with LaBella's rights is by allowing other businesses "to occupy areas already leased to LaBella" (AC ¶ 57B) even though "they knew or should have known that LaBella had a right to continued operation of its restaurant under its Lease, and that LaBella's Lease included a term which called for prompt repair of the roof." *Id.* ¶ 24D. But Defendants could not have known what LaBella's lease rights were. Why? Because those rights — particularly whether the Rider (by which the landlord agreed to keep the roof in repair) voids the provision that permits the landlord to terminate the lease after a fire rendering the premises untenantable — are still being determined in a state court case.[9] Even this Court, as it considers whether Defendants must face a claim for tortious interference here, is unable to state whether the Landlord's or LaBella's interpretation of the competing lease provisions is correct. As the Court stated, "it is . . . unclear how this right to terminate is affected by other provisions in the Lease. For instance, Rider 2 of the Lease requires the Lessor to 'keep the . . . roof of the premises . . . in good order, repair and condition.' " 2008 WL 696902 at *10 n.8. Simply stated, Defendants cannot, by permitting other businesses to expand into LaBella's old space, be held to have interfered with provisions of a lease that were, and continue to this day to be, unclear and disputed. Such disputes are properly placed in the hands of state courts, and neither the Village nor Williams was obliged to render a legal opinion with the risk that the losing side would sue them for interference.[10] In the absence of any sustainable allegation that

---

[9] This Court may take judicial notice of the existence of the dispute in state court. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). It may, therefore, recognize simply that there was, at the time Defendants are alleged to have interfered with LaBella's rights by allowing other restaurants to expand, a dispute over whether LaBella had any valid lease rights, a dispute that requires a court's determination.

[10] Count IV does not specify how others were "encouraged" to expand and the count should

14

Defendants interfered with LaBella's rights, Count IV must be dismissed.

## VII. Punitive Damages Cannot Be Recovered Against Defendants.

The punitive damages claims under the federal counts (against the Village and Williams in his official capacity, *see supra* Part V) should be stricken because municipalities are immune from punitive damages under Section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Further, Williams is immune from punitive damages liability under the state law claim. "No public official is liable to pay punitive or exemplary damages in an action arising out of an act or omission made by the public official while serving in the official executive, legislative, quasi-legislative or quasi-judicial capacity." 745 ILCS 10/2-102.

## Conclusion

For these reasons, Defendants' Motion should be granted, and Plaintiff's Amended Complaint should be dismissed with prejudice.

Date:   May 12, 2008

Respectfully submitted,

/s/James A. Clark

One of the Attorneys for Defendants
The Village of Winnetka and Douglas Williams

| Kathleen A. Reid | Katherine S. Janega | James A. Clark |
|---|---|---|
| Mulherin, Rehfeldt & Varchetto, P.C. | Village Attorney | Schiff Hardin LLP |
| | Village of Winnetka | 6600 Sears Tower |
| 211 S. Wheaton Avenue, #200 | 510 Green Bay Road | Chicago, Illinois 60606 |
| Wheaton, Illinois 60187 | Winnetka, Illinois 60093 | Tel: (312) 258-5500 |
| Tel: (630) 653-9300 | Tel: (847) 716-3544 | Fax: (312) 258-5600 |
| Fax: (630) 653-9316 | Fax: (847) 501-3180 | jclark@schiffhardin.com |
| kreid@mrvlaw.com | kjanega@winnetka.org | |

---

be dismissed for that reason, particularly because without such clarity, the Court cannot determine whether the purported acts of encouragement are "unjustified" as required for a tortious interference claim, *HPI Health Care Serv. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 675 (Ill. 1989) (interference with contract); *Voyles v. Sandia Mortgage Co.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001) (interference with prospective business) or whether, as the AC suggests (¶ 24), the interference was related to permits for which Defendants are immune from liability. 745 ILCS 10/2-104, 2-206.

15

## CERTIFICATE OF SERVICE

      I, James A. Clark, an attorney, certify that on Monday, May 12, 2008, a copy of the foregoing Defendants' Reply Brief in Support of Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

Dean A. Dickie
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 627-2149
Fax: (866) 546-9546
Email: ddickie@dykema.com

Lee T. Hettinger
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 876-1700
Email: lhettinger@dykema.com

Sara C. Arroyo
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 627-5600
Email: sarroyo@dykema.com

                                        /s/ James A. Clark