IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABELLA WINNETKA, INC., | |
| Plaintiff, | |
| v. | Case No. 07 CV 6633 |
| THE VILLAGE OF WINNETKA and DOUGLAS WILLIAMS, | Judge Virginia Kendall |
| | Magistrate Judge Cole |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**INTRODUCTION**

This Court previously dismissed the plaintiff LaBella Winnetka, Inc.'s ("LaBella") Complaint, without prejudice, but with guidance regarding amendment of its Complaint to comply with pleading requirements. LaBella has done so and filed an Amended Complaint ("AC") which addresses the matters discussed by the Court in its prior order. Defendants Village of Winnetka (the "Village") and Douglas Williams ("Williams") again filed a motion to dismiss the AC. Their motion should be denied as the AC cures the defects in the original Complaint and complies with federal and Illinois pleadings requirements which is all that is required at this preliminary stage of this proceeding.

**Standard for Motion To Dismiss**

When considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Spearman Industries Inc. v. St. Paul Fire and Marine Ins. Co.,* 109 F.Supp. 2d 905 (N.D. Ill. 2000). The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004).

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that all the allegations in the complaint are true (even if doubtful in fact). 127 S. Ct. at 1965. However, a complaint should be concise and a plaintiff need not allege in the complaint all facts involved in the claim. *Sanjuan v. American Board of Psychiatry and Neurology, Inc*., 40 F.3d 247, 251 (7th Cir. 1994). In a civil rights case alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 165 (1993).

## I. THE AMENDED COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS TO SUPPORT AN EQUAL PROTECTION CLAIM WITH LABELLA AS A CLASS OF ONE

### A. The Amended Complaint Alleges That LaBella Is Similarly-Situated To Other Restaurants And That It Has Been Denied Equal Protection

An equal protection claim under the class of one theory must allege that the defendant intentionally treated the plaintiff differently from others who are similarly situated, and there is no rational basis for the different treatment or the cause of the different treatment is based on the defendant's "totally illegitimate animus" toward the plaintiff. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007). "Similarly situated" means prima facie identical in all relevant respects. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Count I of LaBella's AC alleges that the Village and Williams intentionally treated LaBella arbitrarily and capriciously in the enforcement of Village ordinances, codes, and health and safety requirements to LaBella's detriment while treating other similarly-situated restaurants favorably even though all were subject to the same ordinances, codes, health and safety

requirements, during the same period of time. These allegations in Count I clearly state a class of one equal protection claim on behalf of LaBella. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), *Ciechon v. City of Chicago*, 686 F.2d 511, 522 (7th Cir. 1982) (Unequal treatment of one paramedic involved with second paramedic in treating the same patient deprived the first paramedic of equal protection where there was no rational basis for disparate treatment); *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995), (class of one is likely to be the most vulnerable of all, and should not be denied the protection of the equal protection clause).

In ruling on the motion to dismiss LaBella's original Complaint, this Court noted that arguments set out in LaBella's brief in response to the Village's motion to dismiss the Complaint included sufficient facts to support its class of one claim against the defendants because it asserted that the defendant intentionally treated the plaintiff differently from others who were similarly situated in all relevant respects. The original Complaint, however, did not include these allegations, and this Court concluded that Count I did not state a claim for equal protection (Order at 7). LaBella's AC has cured this defect, and the AC includes allegations that the Village and Williams permitted similarly situated restaurants in Winnetka, including Corner Cooks, Jerry's and O'Neils, to remain open and operating in circumstances virtually identical to the circumstances facing LaBella which resulted in the wrongful closure of LaBella by the Village and Williams.

Count I of the AC includes the following allegations which are sufficient to state a class of one equal protection claim pursuant to the requirements of Rule 8(a)(2):

- The Village and Williams selectively and deliberately enforced building and safety requirements to the detriment of LaBella which resulted in a fire and other serious harm to LaBella. (¶'s 16-23);

- That following the fire at LaBella, the Village and Williams arbitrarily and intentionally refused to allow LaBella to reopen or even partially reopen its restaurant; that they

knowingly refused LaBella's request to partition off the main dining area from the kitchen so it could continue cooking operations for serving food in the bar area and in the outdoor tent; that Village officials met with representatives of the landlord and Corner Cooks and others for the express purpose of keeping LaBella closed; and that the Village and Williams instructed LaBella that it could not partially reopen and begin work on the interior of the restaurant. (¶24A-E);

- The Village and Williams had a widespread policy and practice of discriminating against LaBella while favoring other restaurants in Winnetka known as "Friends of Doug" ("FODs") which involved the selective, irrational and discriminatory enforcement of the same ordinances at the same time. (¶26-27A)[1];

- The AC also alleges that the Village and Williams permitted Corner Cooks to operate with an entirely defective exhaust system which did not comply with the Village code, and approved expansion of its restaurant while the Village and Williams selectively enforced building codes relating to the roof and thereby forced LaBella to close; (¶27 Bii);

- The AC also alleges that although the Village and Williams refused to allow LaBella to partition off its kitchen and use its bar area, the Village and Williams allowed Corner Cooks to continue to operate in space immediately adjacent to LaBella's bar area and then permitted Corner Cooks and Jerry's Restaurant to expand into and take over LaBella's bar area while LaBella was not allowed to use its own space. ¶'s 22, 24, 27);[2]

- The AC also alleges that O'Neils is another restaurant in Winnetka that is an "FOD;" that it is similarly situated to LaBella; that although LaBella asked to partition off its kitchen from the main dining area which was the only part of its restaurant affected by the fire, O'Neils received favorable treatment from the Village and Williams when they issued a permit to O'Neils to partition off a portion of its restaurant for a period of over a year for construction purposes while it continued to operate its kitchen and restaurant. (¶27 Cii).

The AC includes sufficient allegations regarding the Village's and Williams' disparate,

prejudicial treatment of LaBella compared to the favorable treatment given to other restaurants in

---

[1] The defendants contend that work on LaBella's roof before the fire did not require permits or inspection. That not correct. *See* LaBella's prior Memorandum, Dkt. No. 29, pp. 8-9. The defendants' position is wholly inconsistent with their requirement of a new roof after the fire because of multiple layers of roofing which pre-existed the fire. Obviously, that work required permits and inspections which should have been required for the roof work before the fire.

[2] Although a complaint is not required to include all the facts, the facts here will show that it was perfectly feasible for LaBella to partition off the undamaged dining room from its kitchen to remain open and serve food and alcohol in the bar area. In fact, the Village has allowed Corner Cooks to partition off its restaurant area from LaBella's kitchen and dining area. If the Village and Williams had not acted irrationally and out of animus, LaBella would have continued operating in its bar and its very successful tent dining area all of which had to be cancelled because the Village and Williams refused to allow LaBella to reopen, even on a partial basis by installing a partition.

Winnetka which were similarly situated to LaBella in all relevant respects. The allegations illustrate that there were no differences or legitimate reasons to support the disparate treatment between LaBella and the other referenced restaurants. All of these restaurants were subject to the same laws, ordinances, and codes, and yet restaurants favored by the Village and Williams because they were "FODs" were allowed to stay open in circumstances practically identical to LaBella's situation while LaBella – which was not a "FOD" - was forced to close. Clearly, LaBella has a "plausible entitlement" to relief under a "class of one" theory, and the facts alleged in the AC provide sufficient support for LaBella's equal protection claim.

## B. The Amended Complaint Alleges Arbitrary And Capricious Actions By The Village and Williams

The defendants also argue that even if LaBella has alleged facts in the AC which show that it was treated differently than other similarly situated restaurants – and LaBella has alleged those facts – there are no allegations that the disparate treatment was irrational or done with animus. This argument ignores the assertions in Count I of the AC that the actions by the Village and Williams favoring FODs including Corner Cooks, Jerry's and O'Neils while adversely impacting LaBella constituted selective enforcement of ordinances and codes, and these actions were capricious, arbitrary and malicious. (¶20-37).[3]

The AC clearly alleges that the defendants acted irrationally, maliciously, and intentionally toward LaBella. This is alleged by the selective enforcement of ordinances and laws including their refusal to allow LaBella to reopen by partitioning off its kitchen to serve its customers in the bar area and its outdoor tent while approving Corner Cooks and Jerry's Restaurant continuing operations and expansion into LaBella's bar area. The same is true

---

[3] The defendants' denial of these allegations is not appropriate in a Rule 12(b)(6) motion which requires admission of the allegations in the AC. The defendants' argument that the Village and Williams' conduct was somehow "conceivably rational" also disputes the allegations in the AC and has no merit.

regarding O'Neils where the defendants approved partitioning off a portion of its restaurant so it could remain open to serve its customers during construction while LaBella was forced to close.

The AC also alleges facts illustrating that the Village and Williams acted maliciously and with animus toward LaBella in the selective enforcement of ordinances and laws. These allegations are sufficient to allege a class of one claim against the Village and Williams.

The cases cited by the defendants are distinguishable because all of the cases they cite, except *Olech* and *Stachowski*, are based on summary judgment rulings. In *Olech*, the Supreme Court reversed the District Court's dismissal of the plaintiff's class of one equal protection claim, consistent with LaBella's position. In *Stachowski*, the 7th Circuit pointed out that the claim alleged in the complaint had already been adjudicated in an administrative hearing and affirmed the District Court for this reason. Here, LaBella has not obtained yet discovery. Rather, the issue is whether the AC is sufficient under Rule 8(a)(2), which it clearly is.

The defendants' also ignore that the AC must be read liberally when deciding a Rule 12(b)(6) motion relating a class of one equal protection claim. *Anderson v. Village of Oswego*, 2000 WL 1139921 (N.D.Ill.) (class of one complaint is to be read liberally at the allegation stage); *Leonard's Linen Service v. City of Bloomington*, 2007 WL 925546 (S.D.Ind.) (Complaint sufficient to support equal protection claim under *Olech* when examined in light of most favorable to plaintiff); *Meer v. Graham,* 524 F. Supp. 2d 1044 (N.D. Ill.) (motion to dismiss denied where complaint adequately stated equal protection claim based on illegitimate animus).

The AC demonstrates that the Village and Williams' intentionally discriminated against LaBella and denied it equal protection of the law. Count I is clearly adequate to meet the requirements of *Olech,* states a claim for denial of equal protection of a class of one, and gives

the defendants fair notice of what the claim is and the grounds upon which it rests which are the requirements under Rule 8(a)(2). *Bell v. Twombly*, 127 S.Ct. at 1964-65.

## II. THE AMENDED COMPLAINT CLEARLY ALLEGES A CLAIM FOR THE DENIAL OF SUBSTANTIVE DUE PROCESS

This Court dismissed Count II of the original Complaint because the Court dismissed Count I of the Complaint for failure to state a claim of denial of equal protection. The defendants now contend that Count II of the AC should be dismissed because there is no claim for equal protection. But, given the validity of the equal protection claim in Count I, Count II clearly states a claim for denial of substantive due process.

The defendants also contend that Count II should be dismissed because the Village and Williams had no duty to protect LaBella's "property interest in its Lease," and that Count II does not allege the defendants' responsibility for the fire or termination of the lease. The meritless arguments fail - the AC sufficiently alleges that LaBella suffered the loss of its restaurant based on the arbitrary and capricious conduct of the defendants which shocks the conscience.

Substantive due process inquires whether the government had sufficient justification for the deprivation of property or liberty, *Illinois Bell Telephone Company v. Village of Itasca, Ill.*, 503 F. Supp. 2d 928, 949 (N.D. Ill. 2007), and the touchstone of due process is protection of the individual against arbitrary action of government. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The substantive due process guarantee protects persons against government power arbitrarily and oppressively exercised. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). Conduct intended to injure in some way which is unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level, and historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.

*Sacramento,* 523 U.S. at 849.[4] Additionally, use and enjoyment of property are interests protected by substantive due process, and this interest applies to leaseholds. *Neiderhiser v. Barough of Berwick*, 840 F. 2d 213, 218 (3d Cir. 1988); *American Fabricare v. Township of Falls*, 101 F. Supp. 2d 301, 309 (E.D. Pa. 2000).

The AC states a cause of action for deprivation of substantive due process. It demonstrates that the defendants acted in an arbitrary and capricious manner to deprive LaBella of its restaurant, and their conduct truly shocks the conscience. For example, the AC alleges:

- numerous complaints to the Village of the roof's defective condition, the failure to require permits or inspections, the complaint to the Village on February 28, 2007, and the Village's refused to inspect the work and issue a stop work order to stop these dangerous activities taking place at that time and place. (¶¶16-23)

- after the fire, the Village and Williams obstructed LaBella's ability to reopen its profitable restaurant, and specifically worked with the landlord and others to terminate LaBella's lease so Corner Cooks could expand into areas leased to LaBella (¶¶ 25-28).

- LaBella had property rights consisting of its lease and restaurant business (¶¶ 8-15), and that the Village and Williams arbitrarily and capriciously abused their powers to vindictively deprive LaBella of its restaurant(¶¶ 38-43).

Count II is also sufficient to state a claim under the danger creation theory. A substantive due process claim can also be based upon the danger creation theory. In such a case, a Section 1983 plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put plaintiff at substantial risk of serious, immediate and proximate harm; (4) the risk was obvious and known; (5) the defendants acted recklessly in conscious disregard of the risk; and

---

[4] In addition, when a state actor has time to deliberate prior to committing the offending behavior, the standard for conscience-shocking behavior is lower than it would be in "hyperpressurized situations" that afford no time to consider the action. *Associates In Obstetrics & Gynecology v. Upper Merion Township*, 270 F. Supp. 2d 633, 654 (E.D. Penn. 2003).

(6) such conduct, when viewed in total, shocks the conscience. *Armijo v. Wagon Mount Public Schools, et al.,* 159 F. 3d 1253 (1998). The AC alleges that the Village was notified of a serious and potentially dangerous situation.[5] Yet, they refused to take the required action, thereby placing LaBella's property and individuals in the building in danger.

The defendants' motion relies on *DeShaney* and *Witkowski*. But, in *DeShaney,* the defendants were apparently aware of "suspicious circumstances" regarding abuse toward a child. In *Witkowski*, the plaintiff placed himself in danger. Here, the AC alleges that the Village was actually informed of a roofer with a torch occurring at that time right next door, that it was the appropriate authority to stop these activities and refused to address LaBella's warnings even though these activities involved danger to residents in the building and in LaBella's restaurant. This illustrates that it failed to protect LaBella and others in danger.

The allegations in Count II of the AC are sufficient to shock the conscious and are clearly sufficient to state a claim for denial of substantive due process.

### III.  COUNT III PROPERLY ALLEGES A DUE PROCESS VIOLATION FOR THE DEFENDANTS' WILLFUL AND UNLAWFUL CANCELLATION OF LABELLA'S FOOD AND LIQUOR LICENSES

Defendants' motion to dismiss Count III attempts to divert the Court's attention from defendants' unlawful cancellation of those licenses by arguing that LaBella would not have received new licenses if it applied now. This ignores the allegations that the defendants surreptitiously cancelled LaBella's licenses without a hearing, without notice, and without cause. In furtherance of this goal, the defendants also issued licenses to Corner Cooks and Jerry's in LaBella's leasehold premises and cancelled LaBella's licenses without any cause whatsoever[6].

---

[5] The Village was the entity which had the power and authority to stop the dangerous activities on the roof which placed individuals in the building in jeopardy.

[6] Beginning in 2007, the Village cancelled LaBella's licenses without cause, notice or hearing, as

Liquor licenses and food licenses are property for purposes of the due process clause. *Reed v. Village of Shorewood*, 704 F. 2d 943, 948 (7th Cir. 1983), *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Circuit 2000). Property is determined by inquiring "what is securely and durably yours under state law . . . as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Id.* It is clear that a liquor license is securely held during the year that it is issued, and State statutes and Village ordinances require notice and a hearing to determine whether there is cause for revocation. 235 ILCS 5/7-5 (2008).

Count III establishes that LaBella has applied for and received food dealer and liquor licenses from the Village without fail and without any violations.[7] It also alleges that LaBella's liquor license was valid through March 31, 2008 and its food license was valid through December 31, 2007 and that these licenses were and are valuable property rights which are a precondition to LaBella's ability to serve food and alcohol to its guests.

In *Reed*, the Village of Shorewood and village officials made it impossible for the plaintiffs' business to survive by attempting to take away its liquor license without cause, which the 7th Circuit held stated a claim under the due process clause. *Reed*, 704 F. 2d at 947, 954. There, the Village of Shorewood, led by the mayor who harbored animosity against the

---

part of the Village's and Williams' unlawful efforts to force LaBella out of business. *See AC*, (¶¶41-51).

[7] Defendants first deny that LaBella has any right to any licenses because it was no longer in business. This argument is simply a denial of the allegations in the AC which assert that LaBella is no longer operating its successful restaurant – which it has done for 14 years - because of the defendants' wrongful conduct before and after the fire which occurred on February 28, 2007. The defendants' motion does not deny that they refused to send renewal applications to LaBella as they have routinely done for the last 14 years, which is in effect a cancellation. Moreover, although they also deny that they cancelled LaBella's liquor license – which is not appropriate in a Rule 12(b)(6) motion because the allegation must be accepted as true – their denial is not true as they well know. LaBella's liquor license was cancelled after the defendants approved an ordinance for Jerry's liquor license and before the expiration date for LaBella.

plaintiffs, sought to revoke the liquor license and did so through harassment and several groundless proceedings which eventually led to the bar's closing. *Id.* at 947.[8]

The plaintiff's liquor licenses in *Club Misty* were also revoked without cause while similarly situated establishments received much more favorable treatment. *Club Misty*, 208 F. 3d at 617. *Club Misty* affirms the *Reed* holding that an Illinois liquor license is property for purposes of the due process clause. *Id.* at 618.

Here Count III alleges that LaBella's liquor license was revoked by the Village before the expiration date (after one year), without notice or a hearing, or cause,[9] and this was in furtherance of the defendants' actions to force LaBella out of business. Count III properly alleges a claim of denial of due process because LaBella's food and liquor licenses were and are its property, and the Village cancelled them without cause, notice or a hearing. Then, in further violation of LaBella's valid property rights in its licenses and the right to operate its restaurant business, the Village permitted Jerry's and Corner Cooks to begin operations out of LaBella's leasehold bar area and failed to issue a renewal application for LaBella's food license and it revoked LaBella's A-1 license[10]. This is just like the facts in *Reed* where the actions of village officials destroyed the plaintiff's business. That is what happened here. The defendants' arguments are nothing more than an attempt to divert the Court's attention from the proper allegations of the AC, which set out the defendants' wrongful actions in cancelling LaBella's license and taking its property without any cause, notice or hearing.

---

[8] The license was not in fact revoked, the Village officials only attempted to do so, but this was still found to be an infraction of property rights under § 1983. *Id.* at 949.

[9] In fact, LaBella's state liquor license was issued through August 2008, and is still valid.

[10] Defendants' continue to permit other business to operate out of LaBella's leasehold space, including as recent as April 14, 2008, where the Village Council addressed Spynergy utilizing LaBella's former leasehold space. *See* Minutes of April 14, 2008 Village Council meeting, available at www.villageofwinnetka.org/?x=council%2Fcurrentagenda.htm&t=Council.

## IV. THE AMENDED COMPLAINT PROPERLY ALLEGES
## THE VILLAGE'S LIABILITY UNDER *MONELL*

Local governing bodies and local officials acting in official capacity are liable under §

1983, for monetary, declaratory, and injunctive relief. *Monell v. Dept. of Soc. Services*, 436 U.S.

658, 690 (1978). *Monell* holds that "Congress did intend municipalities and other local

government units to be included among those persons to whom § 1983 applies." *Id.* For such

liability, the plaintiff must show that the actions causing harm to the plaintiff constitute official

policy or custom. *Id.* at 694. Policy or custom does not have to be expressly written to qualify; it

can be shown through acts of a final policymaker or by a widespread practice that is so

permanent and well settled as to constitute a 'custom or usage' with the force of the law.

*McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

The AC establishes that the Village Board, the final policy maker, approved and ratified

the arbitrary and capricious actions by Williams set out in the AC. The AC identifies the

members of the Village Board (¶3) and Williams as the Village manager who directed and

controlled the business affairs of the Village regarding the selective and arbitrary enforcement of

its law and ordinances. (¶4) The AC alleges further that the Village Board knew and approved of

Williams' widespread pattern and practice of favoring certain restaurants, and these arbitrary and

capricious actions were approved by the Village Board to deprive LaBella of the right to keep its

restaurant in Winnetka. (¶26). The AC also alleges that the Village Board knew or should have

known of the selective, arbitrary and capricious enforcement of the Villages ordinance and

building codes by Williams and the Village staff, and that the Village had a practice and policy

of going in to closed session to discuss Williams' issues and at that time it approved Williams'

agenda. (¶28) Also, the AC alleges that the Village Board knew and was fully aware of

Williams' spiteful and discriminating treatment toward LaBella and his favorable treatment of "FODs" including Corner Cooks and Jerry's at the expense of LaBella. (¶28)

Final policy making and authority may be ratified by an official having policy making authority. *Simmons v. Chicago Board of Education*, 2000 WL 1720958 *7 (N.D. Ill.). Ratification does not require formal approval for the purpose of establishing a violation of federal law under Section 1983. *Hyland v. Wonder*, 117 F.3d 405, 416 (9th Cir. 1997). The AC, ¶¶26-28, sufficiently allege the Village Board's ratification of the wrongful actions by Williams asserted throughout the AC.   LaBella's claim is well-founded and substantiated because the Village Board approved and thereby ratified the wrongful actions alleged in the AC.

In addition to ratification, a plaintiff bringing a Section 1983 claim is permitted to show that an official policy or custom not only caused the constitutional violation, but was the moving force behind it. *Monell v. Department of Social Servs.,* 436 U.S. 658, 690-95 (1978). The alleged custom does not have to be formally approved. *Monell* 436 U.S. at 691. One individual can prove a widespread practice, with respect to their treatment by the defendant, "[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work." *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir. 2005)). *Phelan* provides balance between alleging both "class of one" and "widespread practice" theories.

The AC alleges that the practice and policy of selective enforcement of ordinances in favor of certain Winnetka restaurants and businesses was so widespread that Village employees had a nickname for the favored establishments in Winnetka which were known as "Friends of Doug," or FODs, and that LaBella was not a "FOD." The AC alleges further that this practice against LaBella has been shown by the numerous instances of selective enforcement of

ordinances which resulted in disparate treatment of LaBella compared to other restaurants. This includes allegations that the defendants ignored LaBella's complaints about the initial work on the roof, about the dangerous work on the roof, they discriminated against LaBella and did not allow it to reopen after the fire even though FODs were permitted to do so, and they applied laws and ordinances capriciously to LaBella, while allowing FODs to continue their business as usual.

Clearly, the AC alleges facts establishing a widespread pattern and practice of selective enforcement of ordinances by the Village and Williams, which if proven, are sufficient to allege the Village's liability.[11] The allegations identify a pattern and practice of discriminatory conduct by the Village, Williams and other Village officials toward LaBella and in favor of other restaurants sufficient to meet the requirements for alleging liability on the part of the Village.

### V. THE VILLAGE MANAGER SHOULD NOT BE DISMISSED

The AC includes allegations that Williams acted in both an official capacity and individually. For example, it alleges that he gave favorable treatment to "Friends of Doug," that he had a special relationship with owner of Corner Cooks, Jerry's Restaurant, and O'Neils, and that he ordered enforcement of ordinances against LaBella in contrast to non-enforcement against other similarly situated restaurants in Winnetka. (¶¶ 25, 27A, 27B, 27C). These allegations are sufficient to assert claims against Williams both in his official capacity and his individual capacity because a suit may be brought against individual officers in both their official or individual capacities. *Higdon v. Wells County Sheriff's Office*, 426 F. Supp. 2d 854, 860 (N.D. Ind. 2006). *A fortiori*, he should not be dismissed.

---

[11] It should also be noted that in *Olech* (a one-time taking of an easement), *Ciechon* (a single disciplinary action), and *Esmail* (denial of a liquor license) the courts have found municipal liability based on specific acts of mistreatment where a single person or entity has been found to be the subject of irrational government conduct.

Likewise, the claim for punitive damages against Williams in his individual capacity should not be dismissed at the motion to dismiss stage because there is no showing at this point that he would not be liable for punitive damages. In the defendants' motion, they also have presented an argument based on immunity. This argument is premature; immunity is only an affirmative defense based on the factual record. Here the defendants have not yet filed an answer to the AC. As a result, any issue regarding immunity for Williams' allegedly wrongful conduct is not appropriate at this stage of the proceeding.

## VI. THE COMPLAINT PROPERLY ALLEGES STATE CLAIMS AGAINST THE DEFENDANTS

The defendants' motion to dismiss Count IV of the AC is, in essence, a motion to reconsider. The allegations relating to interference with contract and prospective economic advantage have not changed from the original Complaint, and this Court has already concluded that Count I states a claim under Illinois law against the defendants. The defendants' argument is based entirely on a denial of the allegations in the AC and an assumption that LaBella's lease was not enforceable. This is based on the misleading and inaccurate summary of the allegations in LaBella's State Court Complaint. Contrary to the defendants' arguments, the AC alleges that LaBella's lease remains in full force and effect until July 31, 2008, that the defendants knew that LaBella intended to reopen its restaurant, and that the Village and Williams met with representatives of the Landlord and others to work with them to force LaBella out of business. The Village and Williams also refused to take action to require the roof to be repaired and thereafter gave favorable treatment to the landlord and Corner Cooks to deprive LaBella of its leased space. (¶¶24-25) Count IV clearly states a cause of action for interference with LaBella's lease, and the defendants' Motion to Dismiss Count IV should be denied.

Dated: May 30, 2008

Respectfully submitted,

LABELLA WINNETKA, INC.

Dean A. Dickie, ARDC No. 0631744
Lee T. Hettinger, ARDC No. 1206397
Sara C. Arroyo, ARDC No. 6288962
DYKEMA GOSSETT PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
(312) 876-1700

By:   /s/ Lee T. Hettinger
      One of the Plaintiff's Attorneys

## Certificate of Service

I, Lee T. Hettinger, hereby certify that on May 30, 2008, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Kathleen Ann Reid, Esq.
> Matthew Richard Schreck, Esq.
> Ray Hunter Rittenhouse, Esq.
> Sara Kathryn Forsmark, Esq.
> MULHERIN, REHFELDT & VARCHETTO, P.C.
> 211 South Wheaton Avenue
> Suite 200
> Wheaton, IL 60187
> Tel: (630) 653-9300
> Fax: (630) 653-9316
>
> Katherine S. Janega, Esq.
> Village Attorney
> VILLAGE OF WINNETKA
> 510 Green Bay Road
> Winnetka, IL 60093
> Tel: (847) 501-3180
> Fax: (847) 507-3180
>
> James A. Clark, Esq.
> SCHIFF HARDIN LLP
> 6600 Sears Tower
> Chicago, IL 60606
> Tel: (312)258-5500
> Fax (312)258-5600

/s/ Lee T. Hettinger