IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABELLA WINNETKA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07 C 6633 |
| THE VILLAGE OF WINNETKA and | ) | |
| DOUGLAS WILLIAMS, | ) | Judge Kendall |
| | ) | Magistrate Judge Cole |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Kathleen A. Reid
Mulherin, Rehfeldt &
  Varchetto, P.C.
211 S. Wheaton Avenue
Suite 200
Wheaton, Illinois 60187
Tel: (630) 653-9300
Fax: (630) 653-9316
kreid@mrvlaw.com

Katherine S. Janega
Village Attorney
Village of Winnetka
510 Green Bay Road
Winnetka, Illinois 60093
Tel:  (847) 716-3544
Fax:  (847) 501-3180
kjanega@winnetka.org

James A. Clark
Schiff Hardin LLP
6600 Sears Tower
Chicago, Illinois 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
jclark@schiffhardin.com

Attorneys for Defendants
The Village of Winnetka and Douglas Williams

Date:   June 6, 2008

## TABLE OF CONTENTS

**Page**

I.    The Amended Complaint Fails to State an Equal Protection Claim................................. 1

    A.    LaBella's "Similarly Situated" Allegations Still Fail ........................................... 1

    B.    LaBella Does Not Sufficiently Allege Irrational/Illegitimate Conduct ................ 3

II.    The Amended Complaint Fails to State a Substantive Due Process Claim....................... 5

III.    Count III Fails to State a Due Process Claim ................................................................... 7

    A.    Plaintiff Has Failed to Allege Inadequate State Remedies ................................... 7

    B.    LaBella Did Not Even Apply to Renew Its Licenses ........................................... 8

    C.    LaBella Does Not Allege that It Could Qualify for Renewal............................... 9

IV.    The Amended Complaint Fails to State a Section 1983 *Monell* Claim ............................ 9

V.    The Federal Claims Against Williams Are Redundant.................................................... 12

VI.    The Tortious Interference Claim Should Be Dismissed .................................................. 13

VII.    Punitive Damages Cannot Be Recovered Against Defendants........................................ 13

Conclusion ................................................................................................................................ 14

Plaintiff LaBella Winnetka Inc. ("LaBella") argues, in its response to Defendants' motion to dismiss, that the Amended Complaint ("AC") "cures the defects in the original Complaint." Dkt. 62 at 1. For the reasons discussed below, it does not.

## I.    The Amended Complaint Fails to State an Equal Protection Claim.

### A.    LaBella's "Similarly Situated" Allegations Still Fail.

LaBella does not dispute that to state a class-of-one equal protection claim a plaintiff first must plead that it was treated differently from others who were "*prima facie* identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). Nor does LaBella dispute that "[i]t is difficult to proceed on a class-of-one equal protection theory," since "[t]he similarly situated test is a particularly high bar because '[v]arious factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment.' " *Lerch v. City of Green Bay*, 2008 WL 822254 at *2 (7th Cir. Mar. 27, 2008) (*quoting Racine Charter One, Inc. v. Racine Unified Sch. Dist.,* 424 F.3d 677, 681 (7th Cir. 2005)).

Without challenging these standards, LaBella argues that it did plead that other restaurants were "similarly situated." Dkt. 62 at 2-5. The AC does use the words "similarly situated" (Dkt. 52 ¶¶ 27, 34), but that is not enough. Under *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007), a complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

Despite the AC's general "similarly situated" assertion, its factual allegations negate rather than support a conclusion that Corner Cooks/Jerry's and O'Neil's were "*prima facie* identical [to LaBella] in all relevant respects." LaBella's complaint is about its treatment in

connection with a fire. Rather than alleging that Corner Cooks/Jerry's and O'Neil's were

identical to LaBella in these respects, the AC makes clear that neither Corner Cooks/Jerry's nor

O'Neil's experienced any fire. The AC is conspicuously careful in alleging that LaBella and

Corner Cooks were neighbors in the same building (Dkt. 52, ¶ 27.B.iv), without alleging that

they shared a roof (they didn't)[1] or that the roofs over both were affected by the fire (they

weren't). To the contrary, the AC affirmatively alleges that the only thing "affected" by the fire

was LaBella's "main dining room" — not Corner Cooks' space. *Id.* ¶¶ 24.C, 27.C.i. And

O'Neil's is alleged only to have partitioned an area for renovations, with no fire issues at all.

When a complaint's affirmative allegations show a lack of substantial similarity in the relevant

respects, it should be dismissed under Rule 12(b)(6). *See Griffin Indus., Inc. v. Irvin*, 496 F.3d

1189, 1205-06 (11th Cir. 2007) (dismissing class-of-one claim when detailed allegations were

not "too little, but . . . too much," and showed lack of substantial similarity).

LaBella claims similarity to others only at a high level of generality. *See, e.g.*, Dkt. 62 at

3-4 (different enforcement of unspecified "building and safety requirements," "building codes,"

and "ordinances"; comparing Corner Cooks' permission to use "defective exhaust system" with

LaBella's lack of permission to reopen without fire repairs, which are similar only at a distant

level of generality). *Griffin* explains why such generality is insufficient, and may be addressed

on a motion to dismiss: "when plaintiffs in 'class of one' cases challenge the outcome of

complex, multi-factored government decisionmaking processes, similarly situated entities must

be very similar indeed." 496 F.3d at 1205. Thus, when the challenged conduct "involv[ed]

---

[1] LaBella tiptoes around this issue because the roof fire was over a one-story part of the building, whereas Corner Cooks was in a multi-story part of the building, and did not share the burned roof. The only "common roof," the AC is scrupulously careful to allege, was over the undamaged "portion of the Premises" that was LaBella's former bar area — and this was "common" only in the sense that it had been a portion of LaBella's leased premises and was later leased to the adjacent Corner Cooks after the landlord cancelled LaBella's lease. Dkt. 52, ¶ 35.

2

varied decisionmaking criteria applied in a series of discretionary decisions made over an

extended period of time," courts

> cannot use a simplistic, post-hoc caricature of the decisionmaking process.
> Governmental decisionmaking challenged under a "class of one" equal protection
> theory must be evaluated in light of the full variety of factors that an objectively
> reasonable governmental decisionmaker would have found relevant in making the
> challenged decision. Accordingly, when dissimilar governmental treatment is not
> the product of a one-dimensional decision — such as a standard easement or a tax
> assessed at a pre-set percentage of market value — the "similarly situated"
> requirement will be more difficult to establish.

*Id.* at 1203-04.

If Corner Cooks/Jerry's or O'Neil's were actually similarly situated, LaBella would have

no trouble alleging that, for them, the Village required a building permit for repairs like those at

LaBella's premises, or that, for them, partitioning a burned section and reopening were allowed.

LaBella's tortured, confusing, and prolix allegations regarding its supposed comparators cannot

conceal that LaBella has actually pled itself out of court.

### B.    LaBella Does Not Sufficiently Allege Irrational/Illegitimate Conduct.

LaBella does not dispute that, beyond alleging that others were similarly situated yet

treated differently, to state a class-of-one claim it must also allege that the differential treatment

was irrational and/or motivated solely by illegitimate animus. On the "irrational" issue, LaBella

responds only that whether Defendants' actions were "conceivably rational" cannot be

considered on a Rule 12(b)(6) motion. Dkt. 62 at 5 n.3. This assertion is flatly incorrect.

A motion to dismiss is an appropriate time to consider whether a defendant's conduct was

"conceivably rational" for equal protection purposes:

> According to the Seventh Circuit, a "plaintiff who does not belong to any
> 'suspect' (that is, favored) class — by definition, the situation of a class-of-one
> plaintiff — must, to prevail, 'negative any reasonably conceivable state of facts
> that could provide a rational basis for the classification.' " *Lauth v. McCollum*,
> 424 F.3d 631, 634 (7th Cir. 2005) (citations omitted). " 'Governmental action
> only fails rational basis scrutiny if no sound reason for the action can be
> hypothesized.' " *Id.* (citations omitted). *See also Malec v. Village of Oak Brook*,

3

> 06 C 5167, 2007 WL 1468603, at *2 (N.D. Ill. May 18, 2007) ("*Lauth* requires
> the absence of any conceivable basis for the conduct of the government official in
> order to complain that the equal protection clause was violated"). Moreover, and
> most importantly here, any hypothesis as to the basis for the government's action
> can be made before proof is offered. *Id.* ("Since hypothesis is not proof, this test
> that we have articulated can often be applied in advance of discovery.").

*Mercatus Group LLC v. Lake Forest Hosp.*, 528 F. Supp. 2d 797, 816 (N.D. Ill. 2007); *see also*

Dkt. 57 at 4-5 (previous discussion of same issue).

In *Mercatus*, the Court dismissed the equal protection claim because a rational basis was

conceivable:

> Because this court can hypothesize a rational basis for the [challenged conduct],
> the Village Defendants' motion to dismiss Mercatus's equal protection claim is
> granted. *Malec*, 06 C 5167, 2007 WL 1468603, at *2 (dismissing equal
> protection claim because the court could conceive of a rational basis for the
> government's action).

528 F. Supp. 2d at 817.  Here, Defendants showed that their actions were conceivably rational

(Dkt. 57 at 5), and LaBella offers no substantive response.  *Cf. Laudadio v. Southeastern Pa.*

*Youth Lacrosse Ass'n,* 2008 WL 1820942 at *4 (E.D. Pa. April 23, 2008) (granting motion to

dismiss) ("Under rational-basis review, 'the challenged classification must be upheld if there is

any reasonably conceivable state of facts that could provide a rational basis for the

classification.' . . . As defendants have put forth a rational basis for the rule as well as its

application to [plaintiff], the complaint cannot defeat rational-basis review.") (*quoting Angstadt*

*v. Midd-West Sch. Dist.,* 377 F.3d 338, 345 (3d Cir. 2004)).

Instead, LaBella supports its class-of-one claim solely on the basis of "animus," stating

that it alleged "ill will."  Dkt. 62 at 5-7.  LaBella completely ignores the discussion in

Defendants' Opening Brief of the split of Seventh Circuit authority whether "animus" is a stand-

alone alternative to "irrationality" or a requirement in addition to irrationality to state a class-of-

one claim.  *See* Dkt. 57 at 4 n.6.  LaBella also ignores the Seventh Circuit's holding that if a

defendant's conduct is otherwise proper, a "tincture of ill will" does not make it constitutionally

improper. *Id*. at 6 (*quoting Olech v.Village of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998),

*aff'd,* 528 U.S. 562 (2000)).  In any event, as Defendants noted, they "are aware of no case in

which a plaintiff has prevailed *solely* on the basis of ill will, *without* irrationality" (Dkt. 57 at 4

n.6), and LaBella points to none.  Class-of-one claims are often dismissed on the ground that the

challenged conduct was conceivably rational, without any discussion of, or despite allegations

of, ill will.  *See, e.g., Mercatus,* 528 F. Supp. 2d at 817; *Malec,* 2007 WL 1468603 at *2;

*Laudadio,* 2008 WL 1820942 at *4.

## II.     The Amended Complaint Fails to State a Substantive Due Process Claim.

Because, as explained elsewhere in this Brief, LaBella fails to allege an independent

constitutional violation, its substantive due process claim must fail unless LaBella plausibly

pleads the inadequacy of its state remedies.  Dkt. 57 at 6-7, 9.  LaBella's brief does not even

mention this issue, and this failure alone calls for dismissal of its claim.  *See Quade v. Kaplan*,

2008 WL 905187 at *21 n.14 (N.D. Ill. Mar. 31, 2008) (Kendall, J.).  In any event, the AC states

only the conclusion that its state law remedies are inadequate, without explaining that

conclusion, and despite LaBella's having proved the *adequacy* of its state remedies by engaging

in extensive litigation in the Illinois courts in numerous claims.  Dkt. 57 at 6-7, 14 & n.9.  The

Court should reject LaBella's request that this federal court wade into constitutional litigation

when LaBella's Illinois remedies are constitutionally adequate.  Count II should therefore be

dismissed for this reason alone.  *See also infra* Part III(A).

LaBella's attempt to make out a constitutional duty to protect LaBella here also fails.

Seeking to distinguish *DeShaney* and *Witkowski,* LaBella insists that the Village's "failure to

protect LaBella" states a viable due process claim.  *See* Dkt. 62 at 9.

LaBella contends that *DeShaney* is distinguishable because the state entity there was

aware only of "suspicious circumstances" regarding the child's abuse.  *Id*.  But the *DeShaney*

5

opinion discloses deep involvement by Wisconsin in Joshua DeShaney's case — far more

involvement than LaBella claims here by Defendants.  According to *DeShaney*, over the course

of more than two years, the State was regularly informed by physicians and others of the abuse;

the State had even taken temporary custody of the child, provided a plan for his protection, and

observed and recorded the apparent abuse, yet time after time affirmatively returned Joshua to

his abuser.  489 U.S. at 192-93.  Despite that deep involvement, the Supreme Court held that "a

State's *failure to protect* an individual against private violence simply does not constitute a

violation of the Due Process Clause."  *Id*. at 197 (emphasis added).[2]  Thus, when LaBella argues

*against* dismissal of the due process claim on the revealing ground that the Village "*failed to*

*protect* LaBella and others in danger" (Dkt. 62 at 9 (emphasis added)), that very insistence

instead places it squarely within the *DeShaney* rule, *requiring* dismissal.[3]

---

[2] *Cf. also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 751, 768-69 (2005) (similarly rejecting substantive due process claim despite "horrible facts" that police brushed off mother's urgent pleas to enforce restraining order against estranged husband before he murdered children).

[3] As it did in the briefing on the initial complaint, LaBella tries, citing *Armijo*, to bring its claim within the narrow exception to the *DeShaney* rule that permits due process claims to proceed when the state itself, rather than some third party, first placed the individual in danger and then failed to rescue that imperiled person.  As Defendants previously explained, Dkt. 30 at 7, that rare exception is recognized only in "egregious" instances involving physical safety, not economic loss such as LaBella's.  *Id*.  Even the continued validity of *Armijo* is dubious.  *Id*. n.5. Worse, LaBella incorrectly states the test that it attempts to satisfy.  As *Armijo* itself states: "The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in *affirmatively* placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid."  159 F.3d at 1265 (emphasis added).  LaBella could succeed under that part of the test only if the Defendants (and not LaBella's roofer or landlord) *affirmatively* imperiled LaBella (by setting the fire and terminating the lease due to the fire) and then abandoned it.  LaBella's contention that the Village was notified of a dangerous situation, had the authority to stop it, and nonetheless *failed to protect* LaBella, Dkt. 62 at 9, places this claim squarely within *DeShaney* (thus requiring dismissal) rather than in any state-created-danger exception to *DeShaney*.  As *DeShaney* itself establishes, the State does not create actionable danger even by actively participating in steps that lead to the injury.

LaBella's attempt to distinguish *Witkowski* also misses the mark.[4]  Following *DeShaney*, the Seventh Circuit in *Witkowski* focused on who took the affirmative acts that injured the plaintiff.  Tracking the language of *Witkowski*, there is no due process claim here because neither Williams nor Winnetka burned LaBella's roof or thereafter evicted it; its roofer or landlord did. The most one can say is that Williams and Winnetka *failed to protect* LaBella from LaBella's roofer and landlord.  *See Witkowski*, 480 F.3d at 512.  Just as in *Witkowski*, no due process claim may be based on the Defendants' failure to protect LaBella.

**III.    Count III Fails to State a Due Process Claim.**

In their Opening Brief, Defendants set out three separate and independent reasons why LaBella's due process claim in Count III regarding its food and liquor licenses must be dismissed:  (1) LaBella did not allege that Illinois state law remedies were inadequate; (2) LaBella did not allege that it even attempted to apply for the licenses; and (3) LaBella did not allege that it qualified for renewal of the licenses.  Dkt. 57 at 9-11.[5]  LaBella does not even attempt to address the first two reasons, and its arguments on the third fail as a matter of law.

**A.    Plaintiff Has Failed to Allege Inadequate State Remedies.**

To state a valid due process claim LaBella must allege, at a minimum, that its state remedies are inadequate.  Dkt. 57 at 9.  At no point in its brief does LaBella attempt to make this argument, which alone is reason to reject it.  *See Quade*, 2008 WL 905187 at *21 n.14.  The

---

[4] LaBella explains that Witkowski, a deputy sheriff, had no Due Process claim because he "placed himself in danger" (Dkt. 62 at 9), apparently by doing his job of guarding the courtroom. *See Witkowski,* 480 F.3d at 512.  By that standard, LaBella also placed itself in danger by conducting its business (including by allowing the roofer on its roof and by signing the lease) and therefore cannot pursue its due process claim.

[5] The AC alleges that LaBella's licenses were not renewed when their term ended.  Dkt. 52 at 21.  In its Response, LaBella asserts that the licenses were cancelled before the end of their term. Dkt. 62 at 9 & n.6.  This claim, which is not pleaded in the AC, is not one the Court should credit on a motion to dismiss.  *Cf.* 2008 WL 696902 at *5 (prior decision in this case).

7

reason for LaBella's failure is obvious:  LaBella has at its disposal a wide array of perfectly

adequate state law remedies — and already has availed itself of many of them.

As an initial matter, LaBella has taken advantage of Illinois remedies *in this very*

*litigation* by bringing supplemental state law tort claims.  As the Seventh Circuit has held, the

fact that a plaintiff has asserted state law claims in federal court negates any contention that state

law remedies are inadequate.  *See Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003)

(dismissing due process claim because "far from alleging the inadequacy of state-law remedies,

[plaintiff] has asserted pendant state-law claims for bailment, trespass, and wrongful

conversion").

LaBella also has taken full advantage of the remedies afforded by Illinois by engaging in

intensive litigation in state court with its landlord, the roofing contractor, and its insurance carrier

over this very same ongoing dispute.  *See* Dkt. 57 at 14.  Yet LaBella never explains why it felt

required to resort to a federal constitutional challenge in federal court when it came to

Defendants.  LaBella's real problem is not the supposed inadequacy of its state remedies, but its

wholesale failure to invoke any remedy in a timely manner when it might have obtained

meaningful equitable relief and been protected against the monetary loss it now seeks to recover

from the Village.  LaBella cannot use its aversion for established state remedies to excuse its

inexplicable delay in protecting its own rights and thereby bootstrap its way into federal court.

LaBella's failure to show how its state law remedies are constitutionally inadequate requires

dismissal of its claims.

### B.      LaBella Did Not Even Apply to Renew Its Licenses.

LaBella also fails to address the second reason why Count III fails:  LaBella does not

allege that it even *applied* to renew its licenses.  *See* Dkt. 57 at 9.  Although LaBella complains

about Defendants' (perfectly reasonable) failure to send renewal applications to an entity with no

8

ongoing business (*see* Dkt. 52 ¶ 37), such applications are readily available online (Dkt. 57 at 9)

or at the Village offices, and LaBella does not deny that it never even placed a simple phone call

to request that they be sent.  In any event, the failure to mail renewal notices "shall not waive the

requirement that a license be procured."  WVC § 5.04.070 (attached hereto as Exhibit 1).

LaBella cannot demand that the Court grapple with the constitutionality of nonrenewal of

licenses, while never taking the modest step of filing, or even requesting, a renewal application.

     **C.**     **LaBella Does Not Allege that It Could Qualify for Renewal.**

LaBella argues at length that its property interest in its licenses is established by State

statutes and Village ordinances, but makes no attempt to allege that it complied with (or even

could have complied with) those laws.  To the contrary, because it repeatedly alleges that

LaBella was "closed" in early 2007, Dkt. 52 ¶¶ 22-27, LaBella could not have qualified.

Defendants explained in their Opening Brief that the laws premise license renewals on an

ongoing business serving food and liquor, but LaBella never addressed those issues other than to

call them diversions (Dkt. 62 at 9).  LaBella's Count III apparently asks this Court to participate

in a fantasy:  *if* LaBella were still a restaurant, and *if* it had applied for licenses then the licenses

should have been renewed (because it had previously qualified) even though, because it was

closed, LaBella could not then have demonstrated its eligibility.  Constitutional claims require

much more.

**IV.**     **The Amended Complaint Fails to State a Section 1983 *Monell* Claim.**

LaBella appears finally to have abandoned its attempt to state a *Monell* claim based on

Williams's supposed status as a "final policymaker," and on an alleged "delegation" of final

policymaking authority to Williams.  *See* Dkt. 57 at 11-12; 2008 WL 696902 at *6.  But

LaBella's attempt to salvage a *Monell* claim based on other theories fails to address the

deficiencies this Court found in the original Complaint, as well as the arguments and authorities

9

cited in Defendants' Opening Brief.

First, LaBella nowhere addresses the principle that the actions of a municipal employee — even a "final policymaker" — cannot be attributed to the municipality if they frustrate, rather than implement, municipal policy. *E.g.*, *Lyttle v. Killackey*, 528 F. Supp. 2d 818, 828 (N.D. Ill. 2007), *reconsideration granted in part on other grounds*, ___ F. Supp. 2d ___, 2008 WL 696900 (N.D. Ill. Mar. 13, 2008) (Kendall, J.); *see* Dkt. 57 at 11-12. LaBella does not deny that the AC alleges that Williams's actions "failed to conform with Village Ordinances," *see* Dkt. 52 ¶ 27B(i), and such alleged violations of Village policy cannot constitute Village policy.

Second, LaBella's attempt to make out a *Monell* claim based on "ratification" rehashes the same arguments that this Court rejected in ruling on the original Complaint. Despite two Complaints, and three briefs opposing Defendants' motions to dismiss, LaBella has still failed adequately to allege that the Village Council "approved the subordinate's decision and the basis for it." 2008 WL 696902 at *7 (internal quotations omitted). Like the original Complaint, the AC alleges only that the Village Council was aware of Williams's conduct, failed to correct it, and, at worst, deferred to Williams's judgment. But a final policymaker's deferral to a subordinate's decision does not constitute ratification, and conclusory allegations of "approval" are insufficient to state a claim. *See, e.g.*, *McDonald v. Village of Winnetka*, 2003 WL 168637, at *16 n.2 (N.D. Ill. Jan. 23, 2003), *aff'd on other grounds*, 371 F.3d 992 (7th Cir. 2004). The Court's dismissal of LaBella's original Complaint applies equally to the AC:

> In the present case, LaBella alleges that the Village Council knew or should have known of the selective enforcement of ordinances. (Compl. ¶ 28.) In addition, the Village Council was aware of the "discriminatory, unconstitutional conduct," but "knowingly and intentionally" failed to act to correct or prohibit the conduct. (Compl. ¶ 28.) These bare allegations — peppered with legal conclusions — do not state a plausible entitlement to relief under the ratification theory.

2008 WL 696902 at *7; *see also* Dkt. 57 at 11-12.

Finally, in attempting to state a *Monell* claim based on a "widespread practice" theory,

LaBella nowhere addresses the fact that, as this Court has recognized, allegations that a plaintiff

constituted a "class of one" are inherently inconsistent with a *Monell* claim based on a

"widespread" municipal practice.  *See Messner v. Calderone*, 2007 WL 1832116, at *3 (N.D. Ill.

June 25, 2007) (Kendall, J.) (Plaintiff "fails to plead the existence of a widespread practice, *nor*

*can he in light of the fact that his Complaint appears to allege that the Village's alleged*

*animosity was directed toward [him] alone*.") (emphasis added); *see also Manufactured Home*

*Communities, Inc. v. County of San Diego*, 2008 WL 630075, at *1 (9th Cir. Mar. 6, 2008)

(class-of-one claim is incompatible with *Monell* custom claim).  LaBella's entire case depends

upon its being unique among businesses in Winnetka, and such allegations cannot support a

claim that the supposed actions taken by the Village against LaBella were "widespread."

LaBella's apparent contention that *Phelan v. Cook County*, 463 F.3d 773 (7th Cir. 2006),

involved a class-of-one claim (Dkt. 62 at 13) is simply wrong.  *Phelan* involved no such claim,

but merely held that, under certain circumstances, actions repeatedly directed against an

individual can be evidence of a widespread policy *directed at others as well* — in that case, an

alleged policy of widespread sexual harassment directed against women generally.  463 F.3d at

789-90.  LaBella, by contrast, does not contend that its alleged experiences are indicative of a

general policy by the Village of Winnetka directed against other businesses; indeed, to do so

would be directly contrary to the very core of LaBella's class-of-one claim.

Moreover, *Phelan* emphasized that "the word 'widespread' must be taken seriously," *id.*

at 790, and held that the fact that the plaintiff there allegedly was subjected to harassment by

"multiple [municipal] employees" was *insufficient* to state a *Monell* claim, *id.*  Indeed, the very

essence of such a claim requires that the municipal custom be so "widespread," "permanent,"

"well settled," and "persistent" as to have "the force of law."  *Monell v. Department of Social*

11

*Servs.*, 436 U.S. 658, 690-91 (1978).  And, as this Court has held, "a plaintiff's own isolated

experiences are insufficient to establish custom."  *Zubek v. City of Chicago*, 2006 WL 1843396

at *5 (N.D. Ill. July 5, 2006) (Kendall, J.); *see id.* (city's denial of plaintiff's 20 job applications

was insufficient to establish city policy:  "Absent allegations of discrimination in addition to

Plaintiff's own experiences, the court cannot infer the existence of a widespread practice or

custom.").  Here, Williams's supposed actions, directed against LaBella alone, over the period of

a few months, cannot have been so "widespread," "permanent," and "well-settled" as to have the

force of Village law.[6]

## V.   The Federal Claims Against Williams Are Redundant.

LaBella's only response to the argument that it has not sued Williams in his individual

capacity is to state that suits "may" be brought against officials in both their individual and

official capacities, and to argue that Williams engaged in unconstitutional actions.  Dkt. 62 at 14.

Once again, LaBella misses the point.  The original Complaint did not sue Williams in his

individual capacity; to the contrary, LaBella's response to Defendants' first motion to dismiss

conceded that Williams "in his *official* capacity."  *See* Dkt. 29 at 13.  And despite fair warning

that the capacity in which Williams was sued was an issue in the case, LaBella did not amend the

Complaint to state that Williams was sued in his individual capacity.  Williams, therefore, is

presumed to have been named in his official capacity, which is equivalent to a suit against the

Village.  Dkt. 57 at 13 & n.8.  As a result, the claims against Williams are redundant of the

claims against the Village and must be dismissed.

---

[6] LaBella's citation to *Olech*, *Ciechon*, and *Esmail* (Dkt. 62 at 14 n.11) is just as much of a *non sequitur* as it was the first time around, in LaBella's Surreply in opposition to Defendants' original motion to dismiss.  Dkt. 35 at 5.  Defendants do not contend that a municipality can never be liable for a class-of-one equal protection violation simply because the alleged conduct was directed against "a single person."  Rather, it is that LaBella's "widespread practice" *Monell* claim is inherently inconsistent with a class-of-one equal protection claim.

**VI.    The Tortious Interference Claim Should Be Dismissed.**

Contrary to LaBella's contention, Defendants do not simply repeat the arguments that were directed to LaBella's first Complaint.  As explained in Defendants' Opening Brief, Count IV of the AC specifies two ways that Defendants purportedly interfered with LaBella's lease: (1) by withholding permits for LaBella to repair the interior until the landlord repaired the roof, and (2) by permitting other restaurants to expand into space that had been leased to LaBella.

The Defendants are immune from liability for the first claimed interference — the refusal to issue permits.  745 ILCS 10/2-104, 2-206, 2-110.  As for the second, LaBella argues that Defendants have inaccurately summarized its state court complaint.  But Defendants have not summarized the complaint at all.  Rather, they have simply used that complaint to demonstrate that the lease was (and still is) disputed.  The state court may someday agree with LaBella that the lease remains in effect until July 31, 2008, and that may lead to a problem for the landlord. At the time they allegedly permitted other restaurants to expand into what had been LaBella's space, however, Defendants could not reasonably have prohibited the landlord from leasing parts of LaBella's space to others.  It is these arguments that LaBella failed even to address.

If the Court does not dismiss this last remaining state law claim pursuant to 28 U.S.C. § 1367, it should do so for the reasons stated above and in Defendants' Opening Brief.

**VII.    Punitive Damages Cannot Be Recovered Against Defendants.**

LaBella's attempt to salvage its punitive damages claim is likewise without merit.  While LaBella implicitly concedes that it cannot seek punitive damages against the Village, it contends that its punitive damages claim against Williams "in his individual capacity" should not be dismissed.  Without any citation to authority, LaBella characterizes Defendants' arguments against punitive damages liability as based only upon tort immunity, and contends that "immunity is only an affirmative defense based on the factual record" that must be decided after

13

Defendants have filed an Answer.  Dkt. 62 at 15.  LaBella's argument is wrong on several levels.

As demonstrated above, LaBella has *not* brought a claim against Williams in his individual capacity.  *See supra* Part V.  Moreover, LaBella ignores that officials like Williams are immune from state law punitive damages liability *regardless* of the "capacity" in which they are sued.  *See* 745 ILCS 10/2-102; Dkt. 57 at 15.  Finally, issues of tort immunity *can* be decided on a Rule 12(b)(6) motion, as this Court correctly has concluded, *see Kincaid v. Brown*, 2007 WL 4247183, at *4-5 (N.D. Ill. Nov. 30, 2007) (Kendall, J.) — particularly where, as here, the Illinois Tort Immunity Act precludes LaBella's punitive damages claim as a matter of law.

## Conclusion

For these reasons, as well as those stated in Defendants' Opening Brief, Defendants' Motion should be granted, and Plaintiff's Amended Complaint should be dismissed with prejudice.

Date:   June 6, 2008

Respectfully submitted,

/s/James A. Clark

One of the Attorneys for Defendants
The Village of Winnetka and Douglas Williams

| | | |
|---|---|---|
| Kathleen A. Reid | Katherine S. Janega | James A. Clark |
| Mulherin, Rehfeldt & | Village Attorney | Schiff Hardin LLP |
| Varchetto, P.C. | Village of Winnetka | 6600 Sears Tower |
| 211 S. Wheaton Avenue, #200 | 510 Green Bay Road | Chicago, Illinois 60606 |
| Wheaton, Illinois 60187 | Winnetka, Illinois 60093 | Tel: (312) 258-5500 |
| Tel: (630) 653-9300 | Tel:  (847) 716-3544 | Fax: (312) 258-5600 |
| Fax: (630) 653-9316 | Fax:  (847) 501-3180 | jclark@schiffhardin.com |
| kreid@mrvlaw.com | kjanega@winnetka.org | |

14

## CERTIFICATE OF SERVICE

       I, James A. Clark, an attorney, certify that on Friday, June 6, 2008, a copy of the foregoing Defendants' Reply Brief in Support of Motion to Dismiss Amended Complaint was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

Dean A. Dickie
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 627-2149
Fax: (866) 546-9546
Email: ddickie@dykema.com

Lee T. Hettinger
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 876-1700
Email: lhettinger@dykema.com

Sara C. Arroyo
**Dykema Gossett, PLLC**
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 627-5600
Email: sarroyo@dykema.com

                                                /s/ James A. Clark