IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABELLA WINNETKA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 6633 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| THE VILLAGE OF WINNETKA and | ) | |
| DOUGLAS WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff LaBella Winnetka, Inc. ("LaBella" or "Plaintiff") filed suit against Defendants

Village of Winnetka (the "Village") and Douglas Williams ("Williams") (collectively "Defendants")

alleging various claims related to the enforcement of Village ordinances and codes in Winnetka.

The Court previously dismissed LaBella's claims without prejudice, allowing LaBella to replead its

claims. In its Amended Complaint, LaBella asserts three federal claims (Counts I-III) and one state

law claim (CountIV): 1) violation of its equal protection rights under 42 U.S.C. § 1983 and the

Fourteenth Amendment; 2) violation of its substantive due process rights under 42 U.S.C. § 1983

and the Fourteenth Amendment for deprivation of its property interest in its lease and restaurant

business; 3) violation of its due process rights under 42 U.S.C. § 1983 and the Fourteenth

Amendment for deprivation of its food and liquor licenses; and 4) intentional interference with its

lease and its prospective business expectancy. Defendants move to dismiss the Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated, Defendants' Motion to Dismiss is

granted.

**PLAINTIFF'S ALLEGATIONS**

The following allegations are taken as true, as the Court is required to do at the motion to dismiss stage. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). LaBella operates an Italian restaurant in Winnetka, Illinois. (Compl. ¶ 2.)[1] The Village Council of Winnetka governs the Village, a municipal corporation located in Cook County, Illinois. (Compl. ¶ 3.) Williams, the Village Manager of Winnetka, directs and controls the business affairs of the Village, including the enforcement of Village ordinances and building codes, under the authority of the Village Council, Illinois statutes and Village ordinances. (Compl. ¶ 4.)

Since 1993, LaBella has leased property in Winnetka from a private party ("the Landlord") pursuant to an agreement that remained in effect until July 31, 2008 ("the Lease). (Compl. ¶ 8.) LaBella has fostered a broad customer base, earned a reputation for excellent Italian dining and expended large sums of money for its kitchen and dining areas as well as its operating equipment. (Compl. ¶¶ 10-11.) Additionally, LaBella obtained a restaurant license, a liquor license and other licenses and permits for its restaurant. (Compl. ¶ 13.)

On numerous occasions beginning in 2006, LaBella informed the Defendants that the Landlord failed to maintain the restaurant's roof, resulting in a defective roof that allowed water to pour into the restaurant through holes. (Compl. ¶ 18.) Although LaBella provided the Village with specific information regarding the roof's defective condition, Defendants did not require the Landlord to bring the roof into compliance with Village ordinances. (Compl. ¶¶ 18-19.) Ultimately, the Landlord retained roofers who attempted to repair the roof using hot tar, torches and other flammable materials. (Compl. ¶¶ 16-17.) The Village did not require the roofers to obtain work or

---

[1] Citations to LaBella's Amended Complaint have been abbreviated to "Compl. ¶ __."

building permits. (Compl. ¶ 16.) In spite of LaBella's complaints to the Village, Defendants did not enforce compliance with the Village's building code and safety requirements and they did not stop the Landlord from performing roof work that created the potential for fire hazards. (Compl. ¶¶ 16-17.) Nor did they inspect the roofers' work. (Compl. ¶ 17.)

On February 28, 2007, LaBella again informed Defendants of the unsupervised roof work, the roofers' use of flammable materials and the Landlord's failure to obtain a building permit. (Compl. ¶ 20.) Neither the Village nor Wiliams responded to LaBella's complaint. (Compl. ¶ 21.) That same day, the roof work caused a major fire that resulted in major damage to LaBella's roof. (*Id.*) The damage from the fire forced LaBella to close its restaurant. (Compl. ¶ 22.)

When LaBella applied for permits to repair the fire damage to its restaurant's interior, Defendants refused to issue the permits until the Landlord replaced the roof. (Compl. ¶¶ 22, 24(f).) In addition, Defendants refused to allow Labella to partially reopen the restaurant until and unless the Landlord replaced the restaurant's roof in compliance with the Village's codes, even after LaBella proposed partitioning off the portion of the restaurant that would be under repair. (Compl. ¶¶ 22, 27(c)(I).) Defendants knew or should have known that the Landlord did not attempt to replace the roof and that their refusal to allow LaBella to partially reopen its restaurant before completion of the roof repairs would force LaBella to remain closed without income or any projected date of reopening. (Compl. ¶ 24.) While LaBella was closed, Defendants met with representatives from competing restaurants housed within the same building as LaBella, such as Corner Cooks and Jerry's Restaurant. (Compl. ¶ 25.) At these meetings, Defendants approved permits and designs for those competing restaurants to occupy portions of the building that LaBella

leased from the Landlord, including the bar area that LaBella had asked to reopen before the Landlord completed replacing the roof. (*Id.*)

Defendants engaged in selective enforcement of the Village's ordinances and codes to deprive LaBella of its "right" to keep its restaurant business and to force it out of business while simultaneously favoring other restaurants and businesses. (Compl. ¶¶ 26-27.) Defendants enforced Village ordinances, building codes, health and sanitation standards, liquor license requirements and safety requirements to the benefit of certain favored restaurants, including Corner Cooks, Jerry's Restaurant and O'Neil's Restaurant. (Compl. ¶ 27). Village employees referred to these favored restaurants as "Friends of Doug [Williams]." (*Id.*) LaBella was not a favored restaurant. (*Id.*)

With respect to the "selective enforcement" of village ordinances and building codes, Defendants: 1) intentionally ignored Corner Cooks' non-compliance with exhaust system requirements (Compl. ¶ 28(b)(ii)); 2) permitted Corner Cooks to open Jerry's Restaurant and approved permits and designs that would allow Corner Cooks and Jerry's restaurant to occupy a portion of LaBella's leased premises (Compl. ¶ 27(b)(iii)); and 3) permitted O'Neil's Restaurant to continue its cooking operations even though a portion of its restaurant is partitioned off for building renovations (Compl. ¶ 27(c)(ii)). In addition, LaBella claims that Defendants issued liquor licenses and special use ordinances to Corner Cooks to accommodate its non-complaint activities and failed to require that Corner Cooks comply with the standard evaluation procedure that LaBella underwent. (Compl. ¶ 27(b)(I).)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See*

4

*Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

*I. Equal Protection Claim (Count I)*

In Count I, LaBella alleges that Defendants violated its equal protection rights under the Fourteenth Amendment. "The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution through duly constituted agents." *Smith v. City of Chicago*, 457 F.3d 643, 650 (7th Cir. 2006). LaBella contends that the Defendants treated it differently than other similarly situated restaurants in Winnetka.

Typically, equal protection challenges arise when a government makes classifications that affect groups of some citizens differently than other groups. *See United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (citing *Engquist v. Or. Dep't of Agric.*, — U.S. —, 128 S.Ct. 2146, 2152 (2008)). However, an individual can maintain an equal protection challenge based upon a class of one theory by asserting that the "individual has been irrationally singled out without regard for any

group affiliation, for discriminatory treatment." *Moore*, 543 F.3d at 896. To state a claim under a class of one equal protection theory, the plaintiff must allege that: 1) the defendant intentionally treated the plaintiff differently than others who are similarly situated; and 2) there is no rational basis for the different treatment or the cause of the different treatment is based on the defendant's totally illegitimate animus towards the plaintiff. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007).

"To be considered similarly situated, the class of one challenger and his comparators must be *prima facie* identical in all relevant respects or directly comparable in all material respects." *Moore*, 543 F.3d at 896; *see also Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) ("Various factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment."); *Indiana Teachers Ass'n v. Bd. of Sch. Comm'rs*, 101 F.3d 1179, 1181-1182 (7th Cir. 1996) ("[W]hen . . . the government is treating unequally two persons that are prima facie unequal in a rationally relevant respect . . . the equal protection clause is inapplicable."). For example, two paramedics were considered to be similarly situated when they arrived at the same scene as a team and had equal responsibility for the assessment, treatment and welfare of a patient, but only one paramedic received discipline after the death of a patient they treated simultaneously. *See Ciechon v. City of Chicago*, 686 F.2d 511, 522-24 (7th Cir. 1982). However, an individual seeking to assert a class of one equal protection claim based on the denial of zoning ordinance variances could not establish that he was similarly situated to other individuals when the others requested and received different variances. *See Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th Cir. 2002) (noting that the plaintiff never requested the same type of variances that the other individuals received).

Here, LaBella claims that Defendants treated it differently than other similarly situated restaurants in Winnetka by selectively enforcing Village ordinances and building codes against LaBella, but not against the "Friends of Doug" restaurants.[2] (Compl. ¶ 36.) As it did in its original Complaint, LaBella has restricted its class of one theory by alleging that the disparate treatment forced the restaurant out of business and prevented the restaurant from subsequently reopening or operating. (Compl. ¶ 37.) To support its claim, LaBella has alleged that Defendants engaged in the following acts of selective enforcement: 1) Defendants failed to enforce Village building and safety requirements when the Landlord contracted with roofers, despite LaBella's complaints, which caused the fire in the restaurant (Compl. ¶ 16-23.); 2) Defendants allowed Corner Cooks to operate with a defective exhaust system that did not comply with Village codes but they forced LaBella to close because its roof was not in compliance with Village Codes after the fire (Compl. ¶¶ 16-23, 27); 3) Defendants approved the requests of Corner Cooks and Jerry's Restaurant to expand into LaBella's undamaged bar area after they refused to allow LaBella to partition off portions of its restaurant while it repaired areas damaged by fire (Compl. ¶¶ 22, 24 and 27); and 4) Defendants granted O'Neil's request to partition off a portion of its restaurant while it underwent renovations but refused LaBella's request to partition off portions of its restaurant while it repaired the damage from the fire (Compl. ¶ 27(c)).

---

[2] In previously dismissing LaBella's class of one equal protection claim, the Court noted that LaBella had sufficiently alleged the existence of similarly situated entities that received different treatment from Defendants. *See* Memorandum Opinion and Order, dkt. no. 50, at 7. However, those allegations of different treatment did not relate to the forced closure of LaBella's restaurant. *See id.* In amending its Complaint, LaBella has made new allegations about the types of selective enforcement of Village codes that caused the forced closure of its restaurant. Therefore, the Court must determine whether LaBella's new allegations sufficiently allege the existence of similarly situated restaurants that received different treatment from Defendants.

Although LaBella repeatedly uses the phrase "similarly situated" when comparing itself to the "Friends of Doug" restaurants in its Complaint, to state a class of one equal protection claim, it must support its assertion with facts that, if taken as true, at least plausibly suggest that it is *prima facie* identical to the other restaurants in all material respects. *See Twombly*, 127 S. Ct. at 1974. Although LaBella partially bases its claim upon Defendants' failure to enforce its building codes when it learned the Landlord's roofers worked with hot tar and torches, the Complaint does not allege that Defendants enforced the Village building codes or stopped work on any other roof projects that utilized hot tar and torches. In fact, the Complaint does not make reference to any other situations where Defendants allowed projects to proceed despite failure to comply with Village codes. Therefore, LaBella has failed to allege the existence of a similarly situated individual to support its claim that Defendants' failure to enforce Village buildings codes against the Landlord's roofers resulted in a deprivation of LaBella's equal protection rights.

LaBella also claims that Corner Cooks is a similarly situated restuarant that received different treatment because each restaurant violated Village codes, but Defendants only forced LaBella to close as a result of the violations. While LaBella alleges that each restaurant violated Village codes, it does not allege that they violated the same code provision. In fact, LaBella's Complaint reveals that the two restaurants violated Village building codes in very different ways; LaBella needed to repair damages from a "major fire" that caused "major damages to the roof" in order to bring its restaurant into compliance with local building codes, while Corner Cooks operated its restaurant with a non-compliant exhaust fan in the kitchen. (Compl. ¶¶ 21, 27(b)(ii).) Although each restaurant violated local building codes, based on the nature and severity of the violations, having a fire-damaged roof that must be replaced is not the same as operating a restaurant with a

8

non-compliant exhaust fan. A non-compliant exhaust fan has the potential to create ventilation problems and may be a fire hazard, but fire damage to a restaurant's roof could compromise the structural integrity of the building. While the non-compliant exhaust fan may lead to more serious problems in the future, the "major damage" to LaBella's roof could have injured people inside the restaurant. Because of the difference in the nature of the violations alleged, LaBella has alleged facts that show that LaBella and Corner Cooks were not identical or materially comparable in all relevant respects in relation to their non-compliance with Village codes.

Finally, LaBella contends that it received different treatment than other restaurants that either obtained permission from Defendants to operate in an undamaged portion of LaBella's restaurant or to partition off portions of a restaurant during renovations while continuing operations in other sections, while Defendants would not allow LaBella to take either of those actions to remain open while repairing the damage from the fire. For example, after Defendants refused to allow LaBella to partition off the fire-damaged portion of its restaurant and continue its operations in the unaffected areas, such as the bar and outdoor tent, it allowed Corner Cooks and Jerry's Restaurant, restaurants located within the same building as LaBella, to operate in LaBella's undamaged bar area after they made agreements with the Landlord to operate out of that area. Additionally, Defendants allowed O'Neil's to erect partitions to block a portion of its restaurant and continue serving customers in the unaffected areas while it underwent renovations.

With respect to Corner Cooks and Jerry's Restaurant, LaBella's Complaint carefully alleges that Defendants allowed those restaurants to use LaBella's undamaged space after the fire even though those restaurants were located within the same building as LaBella's restaurant. Noticeably absent, however, are any allegations that Corner Cooks or Jerry's Restaurant sustained fire damage.

In fact, Labella's allegations reveal that those restaurants did not sustain any fire damage because the fire only damaged LaBella's roof and main dining room. (Compl. ¶¶ 24(c), 27(c)(i).) Because Corner Cooks and Jerry's Restaurant did not sustain fire damage, those restaurants are not similarly situated to LaBella's in all material respects. For example, even though a portion of LaBella's space could have been utilized, Defendants could have determined that the fire damage to the roof and main dining room made passage from LaBella's kitchen area to the undamaged bar or tent area to be too dangerous until all of the repairs were done. Those dangers may not be present if Corner Cooks and Jerry's Restaurant made use of LaBella's undamaged bar area, because employees would not have to travel through the fire-damaged portions of LaBella's to reach the unaffected areas; they would be coming from their own restaurants that did not incur damage from the fire. Because Corner Cooks and Jerry's Restaurant did not sustain fire damage, LaBella's allegations show that it is not similarly situated to those restaurants.

Similarly, with respect to O'Neil's, LaBella does not allege that Defendants granted permission for O'Neil's to partition off a portion of its restaurant that suffered "major" fire damage to its roof and main dining room; instead, LaBella claims that O'Neil's partitioned off a portion of its restaurant that underwent planned renovations. LaBella has not alleged facts that, if taken as true, would establish that O'Neil's renovations posed the same dangers that its fire-damaged roof and dining room posed to show that the two restaurants were similarly situated. Therefore, has failed to properly allege that it was similarly situated to O'Neil's.

Because LaBella has not identified an individual that was similarly situated to it in all material respects with respect to the forced closure of its restaurant, it has failed to state a claim for

an equal protection violation under its class of one theory. Therefore, Count I of LaBella's

Amended Complaint is dismissed.

## II. Substantive Due Process Claim (Count II)

LaBella claims that Defendants deprived it of its property interests in its lease and its

restaurant business, thereby violationg its rights to substantive due process. Substantive due process

serves to protect individuals from the unreasonable or arbitrary exercise of governmental power.

*See Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). "[W]hen a substantive due process

challenge involves only the deprivation of a property interest, a plaintiff must show either the

inadequacy of state law remedies or an independent constitutional violation . . . ." *Lee v. City of*

*Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (citation omitted); *see also Gable v. City of Chicago*,

296 F.3d 531, 541 (7th Cir. 2002) (dismissing substantive due process claim for "fail[ing] to allege

a constitutional violation other than violations of due process . . . .").

LaBella attempts to proceed with its substantive due process claim by claiming both an

independent constitutional violation (the class of one equal protection claim) and the inadequacy of

its state law remedies.[3] Because the Court dismissed LaBella's equal protection claim in Count I,

it cannot rely upon an independent constitutional violation to support its substantive due process

claim. To support its claim that it lacks adequate state remedies, LaBella makes the conclusory

assertion that it "has no adequate state law remedy available to it to address this unlawful conduct

---

[3] In their briefs, the parties attempt to analyze LaBella's substantive due process claim for deprivation of its property interest under the "state created danger" theory set forth in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989). Courts use the state created danger theory to analyze substantive due process claims alleging a deprivation of a liberty interest relating to an individual's right to bodily integrity, but not to analyze substantive due process claims relating to a deprivation of a property interest. *See Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997). For claim alleging a deprivation of a property interest, the plaintiff must show either an independent violation of some other substantive right or an inadequate state remedy in order to state a substantive due process claim. *See id.*

11

by the [Defendants]." (Compl. ¶ 42.)  A court "should not reject a state law remedy as inadequate unless the remedy can be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the Fourteenth Amendment." *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008).   Because LaBella did not allege facts to support its claim that the available state law remedies would be meaningless or nonexistent, it has not properly alleged the lack of an adequate remedy for its property interests under state law.

In light of LaBella's failure to properly plead the inadequacy of state law remedies and the dismissal of LaBella's equal protection claim, the Court dismisses LaBella's substantive due process claim.

*III.  Due Process Claim (Count III)*

LaBella also alleges that Defendants violated its due process rights when it did not send LaBella annual renewal forms for LaBella's food and liquor licenses.  (Compl. ¶¶ 51(a) and (b).)[4] Although LaBella does not specify whether Count III alleges a violation of its procedural or substantive due process rights, the Court construes the claim as a procedural due process claim because it alleges a deprivation of a property interest "without cause, without notice, and without a hearing." *See Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994) (noting that plaintiffs alleged a due process claim when they alleged a deprivation of a property interest without due process).

---

[4]  In its Complaint, LaBella claims that Defendants deprived LaBella of its right to renew its food and liquor licenses when they did not send LaBella the proper annual renewal forms.  In its brief, LaBella attempts to argue that Defendants cancelled the licenses before the licenses expired.

To state a procedural due process claim, the plaintiff must allege: 1) the deprivation of a protected interest; and 2) insufficient procedural protections surrounding the deprivation. *See Michalowicz*, 528 F.3d at 534. The renewal of a food or liquor license constitutes a protected property interest under the fourteenth amendment when local law "treats a refusal to renew a liquor license as equivalent to revocation . . . ." *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000). For example, an Illinois statute that imposed undemanding criteria for renewal suggested that the Illinois legislature expected licenses to be renewed as a matter of course, meaning that a refusal to renew the license amounted to a revocation. *See Reed v. Village of Shorewood*, 704 F.2d 943, 948-49 (7th Cir. 1983). Because licensees are entitled to receive procedural and substantive protections during the revocation process, they are entitled to those same protections with respect to the renewal process. *See id.* Here, Winnetka's liquor control regulations utilize identical language to the language of the Illinois statute interpreted as treating renewal as equivalent to revocation. *Compare id.* at 949 *with* Winnetka Village Code § 5.09.160[5] (stating that a licensee "may renew his or her license upon its expiration; provided, he or she is then eligible for an original application to receive a license and the premises for which such license renewal is sought are suitable for such a purpose."). Therefore, as the holder of a Winnetka license, LaBella had a protected interest in the renewal of its licenses.

Here, LaBella alleges that Defendants' failure to send it the annual renewal forms constituted a deprivation of its property interest in having its food and liquor licenses renewed. In *Club Misty*, the Illinois statute at issue allowed revocation of liquor licenses at a specific address by election,

---

[5] The Court takes judicial notice of ordinances from the Winnetka Village Code. *See Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) ("[M]atters of public record such as state statutes, city charters and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects for judicial notice.").

even when no cause for the revocation existed. *See Club Misty*, 208 F.3d at 617. Because the electorate could revoke a license without providing the licensee with an opportunity to be heard, the Illinois statute violated the licensee's procedural due process rights. *See id.* at 621-22. Other examples of deprivations that require due process include an official's decision to suspend a license, impose a fine, or summarily close a licensee's business. *See Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). In *Reed*, one of the bases for the licensee's due process challenge was the mayor's attempt to block renewal of a liquor license by reducing the total number of licensees available upon expiration of the targeted licensee's liquor license. *See Reed*, 704 F.2d at 948. The deprivations listed in *Club Misty*, *Killinger* and *Reed* all relate to the decisionmaking process that culminates with action with respect to the license. In contrast, LaBella claims that Defendants' failure to send it the proper license renewal forms caused a deprivation.

While Winnetka licensees have a property interest in the renewal of their licenses, it does not necessarily follow that Winnetka licensees have a property interest in having the Village send them renewal forms. LaBella does not allege that Defendants took adverse action on its renewal form after refusing to allow LaBella the opportunity to participate in the decisionmaking process. Instead, LaBella claims that its constitutional deprivation occurred when it did not receive its renewal form in the mail. Unlike in *Club Misty* or *Killinger*, LaBella's claims do not relate to the decisionmaking process that led to an ultimate decision on its license. While LaBella has provided legal support for its contention that it had a protectable property interest in the *renewal* of its licenses, it has provided no support for its contention that it had a protectable property interest in *receiving* renewal forms from the Village. LaBella's Complaint lacks any allegations that Defendants would not accept its renewal applications or that Defendants altered Village regulations to block LaBella from being able to renew its licenses. LaBella does not even allege that it made

14

any attempt to obtain the proper forms so that it could renew its licenses. In fact, the Court notes

that the Village made the necessary renewal forms available to the public on its official website. *See*

Village of Winnetka Application for Food Dealer Business License, *available at*:

http://www.villageofwinnetka.org/pdf/forms/

administrations/Business%20License%20-%20Food%20Dealer.pdf; Village of Winnetka Retail

Liquor License Application for Renewal, *available at*: http://www.villageofwinnetka.org/pdf/forms

/administrations/Liquor%20License%20Renewal%20Application.pdf.[6]

Although LaBella had a constitutionally-protected interest in the renewal of its food or liquor

licenses, it bases its procedural due process claim on its allegations that Defendants did not send it

license renewal forms. Because the Complaint lacks allegations that Defendants' decisionmaking

process deprived Labella of its protected property interest in the renewal of its licenses, it has failed

to properly allege a deprivation.

Additionally, even if LaBella did allege a deprivation of a protected interest, because it has

alleged that Defendants engaged in random and unauthorized acts of canceling its licenses in order

to benefit the "Friends of Doug" restaurants, to comply with the requirements of due process, a state

only needs to provide an adequate postdeprivation remedy. *See Veterans Legal Defense Fund v.*

*Schwartz*, 330 F.3d 937, 940, 941 (7th Cir. 2003) ("Given the availability of state remedies that have

not been shown to be inadequate, plaintiffs have no procedural due process claim."). As in its

substantive due process claim in Count II, LaBella has not alleged facts that would establish that

available state law remedies would be meaningless or nonexistent. In fact, with respect to its

---

[6] The Court may take judicial notice of the contents of the Village's website. *See Denius v. Dunlap*, 330
F.3d 919, 926 (7th Cir. 2003) (noting that courts may take judicial notice that a website contains information because
that fact is not subject to reasonable dispute); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d
600, 607 (7th Cir. 2002) (taking judicial notice of information from official website).

procedural due process claim, LaBella has not even made the conclusory allegation that it lacks

adequate state remedies in its Complaint and it did not make any argument in its brief that it lacks

adequate state remedies.  Therefore, even if LaBella had properly alleged a deprivation, it has not

alleged that it received insufficient procedural protections surrounding the deprivation.

Accordingly, LaBella has failed to state a claim for deprivation of procedural due process.

*IV.  Intentional Interference With Lease and Prospective Business Expectancy*

Having dismissed all claims arising under federal law, the Court declines to exercise its

supplemental jurisdiction over the remaining state law claim.  *See* 28 U.S.C. § 1367(c).

## CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss is granted with respect to Counts I-III

and the Court declines to exercise its supplemental jurisdiction over Count IV.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 18, 2009